UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROCHELLE FRIEDMAN | |
| Plaintiff, | No. 22-CV-03858 |
| v. | |
| UNIVEST BANK AND TRUST CO. | |
| Defendant. | |

## DECLARATION OF LISA MANTZ
## IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS

Lisa Mantz declares, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am a Special Assets Officer and Assistant Vice President of Univest Bank and Trust Co. ("Univest"), the defendant in this action. [1]  I have worked for Univest for five years, and I have been a member of Univest's asset recovery group – which works with customers to address overdue and defaulted loan commitments – for my entire tenure with Univest.

2.      The facts stated in this declaration are based on my personal knowledge, the books and records of Univest that are maintained in the normal course of its business, and pleadings and other filings that have been provided to me by counsel in connection with this case and with related litigation pending in New Jersey.

---

[1] The name by which Plaintiff identified Univest in her complaint, Univest National Bank and Trust Co., is a former registered name of Univest Bank and Trust Co.

<u>UNIVEST BANK AND TRUST CO.</u>

3.      Univest Bank and Trust Co. is a Pennsylvania state chartered bank with its main office located at 14 N. Main Street, Souderton, Pennsylvania 18964.

4.      All of Univest's branches and offices are located in the Commonwealth of Pennsylvania, the State of New Jersey, or the State of Maryland.  Univest does not have any branches or offices in the State of New York, and has no employees or agents in New York.

5.      Univest is not registered to do business in the State of New York.

6.      Univest conducts no regular business in New York, and does not solicit New York customers.

7.      Univest does not maintain bank accounts in New York, or hold other property in that state.

<u>LOAN TO 330 CARTER EQUITY LLC</u>

8.      On or about September 14, 2020, Univest extended a commercial loan to 330 Carter Equity, LLC ("Carter Equity") in the principal amount of $15,700,000.00 plus interest, payable in monthly installments commencing on October 16, 2020 (the "<u>Loan</u>").

9.      Carter Equity is a New Jersey limited liability company.  A true and correct copy of the Operating Agreement of Carter Equity, dated September 10, 2020, is attached hereto as **Exhibit A**.

10.      As recited in the Operating Agreement, the sole purpose of Carter Equity was the "acquisition, development, and operation" of certain real property located at 330 Carter Road, Hopewell, New Jersey (the "<u>Property</u>").

2

10180815.v1

11.     Univest has never entered into a contract with the plaintiff in this case, Rochelle Friedman. Ms. Friedman was not a guarantor of the Loan and was not involved in any negotiations or other activity related to the Loan.

12.     The Loan was secured by, among other things, a mortgage on the Property pursuant to a mortgage and security agreement (the "Mortgage") dated September 14, 2020.  A true and correct copy of the Mortgage is attached hereto as **Exhibit B**.

DEFAULTS ON THE LOAN

13.     In April 2021, Univest learned that Carter Equity was depositing funds into one or more of its Univest deposit accounts and then wiring or otherwise transferring out those funds before the incoming payments had cleared.   Certain checks deposited were  subsequently  dishonored or returned, creating a deficiency in Carter Equity's Univest deposit account no. ******1294.

14.     As of April 29, 2021, Carter Equity's account no. ******1294 was overdrawn in the amount of $4,156,088.25 due to dishonored or returned checks and other debits made by or on behalf of Carter Equity (the "Deficiency Debt").

15.     It is Univest's understanding that the overdraft that led to the Deficiency Debt was caused by what Carter Equity's former counsel has referred to as a "check kite of substantial proportions" that was "orchestrated" by an individual who Univest understands is Friedman's spouse.  A true and correct copy of a filing by Carter Equity's former counsel describing these circumstances is attached hereto as **Exhibit C**.

16.     Univest demanded that Carter Equity repay the Deficiency Debt, but Carter Equity failed to do so.  The failure to repay the Deficiency Debt constituted a default on the Loan.

3

<u>FORECLOSURE ACTION</u>

17.     Following Carter Equity's default on the Loan as a result of, among other things, the Deficiency Debt, Univest filed a complaint in mortgage foreclosure on May 7, 2021 to foreclose Carter Equity's interest in the Property and obtain related relief, thereby initiating the action *Univest Bank and Trust Co. v. 330 Carter Equity, LLC, et al.*, No. F-002486-21 in the Superior Court of New Jersey, Chancery Division, Mercer County (the "<u>New Jersey Court</u>").

18.     On January 26, 2022, the New Jersey Court entered final judgment in mortgage foreclosure in favor of Univest in the amount of $18,182,504.66, with interest continuing to accrue (the "<u>Foreclosure Judgment</u>").  A true and correct copy of the Foreclosure Judgment is attached hereto as **Exhibit D**.

19.     Upon the issuance of the Foreclosure Judgment, a writ of execution was issued by the New Jersey Court, directing the Sheriff of the County of Mercer (the "<u>Sheriff</u>") to sell the Property to satisfy, if possible, the Foreclosure Judgment.  A true and correct copy of this writ of execution is attached hereto as **Exhibit E**.

<u>SHERIFF'S SALE AND ADJOURNMENTS</u>

20.     Pursuant to the writ of execution, the Property was scheduled to be sold at auction on March 23, 2022.  A true and correct copy of a letter serving the notice of sale on Carter Equity is attached hereto as **Exhibit F**.

21.     Carter Equity exercised two adjournments, to which it was entitled as of right, to delay the sale.  Following those two adjournments, the sale was scheduled for May 18, 2022.

22.     On May 13, 2022, Carter Equity filed an emergency motion with the New Jersey Court, seeking to delay the sale of the Property by another sixty days (the "Emergency Stay Motion").  A true and correct copy of the Emergency Stay Motion is attached hereto as **Exhibit G**.

23.     The New Jersey Court held an initial hearing on the Emergency Motion to Stay on May 24, 2022.  A true and correct transcript of that hearing is attached hereto as **Exhibit H**.  At the conclusion of that hearing, the Court granted Carter Equity a thirty-day stay of the sheriff's sale, and ordered the parties to provide additional briefing to determine whether any further stay would be justified.  A true and correct copy of the order of the New Jersey Court following the May 24 hearing is attached hereto as **Exhibit I**.

24.     In accordance with that order, and a subsequent scheduling order, the sheriff's sale of the Property was rescheduled to June 29, 2022.

25.     Carter Equity submitted a supplemental certification in further support of the Emergency Stay Motion on June 2, 2022.  Univest filed an opposition to the Emergency Stay Motion on June 7, 2022.  Carter Equity filed a reply on June 14, 2022, and Univest submitted a sur-reply on June 15, 2022.

26.     On June 27, 2022, the New Jersey Court held a second hearing on the Emergency Motion to Stay.  A true and correct copy of the transcript of that hearing is attached hereto as **Exhibit J**. At the conclusion of that hearing, the New Jersey Court denied the Emergency Motion to Stay, and ordered that the Sheriff's sale of the Property would go forward.  A true and correct copy of the order of the New Jersey Court following the June 27 hearing is attached hereto as **Exhibit K**.

10180815.v1

27.     The day after the New Jersey Court denied Carter Equity's request for a further stay, June 28, 2022, the plaintiff initiated this action and obtained an *ex parte* order purporting to enjoin Univest and the Sheriff from completing the sale.   Ms. Friedman did not serve either Univest or the Sheriff with any papers relating to this action on June 28, 2022.

28.     On the day scheduled for the sale, June 29, 2022, counsel for Carter Equity submitted a letter to the New Jersey Court, requesting that the New Jersey Court direct the sale be stayed pursuant to the *ex parte* order.  A true and correct copy of the letter is attached hereto as **Exhibit L**.

29.     The New Jersey Court rejected Carter Equity's application on the same date.  A true and correct copy of a communication from the New Jersey Court denying the application is attached hereto as **Exhibit M**.

30.     On June 29, 2022, the sheriff for Mercer County offered the Property for sale at public auction (the "Sheriff's Sale") in connection with the Foreclosure Judgment.  At the Sheriff's Sale, Univest was the sole bidder and obtained the Property for its opening bid.

31.     Friedman did not serve Univest with a copy of the complaint in this action or with a copy of the *ex parte* order until after the Sheriff's Sale, around 4:00 PM on June 29, 2022.

<u>OBJECTIONS TO THE SALE AND FRIEDMAN'S INTERVENTION</u>

32.     On July 11, 2022, Carter Equity submitted to the New Jersey Court an objection to the Sheriff's Sale in the form of a request for a fair market value credit for the Property.  At that time, Friedman took no action to intervene in the New Jersey litigation, to object to the Sheriff's Sale, or otherwise to pursue any alleged rights related to the Property.

10180815.v1

33.     Following briefing and oral argument, on July 25, 2022, the New Jersey Court entered an order denying Carter Equity's objection to the Sheriff's Sale, directing the Sheriff to deliver the deed to the Property to Univest as the successful bidder at the Sheriff's Sale, and setting a conference to schedule a fair market value hearing.  A true and correct copy of this order is attached hereto as **Exhibit N**.

34.     Following the issuance of the New Jersey Court's order, on the afternoon of July 25, 2022, the Sheriff delivered a deed to the Property to Univest.

35.     Two days after the delivery of the deed, on July 27, 2022, Friedman filed a motion to intervene in the Foreclosure Action, along with a motion to stay delivery of the deed to the Property to Univest.  True and correct copies of these motions are attached hereto as **Exhibit O** and **Exhibit P**.

36.     The New Jersey Court denied Friedman's motion to stay on August 2, and deferred decision on the motion to intervene.  A true and correct copy of the New Jersey Court's August 2, 2022 order is attached hereto as **Exhibit Q**.

<u>SETTLEMENT WITH CARTER EQUITY</u>

37.     On August 4, 2022, Univest and Carter Equity entered into a Settlement Agreement and Release (the "Settlement Agreement"), a true and correct copy of which is attached hereto as **Exhibit R**.  The Settlement Agreement resolved all outstanding disputes between Univest, Carter Equity, and the members of Carter Equity.

38.     Following the execution of the Settlement Agreement, Carter Equity withdrew its request for a fair market valuation of the Property.   Friedman refused, however, to withdraw her

intervention motion.  As such, the only matter that remains pending before the New Jersey Court is Friedman's motion to intervene.

     I declare under penalty of perjury that the foregoing is true and correct.

Dated:  October 11, 2022

                                                Lisa Mantz

**Exhibit A**

**OPERATING AGREEMENT**

**OF**

**330 Carter Equity LLC**

This Operating Agreement (this "<u>Agreement</u>") of 330 Carter Equity LLC, a New Jersey limited liability company (the "<u>Company</u>"), effective as of September 10, 2020, is made by and among the Members set forth on Schedule A hereto and any additional person or entity admitted as a member pursuant to the terms and conditions of this Operating Agreement are referred to as the "<u>Members</u>" and each a "<u>Member</u>")  and 330 Carter Equity LLC (the "<u>Company</u>").

WITNESSETH:

WHEREAS, the Company was formed on July 16, 2020, by filing the Certificate of Formation of the Company (the "<u>Certificate of Formation</u>") with the Secretary of State of the State of New Jersey; and

WHEREAS, the Members wish to set forth their agreement as to how the business and affairs of the Company shall be managed and their rights and obligations with respect to the Company.

NOW, THEREFORE, in consideration of the premises and mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

**ARTICLE I**
**FORMATION AND NAME: OFFICE; PURPOSE; TERM**

1.1      **<u>Organization</u>**.      The Company has been formed as a limited liability company pursuant to the Limited Liability Company Act of the State of New Jersey (the "Law").

1.2      **<u>Name of the Company</u>**. The name of the Company is "330 Carter Equity LLC". The Company may do business under that name and under any other name or names which the Members may select.  If the Company does business under a name other than that set forth in its articles of organization, then the Company shall have the right to do so by filing the appropriate assumed named affidavit(s) and/or certificate(s) with the governing authorities.

1.3      **<u>Purpose</u>**.  The purpose of the Company shall be the acquisition, development, and operation of the real property commonly known as 330 Carter Road, Hopewell, New Jersey (the "Property") and for no other purpose.

1.4      **<u>Office and Agent</u>**.  The Company shall continuously maintain an office and registered agent in the State of New Jersey. The principal office of the Company shall be at 4203 13th Ave., Brooklyn, New York or at such location as the Members may determine. The Company

also may have such offices as the Members from time to time may determine, or the business of the Company may require. The registered agent shall be as stated in the Company's articles of organization or as otherwise determined by the Members. The Members shall cause the Company to be qualified to do business in all jurisdictions where the Company is required to so qualify.

      1.5    **Term**. The term of the Company shall begin upon the filing of the Articles of Organization with the State of New Jersey and shall continue until the Company is dissolved or terminated in accordance with the provisions of Article VI hereof or in accordance with the Law.

      1.6    **Members**. The name of each Member, and each Member's percentage of membership interest ("Membership Interest") in the Company relative to the total issued and outstanding Member Interest in the Company ("Percentage Interest"), is set forth on Schedule A attached hereto and made a part hereof.

## ARTICLE II
## MEMBERS; CAPITAL; BUDGET; CAPITAL ACCOUNTS

      2.1    **Initial Capital Contributions**. The Members shall make Capital Contributions as set forth on Schedule A.

      2.2    **Additional Capital Contributions**.

      A.    If, at any time and from time to time, the Managers determine in good faith that the Company requires additional funds the Managers may request that each Member make a further capital contribution to the Company in proportion to such Member's percentage interest as set forth on Schedule A ("Additional Capital Contributions"). Upon such determination, each Member shall contribute its Additional Capital Contribution within ten (10) business days of such request.

      (a)    If a Member fails to contribute such Member's Additional Contribution within such twenty (20) business day period pursuant to Section 2.2 A (the "Defaulting Member"), and all of other Members make their Additional Contributions, (x) each Member's capital account shall be adjusted by the Managers on the books of the Company to reflect the Capital Contribution (including the Additional Capital Contribution) that has been made by such Member and (y) the Members who have contributed (the "Non-Defaulting Members") may pay the amount called for to the Company on behalf of the Defaulting Member (the Non-Defaulting Members making such contribution on behalf of the Defaulting Members shall hereinafter be referred to as the "Non-Defaulting Contributing Members") and the Membership Interest of the Defaulting Member shall be decreased by an amount which is arrived at by multiplying: (i) 150% times (ii) a fraction, the numerator of which is 100% of the amount not contributed by the Defaulting Member and the denominator of which is the then aggregate Capital Contributions and Additional Contributions made by all Members. The Non-Defaulting Contributing Members' Membership Interests shall be increased by an equivalent amount. For example, if the aggregate Capital Contribution of all of the Members in the Company is $1,000,000.00, and an additional capital call is made for $100,000.00, and a Member required to contribute twenty (20%) of the aggregate amount called for in the Contribution Notice fails to

contribute its proportionate share ($20,000.00), the Membership Interest of the Defaulting Member shall be adjusted to reflect his actual dilution as provided above in the amount of 2.727%, to 17.273% (20% - ((1.5) x (20,000/1,100,000))) and the Pro-Rata Share of the Non-Defaulting Members shall be increased by a commensurate amount. The Defaulting Member appoints the Non-Defaulting Contributing Members its attorney-in-fact to execute such assignments as may be required to effectuate the transfers contemplated hereunder. This appointment is coupled with an interest and is irrevocable.

2.3     **Capital Accounts**. The Company shall establish and maintain an individual capital account for each Member (each a "Capital Account") and any capital contributions made by a Member shall be credited to the Member's Capital Account. If a Member transfers all or a part of his, her or its Membership Interest in accordance with this Operating Agreement, such Member's Capital Account attributable to the transferred Membership Interest shall carry over to the new owner of such Membership Interest. The Capital Accounts of each Member shall be separate and apart from the Capital Accounts of the other Members and no Member shall have any interest in another Member's Capital Account.

2.4     **No Interest on Capital Contribution**. Except as provided under this Agreement the Members shall not be paid interest on their respective capital contributions.

2.5     **Return of Capital Contribution**. Except as otherwise provided in this Operating Agreement, the Members shall not be entitled to receive any return of their respective capital contributions.

**ARTICLE III**
**PROFIT, LOSS, AND DISTRIBUTIONS**

3.1     **Allocations of Profit or Loss**. Profit or loss of the Company shall be determined in accordance with generally accepted accounting principles and shall be allocated to the Members in proportion to their Percentage Interest in the Company and assigned to their respective Capital Accounts.

3.2     **Distributions of Cash Flow**.

3.2.1   All Cash Flow (as defined below) for each taxable year of the Company shall be distributed to the Members:

(A)     First, to repayment of all Capital Contributions until each Member's Capital Account reaches zero;

(B)     Second, to the Members in proportion to the Members' percentage interests as set forth on Schedule A attached hereto.

Notwithstanding anything set forth in this Agreement to the contrary, if the Managers (as hereinafter defined) determine that any amount of Cash Flow should be withheld for any material business reasons, including contingencies, such Cash Flow may be withheld.

3.3     **Definitions**     For the purposes of this Section the following definitions apply:

"Cash Flow" shall mean all cash funds derived from operations of the Company, including capital events, refinancing, and the sale of any Company assets, without reduction for any non-cash charges, but less cash funds used to pay current operating expenses and to pay or establish reasonable reserves for future expenses, debt payments, capital improvements, and replacements as permitted herein.

**ARTICLE IV**
**MANAGEMENT: RIGHTS, POWERS, AND DUTIES**

4.1.1     **Management**.     Unless otherwise specified under this Agreement, all decisions shall be made by the Managing Member/Manager. The Managing Member/Manager shall be Ira Russack. In the event of the death or incapacity of Ira Russack, Rochelle Friedman shall designate a new Manager which shall be subject to the approval Univest Bank and Trust Co. (the "Lender") so long as the loan to the Lender is outstanding.    Such action by the Managing Member shall be authorized by the Company without the need of consent of any other individual members.  Managers authority shall include, but shall not be limited to, decisions with respect to the following and the Managers shall not require the approval of Members prior to taking such action:

1.     Determining the budget of the Company;

2.     Decisions with respect to the day to day operations of the Company;

3.     Decisions with respect to third party contracts of the Company;

4.2     **Major Decisions**. All major decisions shall be subject to the unanimous decision of the Members. Major decisions shall include:

1.     The sale of the Property

2.     Refinancing, or entry into any loan secured by the Property;

3.     The acquisition any real property from any Person (including Members or Affiliates thereof) in the name of the Company;

4.     Admission of additional Members;

5.     Amendment of this Agreement;

4.3     **Meetings of and Voting by Members**.  No annual or regular meetings of the Members as such shall be required, but a meeting shall be attended by all Members if called ten (10) days in advance by any Member.

4.4     **Liability and Indemnification.**

(a)     Except as otherwise provided by law, no Manager or Member  shall be liable, responsible or accountable in any way for damages or otherwise to the Company or to any of the Members for any act or failure to act pursuant to this Operating Agreement or otherwise unless there is a judicial determination that (i) such person acted in bad faith, (ii) the conduct of such person constituted intentional misconduct or a knowing violation of law, (iii) such person gained a financial benefit to which he or she was not legally entitled or (iv) such person failed to perform his or her duties, specifically with respect to distributions under the applicable sections of the Law, in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.

(b)     The Company shall indemnify, defend and hold harmless the Managers, the Members and any of their respective members, managers, principals or affiliates (collectively, the "Indemnitees"), severally, from and against any claims, losses, liabilities, damages, fines, penalties, costs and expenses (including, without limitation, reasonable fees and disbursements of counsel and other professionals) arising out of or in connection with any act or failure to act by the Indemnitees pursuant to this Operating Agreement, or the business and affairs of the Company, to the fullest extent permitted by law; provided, however, that an Indemnitee's shall not be entitled to indemnification hereunder if there is a judicial determination that (a) such Indemnitee's actions or omissions to act were made in bad faith or were the result of active and deliberate dishonesty and were material to the cause of action so adjudicated, or (b) such Indemnitee personally gained a financial benefit to which the Indemnitee was not legally entitled.

## ARTICLE V
## BANKING, BOOKS, RECORDS AND ACCOUNTING

5.1     **Bank Accounts**. All funds of the Company shall be deposited in a bank account or accounts opened in the Company's name.

5.2     **Books and Records**. The books and records of the Company shall be maintained in accordance with sound accounting practices and shall be available at the Company's principal office for examination by any Member or each Member's duly authorized representative at any and all reasonable times during normal business hours.

5.3     **Tax Matters Member**. The Managers shall designate the Company's tax matters partner ("Tax Matters Member").  The Tax Matters Member shall act as provided by law.  A Member shall be responsible for any costs incurred by the Member with respect to any tax audit or tax-related administrative or judicial proceeding against such Member, even though it relates to the Company.

## ARTICLE VI
## DISSOLUTION, LIQUIDATION, AND
## TERMINATION OF THE COMPANY

6.1 **Events of Dissolution**. The Company shall be dissolved upon the happening of any of the following events (each such event an "Event of Dissolution"); (a) the sale of all or substantially all of the assets of the Company, (b) the unanimous agreement of all Members, (c) the happening of any other event that makes it unlawful, impossible or impractical to carry on the business of the Company, (d) the bankruptcy or insolvency of the Company or any Member, or (e) the failure by the Company or the remaining Member to purchase the Membership Interest of a Decedent of Disabled Member in accordance with Article VIII.

6.2 **Winding Up**. Upon an Event of Dissolution, the Company shall continue solely for the purpose of winding up its affairs in an orderly manner, liquidating its assets and satisfying the claims of its creditors and Members. No Member shall take any action that is inconsistent with or not necessary to or appropriate for, the winding up of the Company's business and affairs. The Managers shall be responsible for overseeing the winding up and dissolution of the Company and shall take full account of the Company's liabilities and the property of the Company shall be liquidated as promptly as is consistent with obtaining the fair value thereof, and the proceeds therefrom, to the extent sufficient, shall be applied and distributed, subject to any reasonable reserves maintained for contingent or other obligations of the Company, in the following order; (a) first, to the payment and discharge of all of the Company's debts and liabilities to creditors other than Members; (b) second, to the payment and discharge of all of the Company's debts and liabilities to Members; (c) to the return of Capital Contributions; and (d) the balance, if any, pro-rata in accordance with the Members' Percentage Interests in the Company.

## ARTICLE VII
## TRANSFERS OF MEMBERSHIP INTERESTS.

7.1 **No Transfers**.

7.1.1 Except as expressly provided in this Agreement, no Member may transfer, sell or assign all or any portion of his, her or its Membership Interest or its rights or interest in the Company or withdraw or retire from the Company without the prior written consent of each of the other Members, provided, however that, without the prior written consent of the other Members, each Member may transfer its Membership Interest to or among each other or to or among immediate family or trusts for their benefit (a "Permitted Transferor").

7.1.2 No Transfer or assignment pursuant to this Section 7 shall be effective as to the Other Members or the Company unless and until (i) a copy of an instrument of assignment executed by the Transferor and the transferee, in form satisfactory to the Company, that indemnifies the Company against loss or liability arising out of such assignment, has been received by the Company, (ii) the transferee executes and delivers to the Company such documents as the Company deems necessary or appropriate to effect the Transfer and to confirm the agreement of the transferee to be bound by the provisions of this Agreement and (iii) the transferee, upon the reasonable request of the Company, provides the Company with an opinion of counsel, which opinion and counsel shall be reasonably satisfactory to the Company, to the effect that the Transfer shall be exempt from all applicable registration requirements and that such Transfer shall not violate any applicable laws regulating the transfer of securities. Thereafter, the Company shall

2178198 v1

remit directly to the transferee all distributions to which the transferee may be entitled pursuant to the provisions of this Agreement and the assignment.

        7.1.3   Any Transferee of the Membership Interest of a Member under this Section 7 shall become bound by the terms of this Agreement as fully and effectively as if an original signatory hereto and the Membership Interests shall continue to be subject to and shall be transferable by such Transferee only in accordance with the terms of this Agreement.   Such Transferee shall only be entitled to the benefits of being a Member hereunder if such transfer was completed in accordance with the provisions of this Agreement and then, only if, such Transferee executes an agreement, in form and substance satisfactory to the Company, providing that such Transferee is bound by the terms of this Agreement.

        7.1.4   Upon approval by Univest Bank and Trust Co., membership interest in the amount 25% shall be transferred from Ira Russack to Henry Weinstein.

        7.1.5   In the event of a death of one of the Members, the remaining Members or the Company, shall have the right to purchase such Member's membership interest. The price of such purchase shall be determined by an agreed upon third-party appraisal of the value of such Member's interest.

## ARTICLE VIII
## GENERAL PROVISIONS

        8.1     **Notifications**. Any notice, demand, consent, election, approval, request, or other communication (collectively a "notice") under this Operating Agreement must be in writing and either delivered personally or sent by recognized overnight courier, charges prepaid for next business day delivery, addressed to a party at the above address. A notice that is sent by courier will be deemed given one (1) business day after it is deposited as aforesaid. Any party may designate, by notice to all of the others, a substitute address for notices.

        8.2     **Complete Agreement; Amendments**. This Operating Agreement constitutes the complete and exclusive statement of the agreement among the parties hereto with respect to the subject matter thereof. Except as otherwise explicitly set forth herein, amendments, modifications, restatements or supplements to this Agreement shall require the unanimous written consent of the Members.

        8.3     **Applicable Law**. The construction, validity, and interpretation of this Operating Agreement and the performance of the obligations imposed by this Operating Agreement shall be governed by the laws of the State of New Jersey.

        8.4     **Section Headings**. The headings herein are inserted as a matter of convenience only and do not define, limit, or describe the scope of this Operating Agreement or the intent of the provisions hereof.

8.5     **Binding Provisions**. This Operating Agreement is binding upon, and inures to the benefit of, the parties hereto and their respective heirs, executors, administrators, personal and legal representatives, successors, and assigns.

8.6     **Severability of Provisions**. Each provision of this Operating Agreement shall be considered severable; and if, for any reason, any provision or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Operating Agreement which are valid.

8.7     **Execution**. This Operating Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which, when taken together, constitute one and the same document. The signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.  Signatures may be transmitted via facsimile or email and deemed valid and original if sent from the office or account of the signing party or his or its legal representative.

IN WITNESS WHEREOF, the parties have executed, or caused this Operating Agreement to be executed, as of the date set forth hereinabove.

MEMBERS:

Ira Russack, Managing Member

Rochelle Friedman, Member

## Schedule A

### List of Members, Capital, and Percentages

| Name | Capital Contribution | Percentage Interest |
|------|----------------------|---------------------|
| Ira Russack |  | 75% |
| Rochelle Friedman |  | 25% |

**<u>Exhibit B</u>**

CERTIFIED TO BE A TRUE
AND CORRECT COPY.

_Clara D. Lendl_

Attorney for Plaintiff

| **Mercer County**<br>**Document Summary Sheet** | | INSTR # 2020046641<br>M BK 11533 PG 595<br>RECORDED 10/16/2020 03:02:45 PM<br>PAULA SOLLAMI COVELLO, COUNTY CLERK<br>MERCER COUNTY, NEW JERSEY |
|---|---|---|
| MERCER COUNTY CLERK<br><br>MERCER COUNTY COURTHOUSE<br>209 SOUTH BROAD STREET<br>TRENTON NJ 08650 | | **Official Use Only** |

| **Transaction Identification Number** | | 4682432          4473909 |
|---|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 10/13/2020 | **Return Address** *(for recorded documents)* |
| **No. of Pages** *(excluding Summary Sheet)* | 24 | UNIVERSAL TITLE, LLC |
| **Recording Fee** *(excluding transfer tax)* | $263.00 | 101 CHASE AVE |
| **Realty Transfer Tax** | $0.00 | SUITE 301 |
| **Total Amount** | $263.00 | LAKEWOOD, NJ 08701 |

| **Document Type** | MORTGAGE |
|---|---|

**Municipal Codes**

HOPEWELL TOWNSHIP                    HOT

**Batch Type**     L2 - LEVEL 2 (WITH IMAGES)

275127

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MERCER COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

**Mercer County**
**Document Summary Sheet**

| | | |
|---|---|---|
| | Type | MORTGAGE |
| | Consideration | $15,700,000.00 |
| | Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) |
| | Document Date | 09/14/2020 |

**Reference Info**

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| | | | | |

| MORTGAGE | MORTGAGOR | Name | | Address |
|---|---|---|---|---|
| | | 330 CARTER EQUITY LLC | | |

| MORTGAGEE | Name | | Address |
|---|---|---|---|
| | UNIVEST BANK AND TRUST CO | | |

**Parcel Info**

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | HO | 40 | 14.03 | | HOT |

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MERCER COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

CFN 2020046641 M DOC_TYPE MTG BK 11533 PG 596 PAGE 2 OF 26

Prepared By and Return To:

Curt L. Heffler, Esquire
Reed Smith LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
(215) 851-8186

## MORTGAGE AND SECURITY AGREEMENT

THIS INSTRUMENT COVERS GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN AND IS TO BE FILED FOR RECORD IN THE REAL ESTATE RECORDS WHERE MORTGAGES ON REAL PROPERTY ARE RECORDED. THE MORTGAGOR IS THE OWNER OF RECORD OF AN INTEREST IN THE REAL PROPERTY. THIS INSTRUMENT SHOULD BE APPROPRIATELY INDEXED, NOT ONLY AS A MORTGAGE BUT ALSO AS A FIXTURE FILING AND FINANCING STATEMENT COVERING GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN. THE MAILING ADDRESSES OF THE MORTGAGOR, AS DEBTOR, AND THE MORTGAGEE, AS SECURED PARTY, ARE SET FORTH IN THE INTRODUCTORY PARAGRAPH OF THIS INSTRUMENT. THE COLLATERAL DESCRIBED HEREIN IS WITHIN THE SCOPE OF THE NEW JERSEY UNIFORM COMMERCIAL CODE, PURSUANT TO SECTIONS 12A:9-102 AND 12A:9-109.

THIS MORTGAGE AND SECURITY AGREEMENT (this "Mortgage"), made this 14 day of September, 2020, from 330 CARTER EQUITY LLC, a New Jersey limited liability company with an address of 4203 13th Avenue, Brooklyn, New York 11219 ("Mortgagor"), to UNIVEST BANK AND TRUST CO., a Pennsylvania state-chartered bank and trust company with an address of 14 North Main Street, P.O. Box 197, Souderton, Pennsylvania 18964-0197 ("Mortgagee").

## W I T N E S S E T H:

Mortgagor has executed and delivered to Mortgagee a Mortgage Note bearing even date herewith, wherein Mortgagor promises to pay to the order of Mortgagee the principal sum of Fifteen Million Seven Hundred Thousand and 00/100 Dollars ($15,700,000.00) lawful money of the United States of America, with interest thereon at the rate and times, in the manner and according to the terms and conditions specified in such note (as amended, modified or supplemented from time to time, the "Note"). The Note contains provisions for a variable interest rate. The Note is executed and delivered in connection with a loan from Mortgagee to Mortgagor (the "Loan") described in a Loan Agreement of even date herewith between Mortgagor and Mortgagee (as amended, modified or supplemented from time to time, the "Loan Agreement"). Mortgagor has also executed and delivered or caused to be executed and delivered certain other agreements and instruments in connection with the Loan (the Note, the Loan Agreement and all other agreements and instruments executed in connection with the Loan, including without limitation any Hedging Contracts (as defined in the Note, if applicable) in effect with respect to the Loan, being sometimes hereinafter collectively referred to as the "Loan Documents").

US_ACTIVE-154402078.2-CLHEFFLE

NOW, THEREFORE, for the purpose of securing the payment and performance of all indebtedness, obligations and liabilities of Mortgagor to Mortgagee of every kind and description, direct or indirect, secured or unsecured, joint or several, absolute or contingent, due or to become due, including any overdrafts, whether for payment or performance, now existing or hereafter arising, whether presently contemplated or not, regardless of how the same arise, or by what instrument, agreement or book account they may be evidenced, or whether evidenced by any instrument, agreement or book account, including, but not limited to all obligations under the Note, all loans (including any loan by modification, renewal or extension), all obligations under any agreement, contract or transaction that constitutes a "swap" within the meaning of Section 1a(47) of the Commodity Exchange Act (7 U.S.C.1a), as amended (including any rate swap, basis swap, forward rate transactions, commodity swaps, commodity options, equity or equity index swaps, equity or equity index options, bond options, interest rate options, foreign exchange transactions, cap transactions, floor transactions, collar transactions, forward transactions, currency swap transactions, cross-currency rate swap transactions and currency options) provided that Excluded Hedging Obligations (as defined in the Note, if applicable) are not included within the definition of Obligations herein, all indebtedness, liabilities or obligations owing from Mortgagor to others which Mortgagee may have obtained by purchase, negotiation, discount, assignment or otherwise, and all interest, taxes, fees, charges, expenses and attorney's fees (whether or not such attorney is a regularly salaried employee of Mortgagee, any parent corporation or any subsidiary or affiliate thereof, whether now existing or hereafter created) chargeable to Mortgagor or incurred by Mortgagee under this Mortgage, or any other document or instrument delivered in connection herewith or therewith (collectively, the "Obligations"), Mortgagor has granted, conveyed, aliened, enfeoffed, released, confirmed and mortgaged, and by these presents does hereby grant, convey, alien, enfeoff, release, confirm and mortgage unto Mortgagee, all that certain tract or parcel of land located in Hopewell, Mercer County, New Jersey and more particularly described in Exhibit "A" attached hereto and made a part hereof (hereinafter referred to as the "Land").

TOGETHER WITH all of Mortgagor's right, title and interest in the following described property, all accessions and additions thereto, all substitutions therefor and replacements and proceeds thereof, and all reversions and remainders of such property now owned or held or hereafter acquired (the Land and other property interests described herein and hereby mortgaged being collectively referred to herein as the "Mortgaged Property"), to wit:

(a)     all buildings and other improvements erected or hereafter erected upon the Land and all building materials, fixtures, building machinery and building equipment delivered on site to the Land during the course of, or in connection with, the construction of, or reconstruction of, or remodeling of any buildings and improvements from time to time during the term hereof; and

(b)     all easements, rights-of-way, gores of land, streets, ways, alleys, passages, rights, waters, water courses, water rights and powers, riparian rights, mineral rights, privileges, tenements, hereditaments and appurtenances whatsoever in any way belonging, relating or appertaining to any of the Land or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Mortgagor, and the reversions and remainders; and

(c)     all agreements, plans, licenses, permits and approvals (whether issued by a governmental authority or otherwise) and other documentation or work product required for or in any way related to the development, construction, renovation, use, occupancy or ownership of the Land, whether now existing or hereafter arising (the "Development Documents"), including

-2-

all (i) plans, specifications and other design work for buildings and utilities, (ii) management contracts or agreements, (ii) architect's agreements and construction contracts and warranties, (iii) environmental reports, surveys and other engineering work product, and (iv) permits and licenses including without limitation all EDU's and all permits and capacity reserved, acquired or to be acquired in connection with water and sewer connections and allocations; and

(d)     all rents, issues, profits, receipts, lodging revenues, hotel revenues and other income of any and all kinds received or receivable and due or to become due in connection with the Land or in the operation of any buildings and improvements now or hereafter erected thereon, including but not limited to the lease of, or operation of any income-producing facility on, the Land or the buildings and improvements thereon; and

(e)     all agreements of sale and purchase options now or hereafter entered into by Mortgagor with respect to the Land and all proceeds of such agreements of sale, including without limitation deposit monies; and

(f)     all fixtures, appliances, machinery, furniture and equipment of any nature whatsoever, and other articles of personal property now or at any time hereafter installed in, attached to or situated in or upon the Land or any buildings and improvements now or hereafter erected on, upon, under or forming a part of the Land, or used or intended to be used in connection with the Land, or in the operation of any buildings and improvements now or hereafter erected thereon, or in the operation or maintenance of any such building or improvement, plant or business situate thereon, whether or not the personal property is or shall be affixed thereto; and

(g)     all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, proceeds of insurance and condemnation awards.

TO HAVE AND TO HOLD the Mortgaged Property hereby conveyed or mentioned and intended so to be, unto Mortgagee, forever.

PROVIDED ALWAYS, and this instrument is upon the express condition that, if Mortgagee is paid the principal sum mentioned in the Note, the interest thereon and all other sums payable to Mortgagee as are secured hereby, in accordance with the provisions of the Note and this Mortgage, at the times and in the manner specified, without deduction, fraud or delay, and Mortgagor performs and complies with all the agreements, conditions, covenants, provisions and stipulations contained herein and in the Loan Documents, then this Mortgage and the estate hereby granted shall cease and become void.

1.     Mortgagor's Representations.  Mortgagor warrants and represents that it possesses a good and marketable title to an indefeasible fee simple estate in the Mortgaged Property; that Mortgagor has full power and lawful authority to subject the Mortgaged Property to the lien of this Mortgage in the manner and form herein provided; that it shall be lawful for Mortgagee at all times to enter upon, hold, occupy and enjoy the Mortgaged Property and every part thereof; that this Mortgage is a valid and enforceable first lien on the Mortgaged Property; that the Mortgaged Property is free from all liens and encumbrances subject only to those title exceptions listed in the mortgagee title insurance policy approved by and issued to Mortgagee, insuring the priority of the lien of this Mortgage; that all information, reports, papers and data given to Mortgagee with respect to the Mortgaged Property or Mortgagor are accurate in all material respects; that no notice of taking by eminent domain or condemnation of any part of the Mortgaged Property has been received, and Mortgagor has no knowledge that any of such is contemplated; that the

-3-

Mortgaged Property and the present use and occupancy thereof are in compliance with all applicable laws, rules, ordinances, statutes and regulations and is not a nonconforming use; that Mortgagor has received no notice with respect to the Mortgaged Property from any governmental authority of any violation of any codes, zoning or use regulations or other laws or ordinances; that there are no unpaid bills in existence for labor or materials used in making improvements or repairs respecting the Mortgaged Property or for the services of architects, surveyors, engineers or interior designers incurred in connection therewith or for equipment, appliances, fixtures or other personalty attached to the Mortgaged Property; and that no part of the Mortgaged Property is located in an area designated by any federal, state or local governmental entity as having a special flood hazard.

2.   Payment and Performance.  Mortgagor shall pay to Mortgagee, in accordance with the terms of the Note and this Mortgage, the principal and interest, and other sums therein set forth; shall perform and comply with all the agreements, conditions, covenants, provisions and stipulations of the Loan Documents and this Mortgage; and shall timely perform all of its material obligations and duties as landlord under any lease of all or any portion of the Mortgaged Property now or hereafter in effect.

3.   Maintenance and Use of Mortgaged Property.

(a)   Mortgagor shall keep and maintain or cause to be kept and maintained all buildings and improvements now or at any time hereafter erected on the Mortgaged Property, the sidewalks and curbs abutting them and all items of inventory, equipment and any other personal property necessary for or used in the maintenance and operation of the Mortgaged Property, in good order and condition and in a rentable and tenantable state of repair, and will make or cause to be made, as and when necessary, all repairs, renewals and replacements, structural and nonstructural, exterior and interior, ordinary and extraordinary, foreseen and unforeseen; provided, however, that no new construction on the Mortgaged Property or any structural work on any building erected at any time on or constituting a part of the Mortgaged Property shall be performed (including without limitation the removal or demolition of such building or the alteration of the structural character or exterior of such building) without the prior written consent of Mortgagee.  Mortgagor shall abstain from and shall not permit the commission of waste in or about the Mortgaged Property or permit the Mortgaged Property to become vacant, deserted or abandoned.  Mortgagor shall not take or permit any action with respect to a change in the zoning ordinances or regulations affecting the Mortgaged Property without the prior written consent of Mortgagee.

(b)   Mortgagor shall not use or occupy the Mortgaged Property, and shall not suffer or permit any tenant under any lease to use or occupy the Mortgaged Property, in any manner that would constitute a violation of any state and/or federal laws involving controlled substances, even in a jurisdiction that allows such use by state or local law or ordinance.  In the event that Mortgagor becomes aware of such a violation, Mortgagor shall take all actions allowed by law to terminate the violating activity.  Violation of this paragraph is a material breach of this Mortgage and constitutes an Event of Default.

4.   Insurance.

(a)   Mortgagor shall keep the Mortgaged Property continuously insured, to the extent of its full insurable value, against loss or damage by fire, with extended coverage and against such other hazards (including, without limitation, coverage against loss or damage by vandalism, malicious mischief and sprinkler leakage) as Mortgagee may reasonably require, and shall maintain commercial general liability insurance and workmen's compensation insurance in

-4-

such total amounts as Mortgagee may reasonably require from time to time.  Such insurance shall contain agreed amount endorsements, inflation guard endorsements and replacement cost endorsements reasonably satisfactory to Mortgagee.  If the Mortgaged Property is located in an area designated by the Federal Emergency Management Agency as being in a "special flood hazard area" or as having specific flood hazards, whether now or at any time hereafter. Mortgagor shall also furnish Mortgagee with flood insurance policies which conform to the requirements of the National Flood Insurance Program ("NFIP") in an amount equal to the lesser of (i) the outstanding principal balance of the Loan, (ii) the maximum amount of coverage available under the NFIP for the particular type of buildings located on the Mortgaged Property, or (iii) the full insurable value of the buildings located on the Mortgaged Property.  During the course of any construction or repair of improvements on the Mortgaged Property for which builder's risk insurance may be obtained, Mortgagor shall acquire and maintain builder's completed value risk insurance against all risks of physical loss, including collapse and transit coverage, during construction of such improvements, with deductibles not to exceed $5,000 in non-reporting form, covering the total value of work performed and equipment, supplies and materials furnished. Upon any leasing and tenant occupancy of the Mortgaged Property, Mortgagor shall also obtain insurance affording protection for continuation of income for a period of twelve (12) months, in the event of any damage caused by the perils referred to above. All policies of insurance, including policies for any amounts carried in excess of the required minimum and policies not specifically required by Mortgagee, shall be in form satisfactory to Mortgagee, issued by an insurance company or companies qualified to insure property located in New Jersey and satisfactory to Mortgagee, shall name Mortgagee as an additional insured, shall name Mortgagee as lender's loss payable, shall be endorsed with a standard mortgagee clause in favor of Mortgagee (substantially equivalent to the Insurance Services Office standard mortgagee endorsement) not subject to contribution, and shall provide for at least thirty (30) days' notice of cancellation, termination, modification, refusal to renew or reduction to Mortgagee.  If the insurance, or any part thereof, shall expire, or be withdrawn, or become void or unsafe by Mortgagor's breach of any condition thereof, or become void or unsafe by reason of the failure or impairment of the capital of any company in which the insurance may then be carried, or if for any reason in the reasonable opinion of Mortgagee the insurance shall be unsatisfactory to Mortgagee, Mortgagor shall place new insurance on the Mortgaged Property satisfactory to Mortgagee.

(b)     In the event of loss, Mortgagee shall have the exclusive right to adjust, collect and compromise all insurance claims, and Mortgagor shall not adjust, collect or compromise any claims under said policies without Mortgagee's prior written consent.  Each insurance company concerned is hereby authorized and directed to make payment under such insurance, including return of unearned premiums, directly to Mortgagee instead of to Mortgagor and Mortgagee jointly, and Mortgagor irrevocably authorizes Mortgagee to endorse any draft therefor, such authority to be deemed to be a power coupled with an interest.  Mortgagee shall have the right to retain and apply the proceeds of any such insurance, at its election, to reduction of the indebtedness secured hereby, or to restoration or repair of the property damaged on such terms as Mortgagee may specify, at Mortgagee's sole discretion (and if the proceeds are applied to restoration or repair Mortgagee may apply any excess proceeds to the reduction of the indebtedness secured hereby).  If Mortgagee elects to retain and apply such proceeds to the reduction of the indebtedness secured hereby, Mortgagee shall have the right in its sole discretion to apply any such proceeds, in such order and in such amounts as Mortgagee may elect, against: (i) any amounts payable by Mortgagor hereunder or under the Loan Documents, and/or (ii) accrued and unpaid interest under the Note, and/or (iii) the outstanding principal balance of the Note.  No application of insurance proceeds to the payment of the Note shall postpone any of the current installments of principal or interest becoming due under such Note

-5-

until such Note and all interest and other sums due hereunder and thereunder have been paid in full.

(c)     Such policies of insurance and all renewals thereof are hereby assigned to Mortgagee as additional security for payment of the indebtedness hereby secured and Mortgagor hereby agrees that any values available thereunder upon cancellation or termination of any of said policies or renewals, whether in the form of return of premiums or otherwise, shall be payable to Mortgagee as assignee thereof.  If Mortgagee becomes the owner of the Mortgaged Property or any part thereof by foreclosure or otherwise, such policies, including all right, title and interest of Mortgagor thereunder, shall become the absolute property of Mortgagee.  In addition, Mortgagor will deliver the originals or certified copies of all such policies to Mortgagee, and, not less than thirty (30) days prior to the expiration date of each such policy, will deliver to Mortgagee a renewal policy or policies (or certified copies of such policies) marked "premium paid" or accompanied by other evidence of payment satisfactory to Mortgagee.  Mortgagor shall not change the present use of any portion of the Mortgaged Property in any manner or permit any condition to exist on the Mortgaged Property which would permit an insurer to cancel or increase the premium for any insurance policy or invalidate such policy in whole or in part.  Mortgagor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained under this Paragraph 4 unless Mortgagee is included thereon as a named insured with loss payable to Mortgagee under a non-contributory mortgagee clause satisfactory to Mortgagee.  Mortgagor shall immediately notify Mortgagee whenever any such separate insurance is taken out, specifying the insurer thereunder and full particulars as to the policies evidencing the same.

5.     Taxes and Other Charges.  Before interest or penalties are due thereon and otherwise when due, Mortgagor shall pay all taxes, assessments, levies, liabilities, obligations, encumbrances, water and sewer rents and all other charges or claims of every nature and kind which may be imposed, suffered, placed, assessed, levied, or filed at any time against Mortgagor, the Mortgaged Property or any part thereof or against the interest of Mortgagee therein, or with respect to the Note or Mortgage and/or the ownership of either thereof by Mortgagee, or which by any present or future law may have priority over the indebtedness secured hereby either in lien or in distribution out of the proceeds of any judicial sale, without regard to any law heretofore or hereafter to be enacted imposing payment of the whole or of any part upon Mortgagee.  Within fifteen (15) days after the payment of any such tax, assessment, levy, liability, obligation or encumbrance, Mortgagor shall deliver to Mortgagee evidence acceptable to Mortgagee of such payment.  Provided, however, that if, pursuant to this Mortgage or otherwise, Mortgagor shall have deposited with Mortgagee before the due date thereof sums sufficient to pay any such taxes, assessments, levies, water and sewer rents, charges or claims, and Mortgagor is not otherwise in default, they shall be paid by Mortgagee.

6.     Installments for Insurance, Taxes and Other Charges.  Without limiting the effect of Paragraphs 4 and 5 hereof, Mortgagee may require Mortgagor to pay to Mortgagee (or to such other entity as Mortgagee shall designate), monthly with the monthly installments of interest (or the monthly installments of principal and interest when applicable), an amount equal to one-twelfth (1/12) of the annual premiums for the insurance policies referred to hereinabove and the annual real estate taxes, water and sewer rents, any special assessments, charges or claims and any other item which at any time may be or become a lien upon the Mortgaged Property prior to the lien of this Mortgage; and on demand from time to time Mortgagor shall pay to Mortgagee any additional sums necessary to pay the premiums and other items, all as estimated by Mortgagee.  The amounts so paid shall be security for the premiums and other items and shall be used in payment thereof if Mortgagor is not otherwise in default hereunder.  No amount so paid shall be deemed to be trust funds but may be commingled with general funds of Mortgagee and

-6-

no interest shall be payable thereon. If, pursuant to any provision of this Mortgage or the Note, the whole amount of the unpaid principal debt becomes due and payable, Mortgagee shall have the right, in its sole discretion, to apply any amount so held, in such order and in such amounts as Mortgagee may elect, against: (a) any amounts payable by Mortgagor hereunder or under the Loan Documents, and/or (b) accrued and unpaid interest under the Note, and/or (c) the outstanding principal balance of the Note. At Mortgagee's option, Mortgagee from time to time may waive, and after any such waiver may reinstate, the provisions of this paragraph requiring the monthly payments. Mortgagor will furnish to Mortgagee bills and other requests for payment in sufficient time to enable Mortgagee to pay such premiums, taxes, assessments, levies, charges and fees as provided above.

7.     Mortgagor's Existence and Taxes. Mortgagor shall keep in effect its existence and rights under the laws of the state of its formation, if applicable, and its right to own property and transact business in the state in which the Mortgaged Property is situated during the entire time that it has any ownership interest in the Mortgaged Property. Mortgagor shall file returns for all taxes owing by Mortgagor with the proper authorities, bureaus or departments and it shall pay, when due and payable and before interest or penalties are due thereon, all taxes owing by Mortgagor to the United States, to such state of formation and to the state in which the Mortgaged Property is situated and any political subdivision thereof, and shall produce to Mortgagee receipts showing payment of any and all such taxes, charges or assessments prior to the last dates upon which such taxes, charges or assessments are payable without interest or penalty charges, and within ten (10) days of receipt thereof all settlements, notices of deficiency or overassessment and any other notices pertaining to Mortgagor's tax liability which may be issued by the United States, such state of formation, the state in which the Mortgaged Property is situated and any political subdivision thereof.

8.     Documentary and Other Stamps. If at any time the United States, the state in which the Mortgaged Property is located or any political subdivision thereof, or any department or bureau of any of the foregoing, shall require documentary, revenue or other stamps on the Note secured hereby or this Mortgage, Mortgagor on demand shall pay for them with any interest or penalties payable thereon.

9.     Future Taxes. If hereafter any law or ordinance shall be adopted imposing a tax directly or indirectly on Mortgagee with respect to the Mortgaged Property, the value of Mortgagor's equity therein, or the indebtedness evidenced by the Note and secured by this Mortgage, Mortgagee, at its election, shall have the right at any time after the tax has been imposed to give Mortgagor written notice declaring that the principal debt, with interest and other appropriate charges, shall be due on a specified date not less than sixty (60) days thereafter which notice shall specify the nature of the tax which is the basis for acceleration; provided, however, that such election shall be ineffective if, prior to the specified date, Mortgagor lawfully pays the tax (in addition to all other payments required hereunder) and agrees to pay the tax whenever it becomes due and payable thereafter, which agreement shall then constitute a part of this Mortgage.

10.    Security Agreement.

(a)     This Mortgage constitutes a security agreement within the meaning of the Uniform Commercial Code, as adopted and enacted and as in effect from time to time in the State of New Jersey (the "Uniform Commercial Code"). Terms used herein which are defined in the Uniform Commercial Code and not otherwise defined herein shall have the respective meanings ascribed to such terms in the Uniform Commercial Code. To the extent the definition of any category or type of collateral is modified by any amendment, modification or revision to

-7-

the Uniform Commercial Code, such modified definition will apply automatically as of the date of such amendment, modification or revision.

(b)     To secure the Obligations, Mortgagor, as debtor, hereby assigns and grants to Mortgagee, as secured party, a continuing lien on and security interest in all personal property of Mortgagor, including the following, all whether now owned or hereafter acquired or arising and wherever located:  (i) accounts (including health-care-insurance receivables and credit card receivables); (ii) securities entitlements, securities accounts, commodity accounts, commodity contracts and investment property; (iii) deposit accounts; (iv) instruments (including promissory notes); (v) documents (including warehouse receipts); (vi) chattel paper (including electronic chattel paper and tangible chattel paper); (vii) inventory, including raw materials, work in process, or materials used or consumed in Mortgagor's business, items held for sale or lease or furnished or to be furnished under contracts of service, sale or lease, goods that are returned, reclaimed or repossessed; (viii) goods of every nature, including stock-in-trade, goods on consignment, standing timber that is to be cut and removed under a conveyance or contract for sale, the unborn young of animals, crops grown, growing, or to be grown, manufactured homes, computer programs embedded in such goods and farm products; (ix) equipment, including machinery, vehicles and furniture; (x) fixtures; (xi) agricultural liens; (xii) as-extracted collateral; (xiii) commercial tort claims, if any; (xiv) letter of credit rights; (xv) general intangibles, of every kind and description, including payment intangibles, software, computer information, source codes, object codes, records and data, all existing and future customer lists, choses in action, claims (including claims for indemnification or breach of warranty), books, records, patents and patent applications, copyrights, trademarks, tradenames, tradestyles, trademark applications, goodwill, blueprints, drawings, designs and plans, trade secrets, contracts, licenses, license agreements, formulae, tax and any other types of refunds, returned and unearned insurance premiums, rights and claims under insurance policies; (xvi) all supporting obligations of all of the foregoing property; (xvii) all property of Mortgagor now or hereafter in Mortgagee's possession or in transit to or from, or under the custody or control of, Mortgagee or any affiliate thereof; (xviii) all cash and cash equivalents thereof; and (xix) all cash and noncash proceeds (including insurance proceeds) of all of the foregoing property, all products thereof and all additions and accessions thereto, substitutions therefor and replacements thereof.

(c)     By its signature hereon, Mortgagor hereby irrevocably authorizes Mortgagee to file against Mortgagor one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code in form satisfactory to Mortgagee, and Mortgagor will pay the cost of preparing and filing the same in all jurisdictions in which such filing is deemed by Mortgagee to be necessary or desirable in order to perfect, preserve and protect its security interests. If required by Mortgagee, Mortgagor will execute all documentation necessary for Mortgagee to obtain and maintain perfection of its security interests in the personal property of Mortgagor.

(d)     Upon the occurrence of any Event of Default hereunder, Mortgagee shall have, in addition to any other rights and remedies hereunder or under the Note, all of the rights and remedies granted to a secured party under the Uniform Commercial Code with respect to such personal property, including without limitation the right to take possession of such personal property wherever located and to sell all or any portion thereof at public or private sale, without prior notice to Mortgagor, except as otherwise required by law (and if notice is required by law, after 10 days' prior written notice), at such place or places and at such time or times and in such manner and upon such terms, whether for cash or on credit, as Mortgagee in its sole discretion may determine. To the extent permitted by law, Mortgagor and Mortgagee agree that the items set forth on the financing statements shall be treated as part of the real estate and improvements regardless of the fact that such items are set forth in the financing statements. Such items are

-8-

contained in the financing statements to create a security interest in favor of Mortgagee in the event such items are determined to be personal property under the law. Notwithstanding any release of any or all of that property included in the Mortgaged Property which is deemed "real property", any proceedings to foreclose this Mortgage or its satisfaction of record, the terms hereof shall survive as a security agreement with respect to the security interest created hereby and referred to above until the repayment or satisfaction in full of the obligations of Mortgagor as are now or hereafter evidenced by the Note. Upon the occurrence of any Event of Default Mortgagor, upon demand by Mortgagee, shall promptly assemble any personal property included in the Mortgaged Property and make it available to Mortgagee at a place to be designated by Mortgagee which shall be reasonably convenient to Mortgagee and Mortgagor. Both Mortgagor and Mortgagee shall be eligible to purchase any part or all of such property at any such disposition.

(e)     To the extent permitted under the Uniform Commercial Code, Mortgagor waives all rights of redemption and all other rights and remedies of a debtor thereunder and all formalities prescribed by law relative to the sale or disposition of the personal property after the occurrence of an Event of Default hereunder and to all other rights and remedies of Mortgagor with respect thereto. In exercising its right to take possession of the personal property upon the occurrence of an Event of Default hereunder, Mortgagee may enter upon the Mortgaged Property without being guilty of trespass or any other wrong-doing, and without liability for damage thereby occasioned.

(f)     Mortgagor shall reimburse Mortgagee, on demand, for all reasonable expenses of retaking, holding, preparing for sale, lease or other use or disposition, selling, leasing or otherwise using or disposing of the personal property which are incurred or paid by Mortgagee, including, without limitation, all attorneys' fees, legal expenses and costs, and all such expenses shall be added to Mortgagor's obligations to Mortgagee and shall be secured hereby.

(g)     As to those items of personal property that are or are to become affixed to the Mortgaged Property and/or the improvements, and all products and proceeds thereof, this Mortgage is and shall be effective as a financing statement filed as a fixture filing under the Uniform Commercial Code as and from the date of its recordation in the real estate records of the county in which the Land is situated. The name of the record owner of the real property and improvements is Mortgagor as identified on the first page of this Mortgage. The name and address of Mortgagor, as debtor, is set forth on the first page of this Mortgage. The name and address of Mortgagee, as secured party and from whom information concerning the security interest created herein may be obtained, is set forth on the first page of this Mortgage. The definition of Mortgaged Property describes the types and items of the personal property affixed or to be affixed to the Land and the improvements thereon. Such portion of such items constituting fixtures are related to the Land. This financing statement shall remain in effect as a fixture filing until this Mortgage is released or satisfied of record.

(h)     Mortgagor hereby collaterally assigns to Mortgagee all of Mortgagor's rights, title, interest and privileges in and to any and all agreements of sale now or hereafter entered into by Mortgagor with respect to the Mortgaged Property and all proceeds of such agreements of sale, including without limitation deposit monies. Until an Event of Default hereunder or under any other Loan Document occurs, this assignment shall not affect any rights of Mortgagor to exercise any and all rights or privileges under or arising from such agreements of sale, all except as Mortgagor may have otherwise elsewhere agreed. At any time after the occurrence and during the continuance of an Event of Default hereunder, Mortgagee shall have the right (but no obligation) to exercise and enforce any of Mortgagor's rights under all or some

-9-

of the agreements of sale. Nothing herein shall obligate Mortgagee to perform any obligation of Mortgagor under any agreement of sale, and Mortgagor hereby agrees to indemnify Mortgagee and save it harmless from and against any and all loss, liability, damage or expense arising from or as a result of any claim by any purchaser or any other party arising under or in connection with an agreement of sale. Neither the acceptance of this assignment, nor the collection by Mortgagee of any sums due or becoming due under any agreement of sale, shall constitute a waiver of any rights of Mortgagee under this Mortgage or any other Loan Document.

11.    Compliance with Laws and Regulations. Mortgagor shall comply with all laws, ordinances, regulations and orders of all federal, state, municipal and other governmental authorities relating to the Mortgaged Property, including without limitation the Americans with Disabilities Act (the "ADA"). Mortgagor certifies that all renovations, construction and improvements with respect to the Mortgaged Property are and shall be in compliance with the ADA. Mortgagor will pay all license fees and similar municipal charges for the use of the Mortgaged Property and any other areas now or hereafter comprising part thereof or used in connection therewith and will not, unless so required by a governmental agency having jurisdiction, discontinue use or occupancy of any portion of the Mortgaged Property without the prior written consent of Mortgagee. Mortgagor shall not take or permit any action with respect to the Mortgaged Property which will in any manner impair the security of this Mortgage.

12.    Inspection; Updated Appraisal. Mortgagee and any persons authorized by Mortgagee shall have the right at any time, to enter the Mortgaged Property at a reasonable hour to inspect and photograph its condition and state of repair and/or for the purpose of appraising the same. Mortgagee may, from time to time, order an updated appraisal of the Mortgaged Property, which appraisal shall be prepared by an appraiser selected by Mortgagee at the sole cost of Mortgagor.

13.    Declaration of No Set-Off. Within one (1) week after being requested to do so by Mortgagee, Mortgagor shall certify to Mortgagee or to any proposed assignee of this Mortgage, in a writing duly acknowledged, the amount of principal, interest and other charges then owing on the obligation secured by this Mortgage and by prior liens, if any, and whether Mortgagor claims any set-offs or defenses against Mortgagor's obligation to pay such amounts, and if so the precise basis for such set-offs or defenses.

14.    Financial Statements and Information. Mortgagor agrees to make the books and accounts relating to the Mortgaged Property and Mortgagor's operations available for inspection by Mortgagee, or its representatives, upon written request at any reasonable time. Mortgagor further agrees to comply with the financial reporting requirements set forth in Section 5.4 of the Loan Agreement and to furnish Mortgagee with such additional financial statements or information as may be requested from time to time by Mortgagee.

15.    Required Notices. Mortgagor shall notify Mortgagee promptly of the occurrence of any of the following:

(a)    a fire or other casualty causing damage to the Mortgaged Property;

(b)    receipt of notice of eminent domain proceedings or condemnation of all or any part of the Mortgaged Property;

(c)    receipt of notice from any governmental authority relating to the structure, use or occupancy of the Mortgaged Property;

-10-

(d)    receipt of any written notice from any commercial tenant of all or any portion of the Mortgaged Property claiming a material default on the part of Mortgagor as landlord under a lease or relating to a material default by the tenant under the lease or as to any termination of the lease prior to its stated terms;

(e)    substantial change in the occupancy of the Mortgaged Property;

(f)    commencement of any litigation affecting the Mortgaged Property;

(g)    receipt of any notice from the holder or claimant of any lien or security interest in the Mortgaged Property or any part thereof; or

(h)    receipt by any Obligor (as defined in the Note) of any notice of default with respect to any other indebtedness of any Obligor for borrowed money.

16.    <u>Condemnation</u>.

(a)    In the event of any condemnation or taking of any part of the Mortgaged Property by eminent domain, or other injury to or decrease in the value of the Mortgaged Property by any public or quasi-public authority or corporation, all proceeds (that is, the award or agreed compensation for the damages sustained) allocable to Mortgagor are hereby assigned by Mortgagor to Mortgagee to further secure the payment of the indebtedness secured hereby. No settlement for damages sustained shall be made by Mortgagor without Mortgagee's prior written approval. Mortgagee is authorized and empowered (but not required) to collect and receive any such condemnation award and all condemnation proceeds which then shall be applied in the order and in the amounts that Mortgagee, in Mortgagee's sole discretion, may elect, to the reduction of the indebtedness secured hereby, or toward payment to Mortgagor, on such terms as Mortgagee may specify, to be used for the sole purpose of altering, restoring or rebuilding any part of the Mortgaged Property which may have been altered, damaged or destroyed as a result of the taking, or other injury to the Mortgaged Property. Mortgagor shall execute such further assignments of any such awards as Mortgagee may require. If Mortgagee elects to apply such proceeds to reduction of the indebtedness secured hereby, Mortgagee shall have the right in its sole discretion to apply any such proceeds, in such order and in such amounts as Mortgagee may elect, against: (i) any amounts payable by Mortgagor hereunder or under the Loan Documents, and/or (ii) accrued and unpaid interest under the Note, and/or (iii) the outstanding principal balance of the Note.

(b)    If prior to the receipt of the proceeds by Mortgagee the Mortgaged Property shall have been sold on foreclosure of this Mortgage, Mortgagee shall have the right to receive the proceeds to the extent of: (i) any deficiency found to be due to Mortgagee in connection with the foreclosure sale, with legal interest thereon, and (ii) counsel fees, costs and disbursements incurred by Mortgagee in connection with collection of the proceeds and the proceedings to establish the deficiency.

(c)    If the amount of the initial award of damages for the condemnation is insufficient to pay in full the indebtedness secured hereby with interest and other appropriate charges, Mortgagee shall have the right to prosecute to final determination or settlement an appeal or other appropriate proceedings in the name of Mortgagee or Mortgagor, for which Mortgagee is hereby appointed irrevocably as attorney-in-fact for Mortgagor. In that event, the expenses of the proceedings, including counsel fees, shall be paid first out of the proceeds and only the excess, if any, paid to Mortgagee shall be credited against the amounts due under this Mortgage.

-11-

(d)     Nothing herein shall limit the rights otherwise available to Mortgagee, at law or in equity, including the right to intervene as a party to any condemnation proceeding.

(e)     No application of condemnation proceeds to the payment of the Note shall postpone any of the current installments of principal or interest becoming due under such Note until the Note and all interest and other sums due thereunder and hereunder are paid in full.

17.     Leases.

(a)     Mortgagor hereby absolutely, unconditionally and irrevocably assigns to Mortgagee all existing and future leases (the "Leases") and all rents and profits of the Mortgaged Property as further security for the payment of the indebtedness hereby secured and Mortgagor grants to Mortgagee the right to enter upon the Mortgaged Property for the purposes of collecting the same and to let the Mortgaged Property or any part thereof. This assignment and grant is present and absolute and shall continue in effect until the indebtedness secured by this Mortgage is paid. Mortgagee hereby agrees that Mortgagor shall have a license to collect said rents and profits until the occurrence of an Event of Default under this Mortgage, and Mortgagor agrees to use such rents and profits in payment of principal, interest and other sums becoming due under the Loan Documents and in payment of taxes, assessments, sewer rents, water rents and charges becoming due as aforesaid, but such privilege of Mortgagor may be revoked by Mortgagee upon an Event of Default without notice. Mortgagor shall not, without the written consent of Mortgagee, receive or collect rent or other charge for a period of more than one month in advance. Mortgagee shall not be deemed to have accepted the assignment except as a pledge or be obligated as lessor by virtue of this assignment except by a separate and express written agreement of Mortgagee.

(b)     Mortgagor hereby authorizes and instructs each and every present and future tenant of any of the Mortgaged Property to pay all rents directly to Mortgagee and to perform all other obligations of that tenant for the direct benefit of Mortgagee, as if Mortgagee were the landlord under the lease with that tenant, immediately upon receipt of a demand by Mortgagee to make such payment or perform such obligations. No tenant shall have any responsibility to ascertain whether such demand is permitted hereunder or whether a default shall have occurred. Mortgagor hereby waives any right, claim or demand it may now or hereafter have against any such tenant by reason of such payment of rents or performance of obligations to Mortgagee; and any such payment or performance to Mortgagee shall discharge the obligations of the tenant to make such payment or performance to Mortgagor. Mortgagor shall indemnify Mortgagee and hold Mortgagee harmless from any and all liability under any lease and for any and all claims and demands which may be asserted against Mortgagee by reason of any alleged obligations to perform any provision of any lease, except as to Mortgagee's own gross negligence or willful misconduct.

(c)     Mortgagor represents and warrants to Mortgagee that the Mortgaged Property is not subject to any leases or other occupancy rights except as set forth on the most recent schedule of leases delivered to and approved by Mortgagee, and no tenant or any other party has any option or right to purchase the Mortgaged Property or any part of the Mortgaged Property. Mortgagor will deliver to Mortgagee upon written request a certified statement setting forth the names of all tenants occupying space in the Mortgaged Property, a brief description of the space occupied, the rental payable and the date of expiration of the respective leases, and the status of the rental payments due thereunder.

-12-

(d)     Mortgagor shall promptly (i) perform all of the provisions of the Leases on the part of the landlord thereunder to be performed; (ii) enforce all of the provisions of the Leases on the part of the tenants thereunder to be performed; and (iii) appear in and defend any action or proceeding arising under, growing out of or in any manner connected with the Leases or the obligations of Mortgagor as landlord or of the tenants thereunder.

(e)     Mortgagor shall deliver to Mortgagee copies of any new Leases or amendments to existing Leases within fifteen (15) days of the execution of such new Leases or amendments to existing Leases. Mortgagor shall also deliver to Mortgagee written notice within fifteen (15) days of any termination or expiration of Leases. Mortgagor shall not enter into any new Leases or amend any of the terms of any of the existing Leases without obtaining the prior written approval of Mortgagee. All Leases (existing and future) shall, unless Mortgagee otherwise elects in its sole discretion, be subject and subordinate in all respects to the lien of this Mortgage.

18.     No Other Financing or Liens. Mortgagor shall not create, incur, guarantee, assume or suffer to exist any indebtedness, except: (a) indebtedness to Mortgagee; or (b) open account trade debt incurred in the ordinary course of business and not past due. Without the prior written consent of Mortgagee, which Mortgagee can grant or withhold in its sole discretion, Mortgagor shall not create or cause or permit to exist any lien on, or security interest in the Mortgaged Property or any part thereof (whether or not such lien or security interest is subordinate to the lien of this Mortgage), including any furniture, fixtures, appliances, machinery, equipment, or other items of personal property which are intended to be or become part of the Mortgaged Property, or securing repayment of monies paid to or for the benefit of Mortgagor.

19.     No Transfer. Without the prior written consent of Mortgagee, which Mortgagee can grant or withhold in its sole discretion, Mortgagor will abstain from and will not cause or permit any sale, assignment or transfer of (a) all or any part of the Mortgaged Property or any beneficial interest therein, or any estate or other interest in the Mortgaged Property or any part thereof, or (b) any beneficial interest in Mortgagor, in either case whether voluntarily or by operation of law, whether by sale, exchange, conveyance, merger, division, consolidation or otherwise. Any consent given by Mortgagee hereunder shall pertain only to the proposed transfer for which the consent was requested and shall not obligate Mortgagee to approve any further transfers.

20.     Right to Remedy Defaults. In the event that Mortgagor should fail to pay corporate taxes, real estate or other taxes, assessments, water and sewer rents, charges and claims on or before the date on which any penalty may be imposed with respect thereto, or fail to pay insurance premiums, or fail to make necessary repairs, or permit waste, or fail to comply with any other provision of this Mortgage or the Loan Documents, Mortgagee, at its election and without notice to Mortgagor, shall have the right to make any payment or expenditure and to take any action which Mortgagor should have made or taken, or which Mortgagee deems advisable to protect the security of this Mortgage or the Mortgaged Property, without prejudice to any of Mortgagee's rights or remedies available hereunder or otherwise, at law or in equity. All such sums, as well as costs, advanced by Mortgagee pursuant to this Mortgage shall be due immediately from Mortgagor to Mortgagee, shall be secured hereby, and shall bear interest at the Default Rate (as defined in the Note) from the date of payment by Mortgagee until the date of repayment.

21.     Actions of Mortgagee. Mortgagee may, at any time and from time to time, without notice to and without the consent of any other person or entity (except for Mortgagor in

-13-

the case of an acceleration of the time of payment of the indebtedness secured hereby in the absence of an Event of Default hereunder or a modification of the terms of this Mortgage or the other Loan Documents): (a) extend or accelerate the time of payment of the indebtedness secured hereby, (b) agree to modify the terms of this Mortgage or the other Loan Documents, including increasing payments of interest and principal under the Note, (c) release any person liable for payment of any indebtedness secured hereby or for performance of any obligation, (d) release all or any part of the security held for the indebtedness secured hereby or (e) exercise or refrain from exercising or waive any right Mortgagee may have. Mortgagee shall have such rights and may exercise them without affecting the lien or priority of this Mortgage upon the Mortgaged Property or any part thereof notwithstanding the fact that junior mortgages, judgments or other claims or encumbrances may be impaired, prejudiced or otherwise adversely affected thereby.

      22.    Security and Priority of Advances. This Mortgage secures future advances. Advances may be made and indebtedness incurred from time to time hereafter, but each such advance or indebtedness shall be secured hereby as if made on the date hereof. The maximum amount of indebtedness (which term excludes interest and excludes the protective advances and expenses referred to in the immediately following sentence) outstanding at any time which is secured by this Mortgage is double the face amount of the Note. This Mortgage also secures (i) all advances made by Mortgagee with respect to the Mortgaged Property for the payment of real estate taxes, water and sewer rents, assessments, maintenance charges, insurance premiums or costs incurred for the protection of any of the Mortgaged Property or the lien of this Mortgage, (ii) all expenses incurred by Mortgagee by reason of an Event of Default hereunder, and (iii) all advances made by Mortgagee to enable completion of construction of improvements to the Mortgaged Property. This Mortgage shall constitute a lien on the Mortgaged Property from the time this Mortgage is left of record for, among other things, all such advances and expenses, plus interest thereon, regardless of the time when such advances are made or such expenses are incurred.

      23.    Notice to Prior Lienholders. Mortgagor hereby authorizes Mortgagee, without liability and at Mortgagee's sole discretion, to give notice in form and substance satisfactory to Mortgagee of the lien and security interest created by this Mortgage to a holder of a previously recorded mortgage which is a lien on the Mortgaged Property in order, among other things, to subordinate further advances by such mortgage holder.

      24.    Events of Default. Each of the following shall constitute an event of default (hereinafter called an "Event of Default") hereunder: (a) any Event of Default (as defined in any of the Obligations); (b) any default under any of the Obligations that does not have a defined set of "Events of Default" and the lapse of any notice or cure period provided in such Obligations with respect to such default; (c) demand by Mortgagee under any of the Obligations that have a demand feature; (d) the failure by Mortgagor to perform any of its obligations under this Mortgage; (e) falsity, inaccuracy or material breach by Mortgagor of any warranty, covenant, representation or statement contained in this Mortgage or otherwise made or furnished to Mortgagee by or on behalf of Mortgagor; (f) an uninsured material loss, theft, damage, or destruction to any of the Mortgaged Property; (g) the entry of any lien against or the making of any levy, seizure or attachment of or on the Mortgaged Property; (h) the failure of Mortgagee to have a mortgage lien on the Mortgaged Property with the priority required under Paragraph 1 of this Mortgage; (i) any indication or evidence received by Mortgagee that Mortgagor may have directly or indirectly been engaged in any type of activity which, in Mortgagee's discretion, might result in the forfeiture of any of the Mortgaged Property to any governmental entity, federal, state or local; (j) foreclosure or execution proceedings are instituted against the Mortgaged Property upon any other lien or claim, whether alleged to be superior or junior to the lien of this Mortgage; or (k) the failure by

-14-

Mortgagor to pay any taxes or other charges as required under Paragraph 5 of this Mortgage, or to maintain in full force and effect any insurance required under Paragraph 4 of this Mortgage.

    25.    Remedies.

    (a)    Upon the happening of any Event of Default, the entire unpaid balance of the principal, the accrued interest and all other obligations under the Loan Documents shall become immediately due and payable, without notice or demand.

    (b)    When the indebtedness and other obligations under the Loan Documents shall become due and payable, either because of maturity or because of the occurrence of any Event of Default, or otherwise, then forthwith:

    (i)    Foreclosure. Mortgagee may institute an action of mortgage foreclosure against the Mortgaged Property, or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the Obligations, with interest at the rate stipulated in the Note to the date of default, and thereafter at the Default Rate (as defined in the Note), together with all other sums due by Mortgagor in accordance with the provisions of the Note and this Mortgage, including all sums which may have been loaned by Mortgagee to Mortgagor after the date of this Mortgage, and all sums which may have been advanced by Mortgagee for taxes, water or sewer rents, charges or claims, payments on prior liens, insurance, utilities or repairs to the Mortgaged Property, all costs of suit, together with interest at such rate on any judgment obtained by Mortgagee from and after the date of any Sheriff's or other judicial sale until actual payment is made of the full amount due Mortgagee, and a reasonable attorney's commission for collection; or

    (ii)    Possession. Mortgagee (or a duly appointed receiver for the Mortgaged Property) may enter into possession of the Mortgaged Property, manage, lease and operate the Mortgaged Property, collect therefrom all rentals (which term shall also include sums payable for use and occupancy) and, after deducting all costs of collection and administration expense, apply the net rental to any or all of the following in such order and amounts as Mortgagee or such receiver, in Mortgagee's or such receiver's sole discretion, may elect: the payment of taxes, water and sewer rents, charges and claims, insurance premiums and all other carrying charges, and to the maintenance, repair or restoration of the Mortgaged Property, and on account and in reduction of the principal or interest, or both, hereby secured; in and for that purpose Mortgagor hereby assigns to Mortgagee all rentals due and to become due under any lease or leases or rights to use and occupancy of the Mortgaged Property hereafter created, as well as all rights and remedies provided in such lease or leases or at law or in equity for the collection of the rentals; or

    (iii)    Receiver. Mortgagee may, upon any proper action or proceeding being commenced for the foreclosure of this Mortgage, apply for, and Mortgagee as a matter of right, without consideration of the value of the Mortgaged Property as security for the amount due Mortgagee, or of the solvency of any person, firm or corporation obligated for the payment of such amount, shall be entitled to, the appointment by any competent court or tribunal, without prior demand or notice to any party, of a receiver of rents and profits and rental value of the Mortgaged Property, with power to take possession of the Mortgaged Property, including possession from Mortgagor if in possession and occupying any portion of the Mortgaged Property, and in the latter case to require Mortgagor, as a condition of remaining in possession and occupation, to pay the reasonable rental value for the use and occupation thereof, with

-15-

further power to lease and repair the Mortgaged Property and to renovate same to suit new tenants and with such other powers as may be deemed necessary, and such receiver after deducting all proper charges and expenses attending the execution of the said trust as receiver, shall each month pay over to Mortgagee the residue of the said rents and profits and rental value, to be applied by Mortgagee to the payment of the amount remaining secured hereby, or to any deficiency (whether or not any judgment therefor may be entered and irrespective of the market value of the Mortgaged Property) which may exist in the event of foreclosure by sale after applying the proceeds of the sale of the Mortgaged Property to the payment of the amount due, including interest, costs and expenses of such foreclosure and sale, or in the event of strict foreclosure to the payment of any deficiency existing thereunder. A receiver, while in possession of the Mortgaged Property, shall have the right to make repairs and to make improvements necessary or advisable in its or his opinion to preserve the Mortgaged Property, or to make and keep them rentable to the best advantage, and Mortgagee may advance moneys to a receiver for such purposes. Any moneys so expended or advanced by Mortgagee or by a receiver shall be repaid so far as possible out of the rents collected after payment of other expenses properly chargeable against said rents, and any unpaid balance of moneys so advanced or expended shall be added to and become a part of the debt secured by this Mortgage. Mortgagor hereby expressly consents to the appointment of a receiver for the Mortgaged Property upon the occurrence of any Event of Default, and waives any requirement for the posting of any bond or other security in connection with such appointment and such receiver, and for any hearing in connection with such appointment.

(iv)  Post-Judgment Remedies: Mortgagor authorizes Mortgagee, at its option after entry of any judgment in mortgage foreclosure pursuant to this Mortgage and/or any judgment pursuant to the Note, to petition the court in which such judgment was entered to reassess damages and/or modify such judgment to include (i) all sums which may have been advanced or paid by Mortgagee after the entry of such judgment for, or are otherwise due and payable for, taxes, water and sewer rents, other lienable charges or claims, attorneys' fees and costs, insurance for or repairs to or maintenance of the Mortgaged Property and (ii) additional accrued interest at the rates set forth in the Note.

(c)  Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of the Note (or any other documents evidencing the Obligations) and this Mortgage, as they become due, and proceed thereafter to an execution sale, and without prejudice to the right of Mortgagee thereafter to bring an action of mortgage foreclosure, or any other action, for any default by Mortgagor existing at the time the earlier action was commenced.

(d)  Any real estate sold pursuant to any writ or order of execution issued on a judgment obtained by virtue of the Note or this Mortgage, or pursuant to any other judicial proceedings under the Mortgage, may be sold in one parcel, as an entirety, or in such parcels, and in such manner or order as Mortgagee, in its sole discretion, may elect.

26.  Non-Merger. In the event Mortgagee shall acquire title to the Mortgaged Property by conveyance from Mortgagor or as a result of foreclosure or otherwise, this Mortgage shall not merge in the fee estate of the Mortgaged Property but shall remain and continue as an existing and enforceable lien on the Mortgaged Property as security for the Obligations until this Mortgage shall be released of record by Mortgagee.

27.  Cumulative Rights. The rights and remedies of Mortgagee as provided in this Mortgage, the Note, and every Loan Document, shall be cumulative and concurrent; may be pursued separately, successively or together against Mortgagor or against the Mortgaged

-16-

Property, or both, at the sole discretion of Mortgagee; and may be exercised as often as occasion therefor shall arise. The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

28.     No Waiver Implied. Any failure by Mortgagee to insist upon strict performance by Mortgagor of any of the terms and provisions of this Mortgage or the Note shall not be deemed to be a waiver of any of the terms or provisions of this Mortgage or the Note, and Mortgagee shall have the right thereafter to insist upon strict performance by Mortgagor of any and all of them. Neither Mortgagor nor any other person now or hereafter obligated for payment of all or any part of the sums now or hereafter secured by this Mortgage shall be relieved of such obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor or of any other person so obligated to take action to foreclose on this Mortgage or otherwise enforce any provisions of the Mortgage or the Note, or by reason of the release, regardless of consideration, of all or any part of the security held for the indebtedness secured by this Mortgage, or by reason of any agreement or stipulation between any subsequent owner of the Mortgaged Property and Mortgagee extending the time of payment or modifying the terms of this Mortgage or the Note without first having obtained the consent of Mortgagor or such other person; and in the latter event Mortgagor and all such other persons shall continue to be liable to make payments according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Mortgagee.

29.     Operating Accounts and Escrow Accounts. Throughout the term of the Loan, Mortgagor's operating accounts and escrow accounts with respect to the Mortgaged Property shall be maintained with Mortgagee.

30.     **Waiver of Jury Trial. Mortgagor and Mortgagee (by its acceptance hereof) irrevocably waive jury trial and the right thereto in any and all disputes involving Mortgagee or Mortgagee's parent, affiliates or related entities or any officer, employee, director, shareholder, attorney or partner of any of them, whether hereunder or under any other agreements, notes, papers, instruments or documents heretofore or hereafter executed or any other contract whether similar or dissimilar. This shall be deemed a covenant enforceable independently of all other provisions of this Mortgage.**

31.     Other Waivers. Mortgagor hereby waives and releases:

(a)     all errors, defects and imperfections in any proceeding instituted by Mortgagee under the Note or this Mortgage, or both;

(b)     all benefit that might accrue to Mortgagor by virtue of any present or future law exempting the Mortgaged Property, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale on execution, or providing for any stay of execution, exemption from civil process or extension of time for payment;

(c)     unless specifically required herein, all notices of Mortgagor's default or of Mortgagee's election to exercise, or Mortgagee's actual exercise of any option under the Note, this Mortgage or the other Loan Documents;

(d)     after sale or sales of the Mortgaged Property any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof; and

(e)     any right to have the Mortgaged Property marshaled upon any foreclosure hereunder. The right is hereby given by Mortgagor and reserved by Mortgagee to make partial

-17-

...

release or releases of security hereunder, agreeable to Mortgagee without notice to, or the consent, approval or agreement of other parties in interest, which partial release or releases shall not impair in any manner the validity of or priority of this Mortgage on the security remaining, nor release the personal liability of Mortgagor for the debt hereby secured.

Mortgagor hereby expressly waives all benefit or advantage of any such law or laws to the extent that it lawfully may, and covenants not to hinder, delay or impede the execution of any power herein granted or delegated to Mortgagee, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted.

32.   Environmental Matters.

(a)   For purposes of this Paragraph 32, the term "Environmental Laws" shall mean any federal, state or local laws, regulations, statutes, codes, rules, resolutions, directives, orders, executive orders, consent orders, guidance from regulatory agencies, policy statements, judicial decrees, standards, permits, licenses and ordinances, or any judicial or administrative interpretation of any of the foregoing, pertaining to the protection of land, water, air, health, safety or the environment, whether now or in the future enacted, promulgated or issued. The term "Regulated Substances" shall mean all substances, chemicals, materials or elements that are prohibited, limited or regulated by the Environmental Laws, or any other substances, chemicals, materials or elements that are defined as "hazardous" or "toxic," or otherwise regulated, under the Environmental Laws, or that are known or considered to be harmful to the health or safety of occupants or users of the Mortgaged Property. The term "Contamination" shall mean the seeping, spilling, leaking, pumping, pouring, emitting, using, emptying, discharging, injecting, escaping, leaching, dumping, disposing, releasing or the presence of Regulated Substances at, under or upon the Mortgaged Property or into the environment, or arising from the Mortgaged Property or migrating to or from the Mortgaged Property, which may require notification, treatment, response or removal action or remediation under any Environmental Laws.

(b)   Mortgagor represents and warrants that (i) no Contamination is present at, on or under the Mortgaged Property and that no Contamination is being or has been emitted onto any surrounding property; (ii) all operations and activities on the Mortgaged Property have been and are being conducted in accordance with all Environmental Laws, and Mortgagor has all permits and licenses required under the Environmental Laws; (iii) no underground or aboveground storage tanks are or have been located on or under the Mortgaged Property; and (iv) no legal or administrative proceeding is pending or threatened relating to any environmental condition, operation or activity on the Mortgaged Property, or any violation or alleged violation of Environmental Laws. These representations and warranties shall be true as of the date hereof, and shall be deemed to be continuing representations and warranties which must remain true, correct and accurate during the entire duration of the term of this Mortgage.

(c)   Mortgagor shall ensure, at its sole cost and expense, that the Mortgaged Property and the conduct of all operations and activities thereon comply with all Environmental Laws. Mortgagor shall notify Mortgagee promptly and in reasonable detail in the event that Mortgagor becomes aware of any violation of any Environmental Laws, the presence or release of any Contamination with respect to the Mortgaged Property, or any governmental or third party claims relating to the environmental condition of the Mortgaged Property or the conduct of operations or activities thereon. Mortgagor also agrees not to permit or allow the presence of Regulated Substances on any part of the Mortgaged Property, except for those Regulated Substances (i) which are used in the ordinary course of Mortgagor's business, but only to the extent they are in all cases used in a manner which complies with all Environmental Laws; and (ii) those Regulated Substances which are naturally occurring on the Mortgaged

-18-

Property. Mortgagor agrees not to cause, allow or permit the presence of any Contamination on the Mortgaged Property. Mortgagee shall have the right to require environmental investigations of the Mortgaged Property at the expense of Mortgagor to verify the absence of any Regulated Substances or Contamination on the Mortgaged Property in violation of any Environmental Laws.

(d)     Mortgagee shall not be liable for, and Mortgagor shall indemnify, defend and hold Mortgagee and all of its officers, directors, employees and agents, and all of their respective successors and assigns harmless from and against all losses, costs, liabilities, damages, fines, claims, penalties and expenses (including reasonable attorneys', consultants' and contractors' fees, costs incurred in the investigation, defense and settlement of claims, as well as costs incurred in connection with the investigation, remediation or monitoring of any Regulated Substances or Contamination) that Mortgagee may suffer or incur (including as holder of the Mortgage, as mortgagee in possession or as successor in interest to Mortgagor as owner of the Mortgaged Property by virtue of a foreclosure or acceptance of a deed in lieu of foreclosure) as a result of or in connection with (i) any Environmental Laws (including the assertion that any lien existing or arising pursuant to any Environmental Laws takes priority over the lien of the Mortgage); (ii) the breach of any representation, warranty, covenant or undertaking by Mortgagor in this Paragraph 32; (iii) the presence on or the migration of any Contamination or Regulated Substances on, under or through the Mortgaged Property; or (iv) any litigation or claim by the government or by any third party in connection with the environmental condition of the Mortgaged Property or the presence or migration of any Regulated Substances or Contamination on, under, to or from the Mortgaged Property.

33.     Further Assurances; Replacement Documents. Mortgagor will execute and deliver such further instruments and perform such further acts as may be requested by Mortgagee from time to time to confirm the provisions of this Mortgage or the Note, to carry out more effectively the purposes of this Mortgage or the Loan Documents securing the Note, or to confirm the priority of the lien created by this Mortgage on any property, rights or interest encumbered or intended to be encumbered by the lien of this Mortgage or the Loan Documents. Upon receipt of an affidavit of an officer of Mortgagee as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record and, in the case of any such destruction or mutilation, upon surrender and cancellation of such Note or other Loan Document, Mortgagor will issue, in lieu thereof, a replacement Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

34.     Indemnification. Mortgagor hereby irrevocably agrees to indemnify and save harmless Mortgagee from and against any and all loss or damage of whatsoever kind and from any suits, claims or demands, including, without limitation, Mortgagee's legal fees and expenses, on account of any matter or thing arising out of this Mortgage or in connection herewith.

35.     Counsel Fees. If Mortgagee becomes a party to any suit or proceeding affecting the Mortgaged Property or title thereto, the lien created by this Mortgage or Mortgagee's interest therein, or if Mortgagee engages counsel to collect any of the indebtedness or to enforce performance of the agreements, conditions, covenants, provisions or stipulations of this Mortgage or the Loan Documents, Mortgagee's costs, expenses and reasonable counsel fees, whether or not suit is instituted, shall be paid to Mortgagee by Mortgagor, on demand, with interest at the then effective rate set forth in the Note, and until paid they shall be deemed to be part of the indebtedness evidenced by the Note and secured by this Mortgage.

36.     Communications. All notices and other communications under this Mortgage shall be in writing and shall be sent to the party to receive such notice at its address set forth in the heading of this Mortgage, or to such other address as either party may designate from time to

-19-

time by notice to the other in the manner set forth herein.  A notice shall, for all purposes, be deemed given and received:  (a) if hand delivered to a party, when the copy of the notice is receipted; (b) if given by a nationally recognized and reputable overnight delivery service company, the day on which the notice is delivered by the delivery service company to such party; or (c) if given by certified mail, return receipt requested, two (2) business days after it is posted with the United States Postal Service.

37.  Covenant Running with the Land.  Any act or agreement to be done or performed by Mortgagor shall be construed as a covenant running with the land and shall be binding upon Mortgagor and its successors and assigns as if they had personally made such agreement.

38.  Amendment.  This Mortgage cannot be changed or amended except by agreement in writing signed by the party against whom enforcement of the change is sought.

39.  Governing Law and Jurisdiction.  This Mortgage has been delivered to and accepted by Mortgagee and will be deemed to be made in the Commonwealth of Pennsylvania. THIS MORTGAGE WILL BE INTERPRETED AND THE RIGHTS AND LIABILITIES OF MORTGAGOR AND MORTGAGEE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICT OR CHOICE OF LAWS, EXCEPT THAT THE LAWS OF THE STATE OF NEW JERSEY SHALL GOVERN THE CREATION, PERFECTION, ENFORCEMENT AND FORECLOSURE OF THE LIENS CREATED HEREUNDER ON THE MORTGAGED PROPERTY OR ANY INTEREST THEREIN.  Mortgagor hereby irrevocably consents to the exclusive jurisdiction of any state or federal court in the county or judicial district where Mortgagee's office indicated above is located in any action arising out of this Mortgage or in connection with the rights or obligations of the parties hereunder, and Mortgagor irrevocably waives any objection based on the assertion that such court is an inconvenient forum except that no provision hereof shall prevent Mortgagee from bringing any action, enforcing any award or judgment or exercising any rights against Mortgagor or against any property of Mortgagor in the State of New Jersey or any other county, state or other foreign or domestic jurisdiction.  Subject to applicable law, Mortgagor waives personal service of any summons, complaint or other process in any action arising out of this Mortgage and agrees that all service thereof may be made by certified or registered mail or in any other manner permitted by law.

40.  Interpretation.  Whenever used in this Mortgage, unless the context clearly indicates a contrary intent:

(a)  References to the Note and all other contractual instruments shall be deemed to include all subsequent restatements, amendments and other modifications to such instruments, but only to the extent such restatements, amendments and other modifications are not prohibited by the terms of this Mortgage.

(b)  The word "Mortgagor" shall mean the entity which executes this Mortgage and any subsequent owner of the Mortgaged Property and their respective successors and assigns.

(c)  The word "Mortgagee" shall mean the person or entity specifically named herein as "Mortgagee" or any subsequent holder of this Mortgage.

(d)  The word "entity" shall mean individual, corporation, partnership, limited liability company or unincorporated association.

-20-

(e)     The use of any gender shall include all genders.

(f)     The singular number shall include the plural and the plural the singular as the context may require.  If this Mortgage is executed by more than one party as Mortgagor, the obligations of such persons or entities will be joint and several.

41.     Severability.  If any provision of this Mortgage or the application thereof is held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions hereof shall not be affected thereby, and each provision of this Mortgage shall be valid and enforceable to the fullest extent permitted by law.

42.     Powers of Attorney.  This Mortgage and the other Loan Documents contain powers of attorney given by Mortgagor to Mortgagee.  Such powers are coupled with an interest and are for the sole benefit of Mortgagee.  Mortgagee, as agent for Mortgagor under the powers of attorney, is not a fiduciary for Mortgagor.  Mortgagee, in exercising any of its rights or powers pursuant to the powers of attorney, may do so for the sole benefit of Mortgagee and not for Mortgagor.  The parties acknowledge and agree that the provisions of Section 5601 of Chapter 56 of Title 20 of the Pennsylvania Consolidated Statutes, as amended, shall not be applicable to the powers of attorney granted herein and in the other Loan Documents.

43.     Captions.  The captions preceding the text of the paragraphs or subparagraphs of this Mortgage are inserted only for convenience of reference and shall not constitute a part of this Mortgage, nor shall they in any way affect its meaning, construction or effect.

44.     Loan Subject to Modification.  This Mortgage secures a loan which by its terms is subject to modification as defined in N.J.S.A. 46:9-8.1, as amended from time to time.

45.     Condominium Provisions.

(a)     Mortgagor represents that (i) the Mortgaged Property has been submitted to the provisions of the New Jersey Condominium Act, N.J.S.A. 46:8B-1 et seq. (the "Condominium Act"), and (ii) Mortgagor has submitted to Mortgagee true and correct copies of the Master Deed and all other applicable documents for the condominium project (collectively, the "Condominium Documents").  The individual condominium unit within the Mortgaged Property created pursuant to the Condominium Documents is hereinafter referred to as the "Condominium Unit".

(b)     Mortgagor covenants to and with Mortgagee that until the indebtedness secured hereby is fully repaid:

(1)     Mortgagor shall comply with all of the applicable terms and provisions of the Condominium Act, and of the Condominium Documents.

(2)     Mortgagor shall pay before they shall become delinquent, all assessments for common expenses assessed by the condominium association against the Condominium Unit subject to the lien of this Mortgage and promptly furnish Mortgagee with receipts evidencing such payment upon request.  Upon the failure of Mortgagor to pay an assessment for common expenses, Mortgagee, at its election and without notice to Mortgagor, may pay such assessment without prejudice to any of Mortgagee's rights or remedies available hereunder or otherwise, at law or equity.  All such sums, as well as costs, so paid by Mortgagor shall be payable by Mortgagor to Mortgagee, immediately and without demand, shall be secured by the Mortgage and shall bear interest thereon at the Default Rate from the date of payment by

-21-

Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 43 of 282 PageID #: 288

Mortgagee until the date of repayment by Mortgagor.  The production of a receipt by Mortgagee shall be conclusive proof of the making of a payment authorized hereby, as well as the amount and validity thereof.

(3)     Mortgagor hereby assigns to Mortgagee, to be applied, upon receipt by Mortgagee, on account of sums secured by the Mortgage, all sums distributable to Mortgagor in connection with the Condominium Unit, including, without limitation, any condemnation and casualty insurance proceeds.

(4)     Mortgagor shall send Mortgagee promptly copies of any notice from the condominium association other than the normal periodic notices for the payment of common expenses.

(5)     During such time as Mortgagor and/or the designees, appointees or agents of Mortgagor are members of the executive board of the condominium association, Mortgagor and/or the designees, appointees or agents of Mortgagor shall diligently perform all of their duties and obligations as members of the executive board of the condominium association under the Condominium Documents.

(6)     Mortgagor shall promptly notify Mortgagee of all annual and special meetings of the members of the condominium association and, if any principal of Mortgagor is a member of the executive board or executive committee of the condominium association, then Mortgagor shall promptly notify Mortgagee of all meetings of such board or committee.

(7)     Mortgagor shall obtain Mortgagee's prior written consent in connection with Mortgagor's vote on any extraordinary or unusual matter before the members or the executive board of the condominium.  An irrevocable proxy and an irrevocable power of attorney of Mortgagor coupled with an interest, in recordable form acceptable to Mortgagee, shall be executed and delivered to Mortgagee upon request, which proxy and power of attorney shall permit Mortgagee to act on behalf of Mortgagor and otherwise exercise any rights of Mortgagor with respect to Condominium Unit subject to the lien of the Mortgage, including, without limitation, the right to vote for members of the executive board of the condominium association, the right to vote not to proceed with repair or restoration of the Mortgaged Property in the event of damage or destruction, and the right to vote at a properly convened meeting of unit owners, all subject to the terms of the Condominium Act and the Condominium Documents. The power of attorney shall further permit Mortgagee, upon any event of default by Mortgagor, to act on behalf of Mortgagor in conveying Condominium Unit pursuant to agreements of sale entered into between Mortgagor and purchasers.

WITNESS the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

WITNESS:

Print Name: Noah Bratin

330 CARTER EQUITY LLC, a New Jersey limited liability company

By: Ira Kossack, Managing Member

-22-

CFN 2020046641 M DOC_TYPE MTG BK 11533 PG 618 PAGE 24 OF 26

EXHIBIT "A"

Legal Description

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE TOWNSHIP OF HOPEWELL, COUNTY OF MERCER, AND STATE OF NEW JERSEY, AND IS DESCRIBED AS FOLLOWS:

BEING KNOWN AND DESIGNATED AS UNIT II SITUATE IN THE CARTER ROAD OFFICE AND RESEARCH CONDOMINIUM, A CONDOMINIUM, IN THE TOWNSHIP OF HOPEWELL, MERCER COUNTY, NEW JERSEY, TOGETHER WITH AN UNDIVIDED 61.3% (UNIT II) PERCENTAGE INTEREST IN THE COMMON ELEMENTS OF SAID CONDOMINIUM APPURTENANT TO THE AFORESAID UNIT, IN ACCORDANCE WITH AND SUBJECT TO THE TERMS, LIMITATIONS, CONDITIONS, COVENANTS, RESTRICTIONS, EASEMENTS, AGREEMENTS AND OTHER PROVISIONS SET FORTH IN THE MASTER DEED FOR THE CARTER ROAD OFFICE AND RESEARCH CONDOMINIUM, A CONDOMINIUM, DATED APRIL 16, 2015 , RECORDED APRIL 21, 2015, IN THE MERCER COUNTY CLERK'S OFFICE, IN DEED BOOK 6216, PAGE 1280 AND AS SAME MAY NOW OR HEREAFTER BE LAWFULLY AMENDED.

First Amendment to Master Deed, recorded in Deed Book 6301 PG 1782.

THE TAX LOT AND BLOCK NUMBERS REPRESENT THE TAX LOT AND BLOCK NUMBERS OF THE UNIT AFTER THE RECORDING OF THE MASTER DEED REVOCATION, SUBDIVISION AND RECORDATION OF THE NEW MASTER DEED.

FOR INFORMATIONAL PURPOSES ONLY:
BEING LOT 14.03, BLOCK 40 QUALIFIER C02 ON THE TOWNSHIP OF HOPEWELL TAX MAP.
ALSO KNOWN AS 330 CARTER ROAD HOPEWELL NJ.

STATE OF  New Jersey                    :
                                        :        ss
COUNTY OF  Ocean                        :

On this. the  16ᵗʰ   day of September, 2020, before me. the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared Ira Russack, who acknowledged himself to be the Managing Member of 330 CARTER EQUITY LLC. a New Jersey limited liability company, who I am satisfied is the person who signed the within instrument, and who acknowledged that being validly authorized to do so he executed same for the purposes therein contained by signing on behalf of said limited liability company as such Managing Member.

WITNESS my hand and seal the day and year aforesaid.

_____
Notary Public

My Commission Expires:  Noah Burton, Esq.
                        Attorney at Law State of NJ
                        Lic # 035852005

**Exhibit C**

Case# 2021-06274-23 Docketed at Montgomery County Prothonotary on 04/25/2022 2:32 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

|  |  |
|---|---|
| UNIVEST BANK AND TRUST CO | |
| vs. | NO. 2021-06274 |
| IRA RUSSACK | |

## **COVER SHEET OF MOVING PARTY**

Date of Filing <u>April 25  2022</u>

Moving Party <u>IRA RUSSACK</u>

Counsel for Moving Party <u>DANIEL S BERNHEIM III, Esq., ID: 32736</u>

Document Filed (Specify) <u>PETITION FOR LEAVE TO WITHDRAW AS COUNSEL FOR DEFENDANT</u>

Matter is: _ (Appealable)          | **X** (Interlocutory)

Discovery Needed: _ (Yes)          | _ (No)

If applicable, Civil Case Management Order Discovery Deadline: _____

---------------------------------------------------------------------------------------------------------

**CERTIFICATIONS** - Check **ONLY** if appropriate:
_ Counsel certify that they have conferred in a good faith effort to resolve the subject
      <u>discovery</u> dispute. **(Required by Local Rule 208.2(e) on motions relating to discovery.)**

_ Counsel for moving party certifies that the subject **civil motion** is **uncontested** by all
      parties involved in the case.  (If checked, skip Rule to Show Cause section below.)

By: _____
                    **Counsel for Moving Party**

---------------------------------------------------------------------------------------------------------

**RULE TO SHOW CAUSE** - Check **ONE** of the Choices Listed Below:

_____  Respondent is directed to show cause why the moving party is not entitled to the relief
requested by filing an **answer** in the form of a **written response** at the **Office of the  Prothonotary** on or
before the              day of                    20___.

_____  Respondent is directed to show cause, in the form of a **written response**, why the
attached Family Court Discovery Motion is not entitled to the relief requested.  Rule    Returnable and
Argument the              day of                          , 20___
at **1:00 p.m.**  at **321 Swede Street, Norristown, PA**.

_____  Respondent is directed to file a **written response** in conformity with the Pennsylvania
Rules of Civil Procedure.

_____  Rule Returnable at time of trial.

By: _____
                    Court Administrator

Revised 06.19

Case# 2021-06274-23 Docketed at Montgomery County Prothonotary on 04/25/2022 2:32 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS OF**
**MONTGOMERY COUNTY, PA**

---------------------------------------------------

|  |  |  |
|---|---|---|
| UNIVEST BANK AND TRUST CO. | : | IN THE COURT OF COMMON PLEAS |
| Plaintiff, | : | OF MONTGOMERY COUNTY, PA |
|  | : |  |
| v. | : | NO. 2021-06274 |
|  | : |  |
| IRA RUSSACK | : |  |
| Defendant. | : |  |
|  | : |  |

---------------------------------------------------

## <u>ORDER</u>

AND NOW this _____ day of _____, 2022 upon the consideration of

Defendant's counsel Petition for Leave to Withdraw and for good cause shown, said Petition is

GRANTED.

**BY THE COURT:**

_____
**J.**

#13097864.1 174090/001

Case# 2021-06274-23 Docketed at Montgomery County Prothonotary on 04/25/2022 2:32 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**WILENTZ, GOLDMAN & SPITZER P.A.**
By:     Daniel S. Bernheim, 3d, Esquire
Identification Nos. 32736
Two Penn Center Plaza, Suite 910
Philadelphia, PA 19102
P: 215-636-4468
F: 215-636-3999
E: dbernheim@wilentz.com
Counsel for Defendant, Ira Russack

---------------------------------------------------
                                                :
UNIVEST BANK AND TRUST CO.     :     IN THE COURT OF COMMON PLEAS
         Plaintiff,                          :     OF MONTGOMERY COUNTY, PA
                                                :
v.                                            :     NO. 2021-06274
                                                :
IRA RUSSACK                             :
         Defendant.                       :
                                                :
---------------------------------------------------

## PETITION FOR LEAVE TO WITHDRAW AS COUNSEL FOR DEFENDANT IRA RUSSACK

Wilentz Goldman & Spitzer, P.A. submits the within Petition for Leave to Withdrawal as Counsel in accordance with Pennsylvania Rule of Civil Procedure 1012(c) and represents as follows:

1.      On or about February 15, 2022, the Wilentz law firm was retained for the specific purpose of responding to discovery in aid of execution as the result of a judgment entered by confession by Univest Bank and Trust Co. against Ira Russack on May 4, 2021 (the "Judgment").

2.      The Judgment was predicated upon the alleged default of a commercial loan evidenced by a Promissory Note of September 14, 2020 in the original principal amount of $15,700,000.00.  The Note was secured by a Mortgage on certain real property located at 330 Carter Road, Hopewell, NJ (the "Property") which was titled in the name of 330 Carter Equity, LLC.

#13097864.1 174090/001

Case# 2021-06274-23 Docketed at Montgomery County Prothonotary on 04/25/2022 2:32 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

3.     In addition, the Judgment was based upon certain activity in a demand deposit account maintained at Univest wherein large sums of wire transfers and checks flowed through the account in a short period of time resulting in a deficiency of $4,156,088.25.  As a result, the total judgment entered by confession was $19,231,820.52.  As part of the original loan agreements, Ira Russack, executed a Guaranty and Suretyship Agreement consequently, judgment for the outstanding loan balance and deficiency was entered against Mr. Russack as well.

4.     Prior to the entry of appearance of Petitioner, Univest served Russack with certain Requests for Production of Documents and Interrogatories in aid of execution.

5.     The ability to provide answers to Univest's discovery was extremely hampered due to the fact that another individual ("Individual A") was in possession and control of documents and responsible for handling the transactions that ran through the Univest demand deposit account.[1]

6.     As a result of the inability to obtain documents to provide full answers to Interrogatories and Requests for Documents, on April 5, 2022, this Court entered an Order granting Plaintiff's Motion to Compel Responses prior.  The Order which was entered before Mr. Russack even had the opportunity to respond stated that Mr. Russack "shall provide full, complete and verified answers to the Interrogatories and Requests for Production of Documents within twenty days or sanctions may be imposed upon application to the Court."  Accordingly, answers to discovery in aid of execution were ordered to be produced by April 25, 2022.

---

[1] This person is identified as "Individual A" in that he is not a member of 330 Carter Equity, LLC but, however, has exercised control over this Property and other projects in which he has coerced Mr. Russack to make substantial investments.  While nothing contained herein regarding Individual A is either inaccurate or not already known by Univest, the election not to use his name is a result of counsel receiving several threats from Individual A after he refused to explain the activity within the demand deposit account and interfered with efforts to obtain information from other individuals who appear to have participated in the activity of funds running through that account.

-2-

Case# 2021-06274-23 Docketed at Montgomery County Prothonotary on 04/25/2022 2:32 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

7.      In order to assure compliance with the Court's Order, Petitioner has worked with Mr. Russack and his administrative assistant to obtain documents from whatever source available and to provide full and complete answers to interrogatories.

8.      While certain documents have been obtained and answers to most, but not all, interrogatories have been prepared, counsel has been seeking further cooperation and information in order to assure compliance with the Court's Order.  As late as Saturday, April 23, 2022 some, but not all, of this information was provided for counsel's review.

9.      At approximately 11:15 p.m. on Sunday, April 24, 2022, a one line email was received indicating that a new attorney has been hired and would make contact on Monday, April 25, 2022.

10.      On the morning of April 25, attempts to reach Mr. Russack by telephone were unsuccessful and two separate voice messages have been placed requesting a return call.  There has been no returned phone call.  In addition, an email was issued to Mr. Russack reminding him of the Court's ordered due date for submissions of interrogatories and document requests as well as the need of any new counsel to enter their appearance so that Petitioner could withdrawal absent the need for filing a Petition for Leave to Withdraw.  A true and correct copy of that email with appropriate redactions is attached hereto as Exhibit "A."  There has been no response to the email.

11.      In light of the notification of discharge of counsel and the retention of replacement counsel along with the lack of further communication, Petitioner seeks leave to withdrawal for good cause shown.

#13097864.1 174090/001

Case# 2021-06274-23 Docketed at Montgomery County Prothonotary on 04/25/2022 2:32 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

WHEREFORE, upon consideration of the within Petition of Wilentz Goldman & Spitzer, PA it is respectfully requested that Petitioner's leave to withdraw as counsel be granted.

Respectfully submitted,

**WILENTZ, GOLDMAN & SPITZER, P.A.**

BY: _Daniel S. Bernheim_ _____

Date:  April 25, 2022

Daniel S. Bernheim, 3d, Esquire
Counsel for Defendant, Ira Russack

-4-

#13097864.1 174090/001

Case# 2021-06274-23 Docketed at Montgomery County Prothonotary on 04/25/2022 2:32 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**WILENTZ, GOLDMAN & SPITZER P.A.**
By:      Daniel S. Bernheim, 3d, Esquire
Identification Nos. 32736
Two Penn Center Plaza, Suite 910
Philadelphia, PA 19102
P: 215-636-4468
F: 215-636-3999
E: dbernheim@wilentz.com
Counsel for Defendant, Ira Russack

-------------------------------------------------------

| | | |
|---|---|---|
| UNIVEST BANK AND TRUST CO. | : | IN THE COURT OF COMMON PLEAS |
| Plaintiff, | : | OF MONTGOMERY COUNTY, PA |
| | : | |
| v. | : | NO. 2021-06274 |
| | : | |
| IRA RUSSACK | : | |
| Defendant. | : | |
| | : | |

-------------------------------------------------------

## CERTIFICATE OF SERVICE

I, Daniel S. Bernheim, 3d, Esquire, hereby certify that on April 25, 2022, a true and correct copy of the foregoing Petition for Leave to Withdraw as Counsel for Defendants, 330 Carter Equity, LLC and Ira Russack was filed electronically and served on the below counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

**Paige M. Willan, Esq.**
**Christopher J. Leavell, Esq.**
**Klehr Harrison Harvey Branzburg LLP**
**1835 Market Street, Ste. 1400**
**Philadelphia, PA 19103**
**pwillan@klehr.com**
**cleavell@klehr.com**

**WILENTZ, GOLDMAN & SPITZER, P.A.**

BY:      _Daniel S Bernhim_
         _____
         Daniel S. Bernheim, 3d, Esquire
         Attorneys for Defendant, Ira Russack

#13097864.1 174090/001

Case# 2021-06274-23 Docketed at Montgomery County Prothonotary on 04/25/2022 2:32 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT

# "A"

Case# 2021-06274-23 Docketed at Montgomery County Prothonotary on 04/25/2022 2:32 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | |
|---|---|
| **From:** | Bernheim, Daniel |
| **Sent:** | Monday, April 25, 2022 8:36 AM |
| **To:** | Ira |
| **Cc:** | Mett Gilliam |
| **Subject:** | RE: 330 Carter Equity |

Ira

I am concerned about the email (below) you sent late last evening in that I have spent considerable time with you and Mett in order to respond to the Discovery in Aid of Execution initiated by Univest and simultaneously deal with the tangential issue of the overdraft created at the bank's account.  Given the hour at which this notification of change of counsel was issued (Sunday at 11:15 p.m.) and that it is literally within hours of the required submission of answers to interrogatories and production of documents, a number of concerns exist. First, you are under a Court Order to submit a full response. I received additional information on Saturday plus a signed Verification to the Interrogatories (which are not yet complete and thus cannot yet be submitted until you approve the final version).  Consequently, terminating my representation hours later seems odd.  Nevertheless, if you fail to submit timely and proper response, you will be subject to a Motion for Sanctions.  Changing counsel at the last minute will not be considered a justifiable excuse.

I am also concerned because there has been a history of you being subject to the influence of ▮▮▮ that has placed you in peril.  For example, the activity in the Univest bank account reveals a check kite of substantial proportions. ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  To the extent I have been able to establish any goodwill with the bank and present your explanation that you are as much victim as anything else, it is fair to presume it will evaporate quickly if you do not comply with the court's order.  You should anticipate that the bank will transfer the judgment to New York and start to execute upon your assets.   It is unlikely the bank will consider any further cooperation.  Further, your deposition has been rescheduled to **May 9** to meet with your schedule and that too will not be extended further.

I also need comment that given the history of this matter and prior "threats" by ▮▮▮ to change counsel when I inquired about the missing funds from the account, I remain concerned that you are once again being influenced by ▮▮▮.  Certainly, you are free to change counsel, but on prior occasions you have assured me that notwithstanding ▮▮▮ statement that he was retaining counsel that you neither authorized such statements nor had any intention of changing counsel.  Repeatedly, I have had to remind ▮▮▮ and assure you that ▮▮▮ is not and never has been the client. I have also cautioned you that the check kite and the false insurance certificate orchestrated by ▮▮▮ are only pieces of a larger scale problem which has been created by your affiliation with ▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮  The decision always remains yours.

I also need note that I find it unusual that you have not identified replacement counsel and that I have not been contacted by replacement counsel.  In Pennsylvania, an attorney cannot simply withdraw from a matter absent the entry of new counsel or leave of court.  I doubt that new counsel was hired Sunday evening and thus one would suspect this happened earlier and that individual would have reached out given the current Court Order.  This is all quite irregular.  Accordingly, given your instructions and the existing Order, absent notification from replacement counsel first thing this morning I will need prepare and file a Motion for Leave to Withdraw.

While I remain concerned that you have been placed into an awkward situation, candidly, I too am in an uncomfortable position.  I have tried to build a reputation that when I provide opposing counsel assurances that something will take place they can be confident that I will  follow through. This situation is unique in that I cannot make that representation any further and my prior commitment is now in jeopardy.  I find this troubling.

1

Case# 2021-06274-23 Docketed at Montgomery County Prothonotary on 04/25/2022 2:32 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Before sending this email I placed a phone call and left a voice message.  I can be reached in my office if there is anything further to discuss.

Dan

**Daniel S. Bernheim, 3d | Shareholder**

# WILENTZ

—ATTORNEYS AT LAW—

Wilentz, Goldman & Spitzer, P.A.

Two Penn Center Plaza, Suite 910

Philadelphia, Pennsylvania 19102

**T**: 215.636.4468 | **C**: 267.312.4160

dbernheim@wilentz.com | www.wilentz.com

LinkedIn | Add My Mobile Business Card

**From:** Ira <irarussack@gmail.com>
**Sent:** Sunday, April 24, 2022 11:13 PM
**To:** Bernheim, Daniel <dbernheim@WILENTZ.com>
**Cc:** ▮▮▮▮▮▮▮▮▮▮▮▮; Mett Gilliam <mettvonmettz@gmail.com>
**Subject:** Re: 330 Carter Equity

Dan I hired a new attorney to help me and ▮▮▮ he will reach out to you tomorrow

Sent from my iPhone

> On Apr 20, 2022, at 1:43 PM, Bernheim, Daniel <dbernheim@wilentz.com> wrote:
>
> Ira, Mett
> I have sent 2 emails and left 2 voice messages requesting a reply.  Your phone now states that the "mail box is full."  What is going on?
> Please call.
> Dan
>
> **Daniel S. Bernheim, 3d | Shareholder**
>
> # WILENTZ
>
> —ATTORNEYS AT LAW—
> Wilentz, Goldman & Spitzer, P.A.
> Two Penn Center Plaza, Suite 910
> Philadelphia, Pennsylvania 19102
> **T**: 215.636.4468 | **C**: 267.312.4160
> dbernheim@wilentz.com | www.wilentz.com
> LinkedIn | Add My Mobile Business Card

2

Case# 2021-06274-23 Docketed at Montgomery County Prothonotary on 04/25/2022 2:32 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient of this message you are prohibited from copying, distributing or otherwise using this information. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system. Thank you.

The content of any e-mail sent to or received by Wilentz, Goldman & Spitzer, P.A. or any of its attorneys will not create an attorney-client relationship and shall not be binding on this law firm or its client(s) unless an undertaking of attorney client representation has been signed and delivered by a duly authorized representative of the firm. No e-mail transmission by the sender of this e-mail will constitute an "electronic signature" unless the person sending the email expressly states that this e-mail constitutes an electronic signature or the document on which a handwritten signature appears specifically states that it may be delivered via electronic or e-mail transmittal.

---

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

---

**Exhibit D**

Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 59 of 282 PageID #: 304



## SUPERIOR COURT OF NEW JERSEY

## OFFICE OF FORECLOSURE

### Cost Sheet

Chancery Division

Docket No. SWC-F-002486-21                                    County:MERCER

| | |
|---|---|
| Attorney's Allowance by Statute | 50.00 |
| Filing Fees Paid to Clerk | 405.00 |
| Counsel Fees Allowed Under R.4:42-9 | 7500.00 |
| Sheriff Fees for Service | 80.00 |
| Search Costs Allowed Under R.4:42-10 | 475.00 |
| Printing Costs for Publication | 0.00 |
| Cost of Filing Lis Pendens | 50.00 |
| Motions | 50.00 |
| Costs on Application for Writ of Execution (if applicable) | 50.00 |
| Other | 0.00 |
| Total Costs | 8660.00 |

Date Taxed and Filed:   01/26/2022

Attorney:

Christopher J. Leavell (Attorney No. 020342014)
KLEHR HARRISON HARVEY BRANZBURG LLP
(A Pennsylvania Limited Liability Partnership)
10000 Lincoln Drive East, Suite 201
Marlton, NJ  08053
(856) 486-7900 – Phone
(856) 486-4875 - Fax
Attorneys for Plaintiff

| | | |
|---|---|---|
| UNIVEST BANK AND TRUST CO., | : | SUPERIOR COURT OF NEW JERSEY |
| | : | CHANCERY DIVISION |
| Plaintiff, | : | MERCER COUNTY |
| vs. | : | |
| | : | DOCKET NO.  F-002486-21 |
| 330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY, | : | |
| | : | Civil Action |
| | : | |
| | : | |
| Defendants. | : | **FINAL JUDGMENT IN MORTGAGE** |
| | : | **FORECLOSURE** |
| | : | |
| | : | |
| | : | |
| | : | |

This matter being opened to the Court by Christopher J. Leavell of the law firm of Klehr

Harrison Harvey Branzburg, LLP, counsel for the plaintiff, and it appearing that summons and

complaint herein have been duly issued and returned served upon all of the defendants, 330

Carter Equity LLC and Ira Russack, the State of New Jersey, and in accordance with the rules of

this Court, and default having been entered against said defendants, and the plaintiff's mortgage

having been presented and marked as exhibits by the Court, and proofs having been submitted of

the amount due on plaintiff's mortgage, and in accordance with the Order entered on December

17, 2021, and sufficient cause appearing;

IT IS ON THIS __26____ day of _JANUARY__, 2022,

ORDERED AND ADJUDGED that the plaintiff is entitled to have the sum of

$18,182,504.66, together with interest at the contract rate of 2.58% on $14,950,105.13 being the

Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 61 of 282 PageID #: 306

principal loan balance in default (including advances, if any) from October 16, 2021 to 1/26/22 (the date of final judgment) and lawful interest thereafter on the total sum due plaintiff together with a counsel fee of __$7500.00_____ and costs of this suit to be taxed; and it is further

ORDERED that the plaintiff or its assignees or any purchaser under the foreclosure sale duly recover against the following defendant, 330 Carter Equity LLC, the possession of the premises mentioned and described in the said complaint, with the appurtenances; and it is further

ORDERED AND ADJUDGED that the mortgaged premises be sold to raise and satisfy the several sums of money due, in the first place, to the plaintiff, Univest Bank and Trust Co., the sum of $18,182,504.66 together with contract interest and lawful interest thereon to be computed as aforesaid with the plaintiff's costs to be taxed, with lawful interest thereon, and that an execution for that purpose be duly issued out of this Court directed to the Sheriff of Mercer County, commanding the Sheriff to make sale of the mortgaged premises described in the complaint herein, and out of the money arising from said sale, that said Sheriff pay to the plaintiff, Univest Bank and Trust Co., said plaintiff's debt, with interest thereon as aforesaid and said plaintiff's costs with interest thereon as aforesaid, and in case more money shall be realized by the said sale than shall be sufficient to satisfy such several payments as aforesaid, that such surplus be brought into this Court to abide the further Order of this Court and that the Sheriff aforesaid make a report of the aforesaid sale without delay as required by the rules of this Court; and it is further

ORDERED AND ADJUDGED that the defendants in this case, and each of them stand absolutely debarred and foreclosed of and from all equity of redemption of, in, and to said mortgaged premises described in the complaint, when sold as aforesaid by virtue of this judgment.

2

This judgment shall not affect the rights of any person protected by the New Jersey

Tenant Anti-Eviction Act (N.J.S.A. 2A:18-61-1 et. seq.).


*/s/ Timothy P. Lydon, P.J.Ch.*
Hon. Timothy P. Lydon, P.J.Ch.

Respectfully Recommended
R.1:34-6 Office of Foreclosure

9680771.v6

**<u>Exhibit E</u>**

Christopher J. Leavell (Attorney No. 020342014)
KLEHR HARRISON HARVEY BRANZBURG LLP
(A Pennsylvania Limited Liability Partnership)
10000 Lincoln Drive East, Suite 201
Marlton, NJ 08053
(856) 486-7900 – Phone
(856) 486-4875 - Fax
Attorneys for Plaintiff

| | | |
|---|---|---|
| UNIVEST BANK AND TRUST CO., | : | SUPERIOR COURT OF NEW JERSEY |
| | : | CHANCERY DIVISION |
| Plaintiff, | : | MERCER COUNTY |
| vs. | : | |
| | : | DOCKET NO. F-002486-21 |
| 330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY, | : | |
| | : | Civil Action |
| | : | |
| Defendants. | : | **WRIT OF EXECUTION** |
| | : | |
| | : | |
| | : | |

## THE STATE OF NEW JERSEY

## TO THE SHERIFF OF THE COUNTY OF MERCER

## GREETINGS:

WHEREAS, on the __26__ day of ___JANUARY_____, 2022 by a certain judgment made in the Superior Court of New Jersey, in a certain cause therein pending, wherein Univest Bank and Trust Co. is plaintiff and 330 Carter Equity LLC, Ira Russack, and State of New Jersey are the defendants;

It was ORDERED and ADJUDGED that certain mortgaged premises as particularly set forth and described in **Exhibit A** attached hereto;

Together with all and singular the rights, liberties, privileges, hereditaments and appurtenances thereunto belonging or in any ways appertaining, and the reversions and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest, use,

9680779.v5

Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 65 of 282 PageID #: 310
SWC F 002486-21   01/26/2022   Pg 2 of 4 Trans ID: CHC202219516
Recorded in the Office of the Superior Court Clerk   Pg 2 of 4   Writ #22000550

property, claim and demand of the said defendant of, in and to and out of the same, be sold to pay and satisfy in the first place for the benefit of plaintiff, the sum of $18,182,504.66 being the principal, interest, and other debt secured by that certain mortgage given by 330 Carter Equity LLC  bearing date of September 14, 2020, recorded in the office of the Clerk of Mercer County on October 16, 2020 in Mortgage Book 11533, Page 595 together with interest at the contract rate of 2.58% on $14,950,105.13 being the principal loan balance in default (including advances, if any) from October 16, 2021 to ___1/26/22_____, (the date of final judgment) and lawful interest thereafter until the same be paid and satisfied and also the costs of said plaintiff;  and

That, for that purpose a Writ of Execution should issue, directed to the Sheriff of Mercer County, commanding the Sheriff to make sale as aforesaid; and that the surplus money arising from such sale, if any there be, should be brought into said Court, subject to the further Order of the said Court, as by the said judgment remaining as of record in the Superior Court of New Jersey, at Trenton; and

WHEREAS, the costs of the said plaintiff have been duly taxed at the sum of $8660.00_____.

THEREFORE, you are hereby commanded to sell so much of the aforesaid premises to recover the said sum and the same you do pay to the said plaintiff, together with lawful interest thereon as aforesaid, and the sum aforesaid of costs; and that you leave the surplus money, if any there be, before the said Superior Court of New Jersey aforesaid at Trenton, within thirty days after sale, to abide the further order of said Court, according to the judgment aforesaid; and you are to make return at the time and place aforesaid, by Certificate under your hand, of the manner in which you have executed this our Writ, together with this Writ. If there is no sale, then said Writ is returnable within twenty-four (24) months, pursuant to R.4:59-1(a).

2

9680779.v5

SWC F 002486-21    01/26/2022    Pg 3 of 4 Trans ID: CHC202219516
Recorded in the Office of the Superior Court Clerk Pg 3 of 4 Trans ID: CHC202219516
Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 66 of 282 PageID #: 311

WITNESS, ___ Timothy P. Lydon, P.J.Ch.____, Judge of the Superior Court, at

Trenton, the _26___ day of __JANUARY_____, 2022.


KLEHR HARRISON HARVEY
  BRANZBURG, LLP
Attorneys for Plaintiff

By: /s/ *Christopher J. Leavell*
    Christopher J. Leavell, Esquire

                                    /s/ *Michelle M. Smith*
                                    **MICHELLE M. SMITH**
                                    Clerk of the Superior Court

                                    Signed and Sealed in the Superior Court of New
                                    Jersey

3

9680779.v5

SWC F 002486-21     01/26/2022        Pg 4 of 4 Trans ID: CHC202219516
Case 1:22-cv-03852-WFK-SJB   Document 14-2   Filed 10/12/22   Page 67 of 282 PageID #: 312
Recorded in the Office of the Superior Court Clerk  Pg 4 of 4  Inst#:22000550

EXHIBIT "A"

Legal Description

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE TOWNSHIP OF HOPEWELL, COUNTY OF MERCER, AND STATE OF NEW JERSEY, AND IS DESCRIBED AS FOLLOWS:

BEING KNOWN AND DESIGNATED AS UNIT II SITUATE IN THE CARTER ROAD OFFICE AND RESEARCH CONDOMINIUM, A CONDOMINIUM, IN THE TOWNSHIP OF HOPEWELL, MERCER COUNTY, NEW JERSEY, TOGETHER WITH AN UNDIVIDED 61.3% (UNIT II) PERCENTAGE INTEREST IN THE COMMON ELEMENTS OF SAID CONDOMINIUM APPURTENANT TO THE AFORESAID UNIT, IN ACCORDANCE WITH AND SUBJECT TO THE TERMS, LIMITATIONS, CONDITIONS, COVENANTS, RESTRICTIONS, EASEMENTS, AGREEMENTS AND OTHER PROVISIONS SET FORTH IN THE MASTER DEED FOR THE CARTER ROAD OFFICE AND RESEARCH CONDOMINIUM, A CONDOMINIUM, DATED APRIL 16, 2015 , RECORDED APRIL 21, 2015, IN THE MERCER COUNTY CLERK'S OFFICE, IN DEED BOOK 6216, PAGE 1280 AND AS SAME MAY NOW OR HEREAFTER BE LAWFULLY AMENDED.

First Amendment to Master Deed, recorded in Deed Book 6301 PG 1782.

THE TAX LOT AND BLOCK NUMBERS REPRESENT THE TAX LOT AND BLOCK NUMBERS OF THE UNIT AFTER THE RECORDING OF THE MASTER DEED REVOCATION, SUBDIVISION AND RECORDATION OF THE NEW MASTER DEED.

FOR INFORMATIONAL PURPOSES ONLY:
BEING LOT 14.03, BLOCK 40 QUALIFIER C02 ON THE TOWNSHIP OF HOPEWELL TAX MAP.
ALSO KNOWN AS 330 CARTER ROAD HOPEWELL NJ.

9680779.v5

**Exhibit F**



Christopher J. Leavell
Direct Dial: (856) 486-6973
Email: cleavell@klehr.com

March 8, 2022

**TO THE PARTIES ON THE ATTACHED LIST**

    Re:  **Univest Bank & Trust Co. v. 330 Carter Equity LLC, et al.**
        **Docket No. F-002486-21**
        **Property Address:  330 Carter Road, Hopewell, NJ**

Dear Sir or Madam:

   Enclosed please find a Notice of Sale regarding the above-referenced matter.  Please note that the sheriff's sale is currently scheduled for March 23, 2022. You may contact me or Nadine Yackle by email at nyackle@klehr.com or by phone at (856) 486-6966 if you have any questions regarding the enclosed.

   Thank you.

           Very truly yours,

           /s/ *Christopher J. Leavell*

           Christopher J. Leavell

CJL/lac
Enclosures

## SERVICE LIST FOR NOTICE OF SHERIFF'S SALE

| Party | Method of Service |
|---|---|
| 330 Carter Equity LLC<br>330 Carter Road<br>Hopewell, NJ 08525 | Certified and Regular Mail |
| 330 Carter Equity LLC and Ira Russack<br>c/o Daniel S. Bernheim, 3d, Esquire<br>Wilentz, Goldman & Spitzer, P.A.<br>Two Penn Center Plaza, Suite 910<br>Philadelphia, Pennsylvania 19102 | Regular Mail |
| State of New Jersey<br>c/o Gurbir S. Grewal, Esquire<br>Attorney General<br>25 Market Street (8th Floor, West Wing)<br>Trenton, NJ  08625 | Certified and Regular Mail |

## COURTESY COPIES

| Party | Method |
|---|---|
| Carter Road & Research Condominium Association, Inc.<br>c/o Jeffrey A. Carr, Esquire<br>Troutman Pepper Hamilton Sanders LLP<br>301 Carnegie Center<br>Princeton, NJ  08543-5276 | Regular Mail |
| Collins Aerospace f/k/a UTC Aerospace Technologies d/b/a Sensors Unlimited Inc.<br>330 Carter Road<br>Hopewell, NJ 08525 | Regular Mail |
| Collins Aerospace f/k/a UTC Aerospace Technologies<br>d/b/a Sensors Unlimited Inc.<br>Brian B. Vavra, Esq.<br>Collins Aerospace<br>2730 W. Tyvola Rd., Charlotte, NC 28217 | Regular Mail |
| BPG Management Company, LP<br>650 College Road East, No. 3300<br>Princeton NJ  08540 | Regular Mail |

# Sheriff's Sale

mercercounty.org or
nj.com
SUPERIOR COURT OF
NEW JERSEY
CHANCERY DIVISION
MERCER COUNTY
**Docket No.
F-002486-21**
UNIVEST BANK AND
TRUST CO.
Plaintiff
VS 300 CARTER EQUI-
TY LLC, IRA RUSSACK,
and STATE OF NEW
JERSEY
Defendant
Execution. By virtue
of the above stated
writ of execution to
me directed and de-
livered, I will expose
for sale at public ven-
ue, on **March 23,
2022**, between the
hours of twelve and
five o'clock in the af-
ternoon of said day,
that is to say at two
o'clock p.m. in the
Court House, in the
City of Trenton, in the
County of Mercer and
the State of New Jer-
sey.
The property to be
sold is located in the
Township of
Hopewell, County of
Mercer and State of
New Jersey, and is
commonly known as
330 Carter Road,
Hopewell, New Jer-
sey; Lot NO. 14.03,
Block 40 Qualifier C02
on the Township of
Hopewell tax map.
This property is a con-
dominium unit locat-
ed in the Carter Road
Office and Research
Condominium. The
nearest cross street is
Lawrenceville Road,
a/k/a Route 206
The above advertise-
ment does not consti-
tute a full legal de-
scription of the Real
Estate. The full legal
description is availa-
ble at the office of the
County Clerk during
regular business
hours. (Full legal de-
scription consists ON-
LY of outside dimen-
sions.) The approxi-
mate amount of the
judgment sought to
be satisfied by the
sum of
**$18,191,164.66** plus
interest and costs. At
the time of the Sale,
Twenty Percent of the
amount bid will be re-
quired as a Deposit by
the Purchaser, in
Cash, Money Order,
Certified Check, Cash-
ier's or Treasurer's
Check. The Balance is
payable Ten Days
from the date of sale,
in Cash, Money Order,
Certified Check, Cash-
ier's Check, or Treas-
urer's Check, with
lawful interest calcu-
lated on the Balance
Due, from the end of
the redemption peri-

od, until Balance is paid. The Sheriff hereby reserves the right to adjourn the sale in this case without further notice by publication. If after the sale and satisfaction of the mortgage debt, including costs and expenses, there remains any surplus money, the money will be deposited into the Superior Court Trust Fund and any persons claiming the surplus, or any part thereof, may file a motion pursuant to Court Rule 4:64-3 and 4:57-2 stating the nature and extent of that person's claim and asking for an order directing payment of the surplus money. The Sheriff or other person conducting the sale will have information regarding the surplus, if any. The defendant may request two statutory postponements prior to the sale, not exceeding four weeks for each one. The fee for each is $28 payable only in cash or money order. PLEASE NOTE THAT THIS NOTICE DOES NOT APPLY TO THE TENANTS LIVING AT A PROPERTY UNLESS SPECIFIED BY A COURT ORDER.
Attorney
KLEHR     HARRISON HARVEY BRANZBURG LLP
856-486-7900
Attorney File#14444-0336
Sheriff's # 22000381
John A. Kemler, Sheriff
3/1, 8, 15, 22/22
THE TIMES     $178.64

**Exhibit G**

**SEIDMAN & PINCUS, LLC**
Mitchell B. Seidman (028301985)
777 Terrace Ave, Suite 508
Hasbrouck Heights, NJ 07604
(201) 473-0047
*Attorneys for Defendants 330 Carter Equity LLC*
*and Ira Russack*

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION MERCER COUNTY |
| Plaintiff, | Docket No. F-002486-21 Civil Action |
| v. | |
| 330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY, | **ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS PURSUANT TO RULE 4:52** |
| Defendants. | |

This matter being brought before the Court by Seidman & Pincus, LLC, attorneys for defendants 330 Carter Equity LLC and Ira Russack ("Defendants"), seeking relief by way of temporary restraints pursuant to R. 4:52, based upon the facts set forth in the Certification of Ira Russack filed herewith; and it appearing that the Plaintiff Univest National Bank and Trust Co. ("Plaintiff") has notice of this application, and it further appearing that immediate and irreparable damage will probably result absent the entry of this order to show cause and the award of temporary restraints, and for good cause shown,

It is on this ___ day of May, 2022,

**ORDERED** that Plaintiff appear and show cause before the Superior Court at the County Courthouse in Mercer County, New Jersey at _____ o'clock in the noon or as soon thereafter as counsel can be heard, on the _____ day of May, 2022 why an order should not be issued both (i) preliminarily enjoining and restraining Plaintiff from conducting the Sheriff's sale on May 18,

2022 for the property located at 330 Carter Road, Princeton, NJ (the "Property") and for 60 days after May 18, 2022, and (ii) directing and requiring the Sheriff of Mercer County not to conduct the Sheriff's sale of the Property on May 18, 2022 and for 60 days thereafter, and granting such other relief as the Court deems equitable and just.

And it is further

**ORDERED** that pending the return date herein, the Plaintiff is temporarily enjoined and restrained from conducting the Sheriff's sale of the Property on May 18, 2022 or any other date – pending further order of this Court;

And it is further

**ORDERED** that pending the return date herein, the Sheriff of Mercer County is directed and required not to conduct the Sheriff's sale of Property on May 18, 2022 or any other date – pending further order of this Court:

And it is further

**ORDERED** that:

1.     The Plaintiff may move to dissolve or modify the temporary restraints herein contained on two (2) days' notice to attorneys for Defendants.

2.     A copy of this order to show cause, legal memorandum, and the supporting certification of Ira Russack submitted in support of this application be served upon the Plaintiff's counsel via filing in NJ eCourts and by email within two (2) days of the entry of this order.

3.     The Defendants must file with the Court their proof of service of the pleadings on the Plaintiff no later than three (3) days before the return date.

4.     Plaintiff shall file and serve written opposition to this order to show cause and the request for entry of injunctive relief and proof of service by _____, 2022.  Defendants shall serve and file their reply to Plaintiff's opposition by _____.

5.     If the Plaintiff does not file and serve opposition to this order to show cause, the application will be decided on the papers on the return date and relief may be granted by default, provided that the Defendants file a proof of service.

6.     The Court will entertain argument, but not testimony, on the return date of the order to show cause, unless the Court and parties are advised to the contrary before the return date.

_____
                                                                          J.S.C.

Case 1:22-cv-03858-WFK-SJB Document 14-2 Filed 10/12/22 Page 78 of 282 PageID #: 323

**SEIDMAN & PINCUS, LLC**
Mitchell B. Seidman (028301985)
777 Terrace Ave, Suite 508
Hasbrouck Heights, NJ 07604
(201) 473-0047
*Attorneys for Defendants 330 Carter Equity LLC
and Ira Russack*

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION MERCER COUNTY |
| Plaintiff, | Docket No. F-002486-21 Civil Action |
| v. | |
| 330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY, | **CERTIFICATION OF IRA RUSSACK IN SUPPORT OF ORDER TO SHOW CAUSE TO STAY SHERIFF'S SALE** |
| Defendants. | |

**IRA RUSSACK**, of full age, does hereby certify:

1.      I am the Managing Member of 330 Carter Equity LLC, the property owner/borrower/mortgagor/defendant herein (the "Mortgagor").  I am also the individual named defendant herein.  Accordingly, I am fully familiar with the matter set forth below from my own personal knowledge and from documents and records maintained by the Mortgagor in the ordinary course of its business.

2.      I submit this Certification in support of Mortgagor's and my order to show cause application – requiring the plaintiff/mortgagee/bank ("Plaintiff") to show cause on a date to be set by the Court why an order should not be entered staying for cause under the NJ Statute (see our moving brief) the May 18, 2022 Sheriff's sale in this matter for 60 days.

3.      In the interim, pending the return of the requested order to show cause, Mortgagor and I seek a temporary restraint – temporarily enjoining and restraining the Plaintiff from going

forward with the May, 18, 2022 Sheriff's sale, and directing and requiring the Sheriff to adjourn the sale for 60 days.

4.      Mortgagor has already used up its statutory adjournments of the Sheriff's sale.  As such, if this Court does not grant the requested order to show cause/temporary restraint then irreparable harm will come to the Mortgagor as Mortgagor will lose its equity in the property which is the subject of this foreclosure (330 Carter Road, Princeton, NJ,  a commercial office building).  Similarly, I will lose my investment in this office building.  Because irreparable harm as aforesaid will be suffered by the Mortgagor and myself, and because there is a likelihood that Mortgagor will succeed on the merits of one or both of the bases for the requested stay of the Sheriff's sale (as is detailed below), the requested order to show cause/temporary restraining and stay of sale should be granted.

5.      This is particularly so since a balancing of the equities weighs in favor of the Mortgagor and granting the order to show cause/stay of sale.  A balancing of the equities weighs in favor of the Mortgagor as opposed to the Plaintiff because Mortgagor will suffer the irreparable harm referenced above, while Plaintiff will suffer no material harm if a stay of sale is granted because the Plaintiff is oversecured in this case (i.e., the value of the office building according to the Plaintiff's own appraisal exceeds the amount due to the Plaintiff).

6.      There are two bases for the order to show cause/stay of sale sought herein, to wit: (a) the total amount due to the Plaintiff is approximately $18,796,043.86 and Mortgagor has already arranged for financing in the amount of $16,150,000.00 to pay off the bulk of the amount due, and (b) the value of the office building exceeds the amount owed to the Plaintiff, such that Plaintiff is oversecured and a stay of the Sheriff's sale will not materially harm the Plaintiff.  A stay of the Sheriff's sale should accordingly be granted to the Mortgagor.

7.      In the two subsections which follow I provide the facts which support these two

bases (a) and (b) for granting the relief sought herein.

**(a)     Mortgagor is Obtaining Financing to Pay Off the Plaintiff**

8.      The amount due to the Plaintiff herein is approximately $18,796,043.86 calculated

as follows:

- $18,182,504.66     January 26, 2022 Final Foreclosure Judgment
- $    333,295.90     March 9, 2022 Order Directing Sheriff to Pay Additional
                      Sums to Plaintiff
- $    113,526.40     April 19, 2022 Order Directing Sheriff to Pay Additional
                      Sums to Plaintiff
- $    166,716.90     April 20, 2022 Order Directing Sheriff to Pay Additional
                      Sums to Plaintiff
- $18,796.043.86     TOTAL

9.      Mortgagor has already obtained $16,150,000.00 in financing to pay off the bulk of

the amount due to the Plaintiff.  Annexed hereto as **Exhibit A** is the copy of the May 2, 2022 Letter

of Intent  ("LOI") wherein Rok Lending LLC ("Rok") sets forth the terms on which it will extend

this $16,150,000.00 in financing to the Mortgagor.

10.      Mortgagor believes that with an additional 60 days (the 60 day stay sought herein)

it can both (i) close on this $16,150,000.00 in financing, and (ii) raise the additional funds needed

to pay off the Plaintiff in full.

11.      Based upon this, and with the equities weighing in Mortgagor's favor, Mortgagor

requests that its order to show cause application herein be granted.

**(b)     The Value of the Office Building Exceeds the Amount Due to the Plaintiff**

12.      A stated above, the approximate amount due to the Plaintiff is $18,796,043.86.

According to the Plaintiff's own appraisal, the value of the subject office building is as follows:

| MARKET VALUE CONCLUSION | | | |
|---|---|---|---|
| Appraisal Premise | Interest Appraised | Date of Value | Value Consideration |
| As is | Leased Fee Interest | July 9, 2020 | $23,900,000 |
| As Stabilized | Leased Fee Interest | July 9, 2021 | $29,700,000 |

13.    Annexed hereto as **Exhibit B** are the first three pages of the Plaintiff's July 2020 appraisal report setting forth these values. (The appraisal report is voluminous/124 pages – the full report is available, if necessary.)  The first three pages of this appraisal report show (i) that it is the Plaintiff's own appraisal, (ii) the appraised values and dates set forth above, and (iii) the appraiser's certification signature.

14.    Two other points to note about the value of the office building, as follows.

15.    First, Mortgagor is in the process of obtaining a current appraisal of this office building.  Mortgagor expects to have that appraisal before any return date of the requested order to show cause.  Mortgagor also expects that the value of the office building in its current appraisal will be equal to or greater than the values in Plaintiff's July 2020 appraisal as the July 2020 appraisal was performed right in the middle of the shutdown when businesses were not working in offices and where the future of office space was very uncertain.  The current appraisal will (obviously) be post-shutdown when, at least to some degree, businesses are back working in offices – and the future is less uncertain.

16.    Second, upon information and belief, if asked, the Plaintiff may concede that the value of the office building exceeds the amount owed to it herein.

17.    The foregoing demonstrates that the Plaintiff is oversecured in this matter – that the value of the office building exceeds the amount due to the Plaintiff.  A balancing of the equities therefore clearly weighs in favor of the Mortgagor and myself as we will lose our equity in the office building/lose our investment if the Sheriff's sale is not stayed – while the Plaintiff will suffer no material harm as an oversecured creditor if the Sheriff's sale is stayed for only 60 days.

18.     Based upon the foregoing, Mortgagor and I request that this order to show cause application be granted.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

IRA RUSSACK

## CERTIFICATION

The undersigned hereby certifies that the Certificant set forth above has acknowledged the genuineness of his signature and that the original signature will be supplied if requested by the Court or any party.

Dated: May 13, 2022

Mitchell B. Seidman

# EXHIBIT A



May 2, 2022

_____ (the "Lender"), hereby submits this Letter of Intent (the "LOI") to confirm certain non-binding understandings and agreements with respect to the proposed loan (the "Loan") from Lender or its assigns secured by the real property described below ("Collateral"). Upon execution of the LOI by all parties and satisfaction of the conditions precedent hereunder, Lender will prepare loan documents (collectively the "Loan Documents") evidencing the terms of the Loan.

| | |
|---|---|
| Borrower: | A single purpose entity acceptable to Lender in its sole discretion. All borrowing entities shall be managed by a common bankruptcy remote special purpose entity. |
| Loan Amount: | Sixteen Million One Hundred Fifty Thousand and 00/100 Dollars ($16,150,000.00) but at no time shall the Loan amount ("Loan Amount") exceed 70% LTC/LTV of the Collateral, whichever is lower. |
| Collateral: | Collateral includes Lender having a first security interest in all assets of each Borrower and a first priority lien in the real property, rents, and improvements from:<br>• 330 Carter Rd, Princeton, NJ 08540<br>• A pledge of 100% of membership interest in Borrower |
| Term: | Twelve (12) months. |
| Extension(s): | Lender will agree to extend the Initial Term for an additional Six (6) months (the "Extension Term") in exchange for Borrower paying to Lender an extension fee (the "Extension Fee") in an amount equal to one (1.0%) percent of the outstanding principal balance of the Loan as of the last day of the Initial Term. The aforementioned extension shall be granted provided: (i) the Borrower has never been late on any payments under the Loan, (ii) the Borrower is not in default under any Loan Documents at the time of the closing of any extension, and (iii) the outstanding principal balance of the Loan does not exceed Sixty-Five (65%) percent of the Lender determined value of the Collateral. Borrower shall pay to Lender the Extension Fee on the Initial Term expiration date. The entire outstanding principal as well as all unpaid interest, is due in full on the Maturity Date. |
| Interest Rate: | The fixed interest rate per annum is equal to Ten (10.00%) (the "Interest Rate") and shall be: (i) payable monthly based upon the outstanding principal balance, (ii) paid in arrears and (iii) calculated by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on a year consisting of 360 days. |

1

Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 85 of 282 PageID #: 330



**Rate Reset:** There will be a rate reset every month and at the time of each extension (if applicable). The interest rate will be adjusted and set at the Prime Rate as published in the Wall Street Journal plus 650 bps with a minimum rate of 10.00%.

**Prepayment of Loan:** No prepayment of the Loan shall be permitted without the Lender having received Eight (8) full months of interest on the Loan Amount whether advanced or otherwise. During each Extension Term, no prepayment of the Loan shall be permitted without the Lender having received all interest due during that period.

**Monthly Payments:** Payments shall be interest only and paid in arrears and calculated by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on a year consisting of 360 days.

**Guarantor(s):** Recourse for 50% of Loan Amount.

**Origination/ Exit Fee:** Borrower agrees to pay to Lender at Maturity an Origination Fee of Two (2.00) points based upon the Loan Amount. Borrower agrees to pay to Lender at Maturity an Exit Fee of One (1.00) points based upon the Loan Amount.

**Lien Release:** If the Collateral, or any portion thereof, including tax credits, are sold or otherwise removed as collateral prior to the Maturity Date, one hundred (100%) percent of the net proceeds of the sale will be paid to Lender and allocated as follows: (i) accrued unpaid interest, if any, due to Lender (ii) any Guaranteed Interest due, (iii) all other amounts due and owing by Borrower under the Loan Documents, and (iv) the outstanding principal balance of the Loan. No release of Lender's lien on any Collateral shall be granted by Lender unless the proceeds will fully pay all obligations to Lender, or Lender provides its prior written consent to a partial release of its lien on Collateral.

**Future Funded Capex Reserve:** Subject to review, Lender will fund future advances for tenant improvements at the Lender's sole discretion.

**Assignment of Loan:** Borrower acknowledges and agrees that the Lender may assign the Loan and Loan Documents at any time.

**Tax and Insurance Reserve:** At Closing, Lender will hold Six (6) months of property taxes based upon the latest tax bill from the local tax collector's office; and twelve (12) months of general liability insurance and property insurance equal to the amount paid for the policy in place at the closing date. This Reserve will be credited to Borrower upon full repayment of Loan.

2

Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 86 of 282 PageID #: 331



| | |
|---|---|
| Interest Reserve: | N/A |

**Insurance:** Lender will require general liability insurance and property insurance, (collectively "Insurance") containing a mortgagee loss payable clause satisfactory to Lender and an agreement to notify Lender in writing at least thirty (30) days prior to any cancellation or reduction in coverage of the policy. The insurance policies shall be in the amount, which shall be based on the recommendation of the Lender's counsel and advisor, is the greater of the replacement value of the property or balance of the Loan and be issued by a company satisfactory to Lender. Notwithstanding the foregoing, the Borrower shall carry such types of insurance as may be required by the Lender in the Lender's sole discretion. A copy of the original insurance policies shall be delivered to Lender at the time of the Closing of this Loan.

**Title Insurance:** Lender, at the advice of its counsel and insurance advisor, may require the issuance of a title insurance policy up to one hundred (100%) percent of the amount of the Loan plus endorsements. Borrower shall choose the closing agent subject to Lender's approval, and the closing agent shall issue the Lender title insurance and close the Loan. Borrower shall be responsible for payment of all premiums and costs related thereto.

**Closing:** Subject to Lender, in its sole discretion, determining that Borrower and Guarantor have satisfied all pre-closing requirements including completion and review of all third-party reports, Closing shall take place within four weeks following receipt of upfront Advance Deposit and following the execution of this LOI.

**Expenses:** Borrower shall pay all costs and expenses in connection with the Loan including, but not limited to, background checks, insurance policy review, attorney fees, recording costs, taxes, title insurance premiums, appraisals, and inspection fees.

**Advance Deposit:** Lender agrees to engage its attorneys to review the due diligence items and draft the Loan Documents to close this transaction with a non-refundable Seventy-Five Thousand and 00/100 ($75,000.00) Dollars Advance Deposit from Borrower. If Borrower does not close then the Advance Deposit shall be applied to the Expenses and any balance shall be immediately released to Borrower in accordance with the terms of this LOI. If closing does occur any remaining portion of this Advance Deposit after expenses shall be credited towards the Origination Fee.

**Underwriting Fee:** $10,000.00 for Lender's due diligence costs at Closing. The underwriting fee will be deemed earned upon acceptance of this LOI.

**Processing Fee:** $10,000.00 to be paid to Lender at Closing.

3

Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 87 of 282 PageID #: 332



| | |
|---|---|
| Brokerage Fees: | Borrower shall indemnify, defend and hold Lender harmless for any claims for this and any other broker's commissions in connection with the Loan. |
| Lease Approval: | Lender shall the right to approve new leases and amendment(s) to existing leases. |
| Management Cash Sweep: | Loan will be subject to a management cash sweep during any period in which there is a monetary or maturity default by the Borrower. |
| Control Agreement: | Loan will be subject to a control agreement on all property related bank accounts. |
| Business Purpose: | Borrower and Guarantor represent to Lender, for Lender's reliance, that the proceeds of the Loan will be used solely for business or commercial purposes and not for personal, family or household use. |
| Exclusivity: | Borrower and Guarantor hereby expressly agree and acknowledge that (a) Lender is devoting its personnel and financial resources to the consideration of the Loan; (b) in Lender's industry, business opportunities are limited and extremely competitive; (c) compensation to the Lender, in the event Borrower obtains financing from a source other than Lender would be extremely difficult to calculate; (d) Lender cannot, as a result of this underwriting and analysis, commit its resources to other potential transactions and may be deprived of business opportunities thereby; and (e) Lender may suffer negative impact in the industry in the event Borrower does not complete this proposed transaction or obtains financing from a competitor of the Lender. Accordingly, Borrower and Guarantor hereby expressly agrees to work solely with Lender to procure the Loan and agrees not to, and will cause their principals and affiliates not to, obtain or attempt to arrange financing in connection with the Property with any party other than the Lender. In the event the Borrower, Guarantor or an affiliate or controlled entity of either (a) obtains financing for the Property from a source other Lender, or (b) sells, assigns or otherwise conveys the Property or its contract to acquire the Property, Borrower and Guarantor shall be obligated to pay and Lender shall be deemed to have earned a break-up fee in the amount of $50,000 (the "Breakup Fee"), which Breakup Fee shall constitute liquidated damages. Borrower and Guarantor shall be responsible for Lender's legal fees and costs in connection with recovery of the Breakup Fee. This foregoing exclusivity provision is in consideration for Lender issuing this Term Sheet and shall be binding upon Borrower and Guarantor so long as Lender is prepared to close, with terms materially in accordance with the LOI for a period of one (1) month. |
| Non-Binding Letter of Intent: | The Borrower, Lender and Guarantor, agree that this is a non-binding letter of intent, and Lender shall have no obligation to fund the Loan, unless and until the Lender has agreed to an actual Loan closing and has funded the amount due hereunder. In the event the Lender, in its sole and absolute discretion, decides not |

4

7498806_2



to fund the Loan, the parties acknowledge that the Lender shall have no obligations to the Borrower. Notwithstanding the foregoing, any costs incurred by the Lender in investigating, preparing and in any other way determining whether to make the Loan to Borrower shall be reimbursed and paid by the Borrower to Lender whether or not the Lender decides to fund the Loan. Lender may offset such costs from any funds received from the Advance Deposit to pay the foregoing. Notwithstanding anything contained herein to the contrary, the provisions of this LOI regarding Borrower's payment of Lender's expenses shall be binding upon the Borrower whether or not the Lender decides to fund the Loan.

This LOI will be null and void if not accepted by May 4, 2022 at 5:00 p.m. If the terms and conditions set forth in this LOI meet with your approval, please indicate your acceptance by signing below, emailing the executed copy to ▓▓▓▓▓▓▓▓▓▓▓ and wiring all required funds to the provided account.

**Borrower:** _____

By: ____Ira Russack_____

Name: ____Ira Russack_____
                    Mm

Title: _____

**Guarantor(s):** _____

By: ____Ira Russack_____

5

7498806_2

# EXHIBIT B

Case 1:23-cv-93959-WFK-SJB   Document 14-2   Filed 10/12/22   Page 90 of 282 PageID #: 255

CBRE VALUATION & ADVISORY SERVICES

# APPRAISAL REPORT

330 CARTER ROAD
HOPEWELL TOWNSHIP, NEW JERSEY 08540
CBRE FILE NO. 20-047NT-7711-1

UNIVEST BANK AND TRUST CO.

CBRE

VALUATION & ADVISORY SERVICES



Park 80 West Plaza Two
Saddle Brook, NJ  07663

T  201-712-5600
F  201-712-5650

www.cbre.com

Date of Report: July 13, 2020

Ms. Deb McCandless
Collateral Review Analyst
UNIVEST BANK AND TRUST CO.
14 North Main Street, PO Box 197
Souderton, Pennsylvania  18964

RE:     Appraisal of: 330 Carter Road
        Hopewell Township, Mercer County, New Jersey  08540
        CBRE, Inc. File No. 20-047NE-2711-1

Dear Ms. Mccandless:

At your request and authorization, CBRE, Inc. has prepared an appraisal of the market value of
the referenced property.  Our analysis is presented in the following Appraisal Report.

The subject is a 190,558-square foot, three-story, suburban office building located at 330 Carter
Road in Hopewell Township, Mercer County, New Jersey. The improvements were constructed in
1969, renovated in 2007 and are situated on a 1.12-acre site. The subject is 50.8% occupied by
Sensors Unlimited, Inc. as the sole tenant and is more fully described legally and physically within
the body of this report.

The subject is not currently stabilized. Therefore, at the request of the client, we have also
estimated the subject's prospective market value at stabilized operation levels.

Based on the analysis contained in the following report, the market values of the subject are
concluded as follows:

| MARKET VALUE CONCLUSION | | | |
|---|---|---|---|
| Appraisal Premise | Interest Appraised | Date of Value | Value Conclusion |
| As Is | Leased Fee Interest | July 9, 2020 | $23,900,000 |
| As Stabilized | Leased Fee Interest | July 9, 2021 | $29,700,000 |
| Compiled by CBRE | | | |

The report, in its entirety, including all assumptions and limiting conditions, is an integral part of,
and inseparable from, this letter.

As of the date of value and the date of this report, the nation, region, and market area are
impacted by the COVID-19 pandemic. This could have a prolonged effect on macroeconomic
conditions, though at this time the length of duration is unknown. The perceived impact on real
estate varies on several factors including asset class, use, tenancy, and location.  Our analysis
considers available information as of the effective date.

Ms. Deb McCandless
July 13, 2020
Page 2

The following appraisal sets forth the most pertinent data gathered, the techniques employed, and the reasoning leading to the opinion of value. The analyses, opinions and conclusions were developed based on, and this report has been prepared in conformance with, the guidelines and recommendations set forth in the Uniform Standards of Professional Appraisal Practice (USPAP), and the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute. It also conforms to Title XI Regulations and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) updated in 1994 and further updated by the Interagency Appraisal and Evaluation Guidelines promulgated in 2010.

The intended use and user of our report are specifically identified in our report as agreed upon in our contract for services and/or reliance language found in the report. As a condition to being granted the status of an intended user, any intended user who has not entered into a written agreement with CBRE in connection with its use of our report agrees to be bound by the terms and conditions of the agreement between CBRE and the client who ordered the report. No other use or user of the report is permitted by any other party for any other purpose. Dissemination of this report by any party to any non-intended users does not extend reliance to any such party, and CBRE will not be responsible for any unauthorized use of or reliance upon the report, its conclusions or contents (or any portion thereof).

It has been a pleasure to assist you in this assignment. If you have any questions concerning the analysis, or if CBRE can be of further service, please contact us.

Respectfully submitted,

CBRE - VALUATION & ADVISORY SERVICES

Drew Manzi
Vice President
NJ State Certification No.: 42RG00234000

Phone:   201-712-5875
Fax:       201-712-5650
Email:    drew.manzi@cbre.com

Mark Mediavilla, MAI
Director
NJ State Certification No.: 42RG00260100

Phone:   631-370-6011
Fax:       631-370-6001
Email:    Mark.Mediavilla@cbre.com

Zachary Myers
Valuation Associate

Phone: (201) 712-5892
Email: zack.myers@cbre.com



**SEIDMAN & PINCUS, LLC**
Mitchell B. Seidman (028301985)
777 Terrace Ave, Suite 508
Hasbrouck Heights, NJ 07604
(201) 473-0047
*Attorneys for Defendants 330 Carter Equity LLC*
*and Ira Russack*

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION MERCER COUNTY |
| Plaintiff, | Docket No. F-002486-21 Civil Action |
| v. | |
| 330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY, | **ORDER STAYING SHERIFF'S SALE** |
| Defendants. | |

This matter being brought before the Court by Seidman & Pincus, LLC, attorneys for defendants 330 Carter Equity LLC and Ira Russack ("Defendants"), seeking the entry of an order staying the May 18, 2022 Sheriff's sale of the property located at 330 Carter Road, Princeton, NJ (the "Property") for 60 days; and it appearing that the Plaintiff Univest National Bank and Trust Co. ("Plaintiff") has filed opposition to this application, and Defendants having filed a reply to Plaintiff's opposition, and the Court having considered the matter,

It is on this ___ day of _____, 2022,

**1. ORDERED** that Plaintiff be, and hereby is, preliminarily enjoined and restrained from conducting the Sheriff's sale of the Property on May 18, 2022 and for 60 days after May 18, 2022, and it is further

Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 95 of 282 PageID #: 340

    **2.  ORDERED** that the Sheriff of Mercer County be, and hereby is, directed and required not to conduct the Sheriff's sale of the Property on May 18, 2022 and for 60 days thereafter, and it is further

    **3.  ORDERED** that a copy of this order shall be served by Defendants' counsel upon Plaintiff's counsel via filing on NJ eCourts and by email within two (2) days of the entry of this order.

_____

                                                                                                                 J.S.C.

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO.<br><br>Plaintiff,<br><br>v.<br><br>330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION MERCER COUNTY<br><br>Docket No. F-002486-21 Civil Action |

**MEMORANDUM OF LAW IN SUPPORT OF**
**ORDER TO SHOW CAUSE TO  STAY SHERIFF'S SALE**

**SEIDMAN & PINCUS, LLC**
Mitchell B. Seidman (028301985)
777 Terrace Ave, Suite 508
Hasbrouck Heights, NJ 07604
(201) 473-0047

*Attorneys for Defendants*
*330 Carter Equity LLC and Ira Russack*

## PRELIMINARY STATEMENT

Defendants 330 Carter Equity LLC (hereinafter, "Mortgagor") and Ira Russack (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their Order to Show Cause seeking a sixty (60) day stay of the May 18, 2022 Sheriff's sale (hereinafter "Sheriff's Sale") for cause pursuant to N.J.S.A. § 2A:17-36; or, in the alternative, pursuant to R. 4:52 for corresponding relief by way of temporary restraints temporarily enjoining and restraining Plaintiff Univest National Bank and Trust Co. ("Plaintiff") from proceeding with the Sheriff's Sale and ordering the Sheriff to adjourn the Sheriff's Sale for sixty (60) days.

More specifically, although Mortgagor has already utilized two adjournments of the previously-scheduled sheriff's sales under N.J.S.A. § 2A:17-36, Mortgagor clearly has cause under the statute for the Court to exercise its discretion and Order a third adjournment; in this case, for the Sheriff's Sale scheduled just five or six days from today next Wednesday, May 18, 2022.

Indeed, the foreclosed property – the commercial office building located at 330, Carter Road, Princeton, New Jersey (hereinafter "Property") - is significantly oversecured by Plaintiff, Mortgagor has already secured most of the financing towards the Property's total mortgage amount, and Mortgagor has a good-faith belief that Mortgagor will be able to successfully obtain the remaining financing towards in sixty (60) days to pay off the Property's mortgage in its entirety.

Moreover, under these circumstances, Defendants will lose their equity and investment interests in the Property if the Sheriff's Sale is not stayed accordingly.

The unique facts and circumstances clearly warrant the issuance of a stay of the

2

Sheriff's Sale for cause pursuant to N.J.S.A. § 2A:17-36; or, in the alternative, clearly warrant the issuance of preliminary injunctive relief with temporary restraints to prevent the Sheriff's Sale from taking place for sixty (60) days.

## STATEMENT OF FACTS

Defendants respectfully refer the Court to the accompanying Certification of Defendant Ira Russack ("Russack Certification") – Mortgagor's Managing Member - with exhibits for a detailed recitation of the facts.

## LEGAL ARGUMENT

## POINT I

### THE SHERIFF'S SALE SHOULD BE STAYED
### PURSUANT TO N.J.S.A § 2A:17-36

The Russack Certification clearly establishes cause for purposes of the Court entering an Order to stay the Sheriff's Sale for sixty (60) days under N.J.S.A § 2A:17-36.

N.J.S.A. § 2A:17-36 ("Adjournments of sale of real estate") states in its entirety as follows:

> Notwithstanding any other law or court rule to the contrary, a sheriff or other officer selling real estate by virtue of an execution may make five adjournments of the sale, two at the request of the lender, two at the request of the debtor, and one if both the lender and debtor agree to an adjournment, and no more, to any time, not exceeding 30 calendar days for each adjournment.  However, a court of competent jurisdiction may, **for cause**, order further adjournments.

(Emphasis supplied.)

As detailed in the Russack Certification, the Property is oversecured by Plaintiff by approximately 22% (over $5,000,000.00) based on Plaintiff's very own appraisal ($23,900,00.00 "As Is" value vs. $18,796,043.86 mortgage), Mortgagor has already

3

secured 86% of the financing towards the Property's total mortgage amount ($16,150,000.00), and Mortgagor has a good-faith belief that Mortgagor will be able to both (i) close the $16,500,000.00 financing, and (ii) successfully obtain the remaining 14% of financing towards the Property's total mortgage amount ($2,646,043.86) – in sixty (60) days in order pay off the Property's mortgage in its entirety.

Under these circumstances, Defendants will also lose their equity and investment interests in the Property if the Sheriff's Sale is not stayed accordingly. "Where the court is asked to stay or adjourn a sale, it will exercise its inherent power to do so only when necessary to prevent an inequitable result." See "New Jersey Foreclosure Law & Practice 2022", *Scott T. Tross* (citing Kotler v. John Hancock Mut. Life Ins. Co., 113 N.J. Eq. 544, 546 (Ch. 1933) ("[w]hile not doubting the inherent power of the court to grant relief under appropriate circumstances, our courts have uniformly looked with disfavor upon application for interference with orderly procedure in foreclosure suits unless inequity is apparent").

Indeed, the Chancery Division has previously exercised its discretionary power under N.J.S.A. § 2A:17-36 and ordered the adjournment of a sheriff's sale for cause under similar circumstances; namely, where the mortgaged property is clearly worth more than the encumbrances on it. See "New Jersey Foreclosure Law & Practice 2022", *Scott T. Tross* (citing to and relying upon the following Unpublished Decision (BER-F-10404-03) for this: "Mortgage Elec. Registration Sys. Inc. v. Han, DDS# 15-4-7928 (Ch. Div. 2004) (court gave the mortgagors 45 days to execute a contract for the sale of the mortgaged property provided that they paid the foreclosing mortgagee its contractual carrying charges – *i.e.*, principal, interest and taxes – during the 45-day period."). See

4

also "New Jersey Law Journal", Unpublished Opinions (October 18, 2004), Summaries ("DEBTOR/CREDITOR -- FORECLOSURE -- INJUNCTIVE RELIEF 15-4-7928 Mortgage Electronic Registration Systems, Inc., etc. v. Han, et ux., Chancery Div. (Doyne, P.J.S.C.) (7 pp.) The court grants the defendants' request for an injunctive order restraining the sheriff from holding a foreclosure sale on their property, the judge being satisfied that equity requires affording the defendants the opportunity to market the subject property under certain conditions set forth in the opinion, where an appraisal shows that the property is worth enough on the market to satisfy all three outstanding loans and leave defendants with $1.5 million in equity. [Decided Sept. 17, 2004.]")

The present situation is analogous to well settled Chapter 11 Bankruptcy law, as follows. Bankruptcy courts, like Chancery courts, are courts of equity. The factors relevant to the matter sub judice are analogous to considerations of a bankruptcy court in determining whether to grant a secured lender's motion for relief from the automatic stay to foreclose on real property, were this matter proceeding under chapter 11 of the Bankruptcy Code. New Jersey bankruptcy courts – and indeed, bankruptcy courts in all districts – **uniformly deny motions seeking relief from the automatic stay to foreclose on real property where the moving lender holds a significant equity cushion, recognizing that the lender's interests are protected in such a case, whereas the borrower faces irreparable harm**.

In determining whether to grant a secured Mortgagee's motion for relief from the automatic stay to foreclose on real property, bankruptcy courts balance the equities, considering the harm that may be caused to the secured creditor and debtor – as well as unsecured creditors – if the automatic stay is so modified. Section 362(d) is thus

intended to balance the interests of the creditors and the debtor.  *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 206 (C.A.3 (N.J.),1995).

Bankruptcy courts may grant a creditor's motion for relief from the automatic stay either for cause – which may include lack of adequate protection of an interest in property – or if it is determined that the debtor does not have equity in the property and such property is not necessary for an effective reorganization.  11 U.S.C. § 362(d)(1) – (2).  *See id.*; *see also Matter of Cardell,* 88 B.R. 627, 631 (Bankr. D.N.J. 1988).  In the case at bar, neither section would support granting relief from the automatic stay.

First, the borrower is a single asset real estate (SARE) entity.  As such, it is undeniable that the debtor requires the property to continue in business, as the property comprises the borrower's only money-producing asset. *See In re Indian Palms Associates, Ltd.*, 61 F.3d at 209.  Further, the lender's own appraisal establishes that the borrower has equity in the property, as the Mortgagee's own appraisal values the property at not less than $23,900,000.00 (and indeed may it be valued at as much as $29,700,000), and the total debt owed on the property is $18,796,043.86.  *See In re Indian Palms Associates, Ltd.*, 61 F.3d at 206 (noting that "the classic test for determining equity under section 362(d)(2) focuses on a comparison between the total liens against the property and the property's current value."); *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986) (noting that "[i]n determining whether or not the debtor has equity in the property, all encumbrances against the subject property are totalled, whether or not all of the lien holders have joined in the request for relief from the stay.") (citing *In re Trina-Dee, Inc.,* 26 B.R. 152, 154 (Bankr. E.D.Pa.1983)).  Thus, neither of the two necessary factors of section 362(d)(2) could be established.

As previously noted, bankruptcy courts may also grant relief from the automatic stay for cause, such as a lack of adequate protection of a lender's interest in its collateral. 11 U.S.C. 362(d)(1).  It is generally understood that "[t]he existence of equity above the secured party's interest which provides an 'equity cushion' to the secured party may, in a given case, provide adequate protection." *In re Dunes Casino Hotel*, 69 B.R. at 794 (citing cases); *In re Indian Palms Associates, Ltd.*, 61 F.3d at 207 (noting that "in determining whether a secured creditor's interest is adequately protected, most courts engage in an analysis of the property's "equity cushion"—the value of the property after deducting the claim of the creditor seeking relief from the automatic stay and all senior claims."); *Matter of Cardell*, 88 B.R. at 632 (noting that "many courts have focused on the presence or absence of an equity cushion in determining whether a secured creditor has adequate protection of his collateral.").  The equity cushion essentially shields the lender's interest "from loss due to any decrease in the value of the property during the time the automatic stay remains in effect." *Id*.  Under the Mortgagee's worst case scenario appraisal, the Mortgagor here holds significant equity in the property. Moreover, there is no evidence that the property is depreciating in value.  Even with interest accruing, it would be years before the Mortgagee's equity cushion is depleted. Accordingly, whether the Mortgagee is permitted to foreclose today or in sixty (60) days, the Mortgagee suffers no substantial prejudice.  The Mortgagor, on the other hand, faces the loss of significant equity in the property and the ability to operate a profitable business.

For the foregoing reasons the Sheriff's sale should be stayed for cause for 60 days under N.J.S.A. 2A:17-36.

## POINT II

## PRELIMINARY INJUNCTIVE RELIEF WITH
## TEMPORARY RESTRAINTS SHOULD BE GRANTED

Should the Court deny Defendants a stay of the Sheriff's Sale pursuant to N.J.S.A. § 2A:17-36, then in the alternative they seek preliminary injunctive relief with temporary restraints temporarily enjoining and restraining Plaintiff from proceeding with the Sheriff's Sale and ordering the Sheriff to adjourn the Sheriff's Sale for sixty (60) days.

The standard for issuing preliminary injunctive relief with temporary restraints in New Jersey is well settled.  Specifically, an applicant must show:  (1) that the relief is necessary to prevent irreparable harm; (2) that they are asserting a settled legal right; (3) a reasonable likelihood of succeeding on the merits; (4) a balance of the equities in its favor.  Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982).

Defendants have satisfied each of the above elements and have demonstrated their entitlement to preliminary injunctive relief with temporary restraints.

First, Defendants have established that the requested relief is necessary to prevent irreparable harm to them.

Harm is generally considered irreparable if it cannot be adequately redressed by money damages, and where such harm is immediate.  See Crowe, supra.  "Pecuniary damages may be inadequate because of the nature of the injury or of the right affected." Id.

As set forth in the Russack Certification, under the unique facts and circumstances related to the valuation and financing of the Property, Defendants will lose their equity and investment interests in the Property if the Sheriff's Sale is not stayed.  If

the Sheriff's Sale moves forward in five or six days, Defendants will suffer immediate irreparable harm that can never be compensated.

Second, Defendants have established that they are asserting a settled legal right. Indeed, Defendants' right to seek a discretionary stay of the Sheriff's sale from the Court is expressly authorized by statute, N.J.S.A. § 2A:17-36.

Third, Defendants have established a reasonable likelihood of succeeding on the merits of their request for a stay of the Sheriff's Sale.  As detailed in the Russack Certification, the Property is significantly oversecured by Plaintiff, Mortgagor has already secured most of the financing towards the Property's total mortgage amount, and Mortgagor has a good-faith belief that Mortgagor will be able to successfully obtain the remaining financing for payoff in sixty (60) days – to pay off the Property's mortgage in its entirety.

Fourth, when balancing the equities, it is clear that the harm suffered by Defendants if preliminary injunctive relief with temporary restraints is denied would be far greater than the harm suffered by Plaintiff if such relief is granted.  Crowe, supra. Indeed, as detailed in the Russack Certification, among other things, the Property is worth significantly more than Plaintiff is owed, and Defendants will lose their equity and investment interests in the Property if the Sheriff's Sale is not stayed.

The balance of the equities is squarely on the side and tips heavily in favor of Defendants.

Accordingly, Defendants' application for preliminary injunctive relief with temporary restraints should be granted.

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendants respectfully request that the Court issue an Order staying the Sheriff's Sale for sixty (60) days pursuant to N.J.S.A. § 2A:17-36; or, if not, in the alternative the Court should issue an Order granting preliminary injunctive relief with temporary restraints temporarily enjoining and restraining Plaintiff from proceeding with the Sheriff's Sale and ordering the Sheriff to adjourn the Sheriff's Sale for sixty (60) days.

Dated:  May 13, 2022

**SEIDMAN & PINCUS, LLC**

By: ___*/s/ Mitchell B. Seidman*___
    Mitchell B. Seidman
    777 Terrace Ave, Suite 508
    Hasbrouck Heights, NJ 07604
    (201) 473-0047

    *Attorneys for Defendants*
    *330 Carter Equity LLC and Ira Russack*

**SEIDMAN & PINCUS, LLC**
Mitchell B. Seidman (028301985)
777 Terrace Ave, Suite 508
Hasbrouck Heights, NJ 07604
(201) 473-0047
*Attorneys for Defendants 330 Carter Equity LLC*
*and Ira Russack*

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION MERCER COUNTY |
| Plaintiff, | Docket No. F-002486-21 Civil Action |
| v. | |
| 330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY, | **CERTIFICATION OF SERVICE** |
| Defendants. | |

**MITCHELL B. SEIDMAN** hereby certifies as follows:

1.     I am the Managing Member of Seidman & Pincus, LLC, counsel to Defendants. Accordingly, I am fully familiar with the matter set forth herein.

2.     I submit this certification as proof that Defendants served on Plaintiff, and gave Plaintiff notice of, their order to show cause application seeking a stay of the Sheriff's sale in this foreclosure.

3.     Defendants served their order to show cause application on Plaintiff, and gave Plaintiff notice of the application, by both of the following methods: (i) by filing the order to show cause papers on NJ eCourts, and with Plaintiff being represented by counsel who has appeared in the case such that Plaintiff's counsel was immediately served with the papers and received notice of same; and (ii) a copy of Defendants' order to show cause papers was emailed to Plaintiff's counsel contemporaneous with them being filed on NJ eCourts.

4.      Plaintiff's counsel who was served and given notice (who was emailed the order to show cause papers) is Plaintiff's counsel of record in the case, to wit:

> Christopher J. Leavell, Esq.
> Klehr Harrison
> 1000 Lincoln Drive East, Suite 201
> Marlton, NJ 08053
> cleavell@klehr.com

5.      I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing are willfully false I am subject to punishment.

Dated:  May 13, 2022                           */s/ Mitchell B. Seidman*
                                               Mitchell B. Seidman

**Exhibit H**

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
GENERAL EQUITY PART
MERCER COUNTY
DOCKET NO. F-002486-21
APP. DIV. NO. _____

UNIVEST BANK AND TRUST,           :
CO.,                              :
                                  :          TRANSCRIPT
          Plaintiff,              :
                                  :              OF
     v.                           :
                                  :           HEARING
330 CARTER EQUITY, LLC,           :
IRA RUSSACK and STATE OF          :
NEW JERSEY,                       :
                                  :
          Defendants.             :

               Place:    Mercer County Superior Court
                         (Heard via Zoom)

               Date:     May 24, 2022


BEFORE:

     HONORABLE TIMOTHY P. LYDON, J.S.C.


TRANSCRIPT ORDERED BY:

     MITCHELL B. SEIDMAN, ESQ., (Seidman & Pincus, LLC)




          Transcriber:   Megan Lash, AOC 596

          Agency:        KLJ Transcription Service, LLC
                          P.O. Box 8627
                          Saddle Brook, NJ   07663
                          (201) 703-1670
                          www.kljtranscription.com
                          info@kljtranscription.com

                          Digitally Recorded
                          Operator - Patrice Flim

2

APPEARANCES:

        PAIGE M. WILLAN, ESQ.
           -and-
        CHRISTOPHER J. LEAVELL, ESQ.
        (Klehr, Harrison, Harvey, Branzburg, LLP)
        Attorneys for the Plaintiff

        LANI M. D'AGOSTINO, ESQ. (Seidman & Pincus, LLC)
        Attorney for the Defendants, 330 Carter Equity,
        LLC and Ira Russack

3

<u>I N D E X</u>

| | <u>PAGE</u> |
|---|---|
| <u>RE STATUS</u>: | |
| BY: Ms. D'Agostino | 4 |
| BY: Ms. Willan | 5 |
| | |
| <u>ARGUMENT</u>: | |
| BY: Ms. D'Agostino | 5/12 |
| BY: Ms. Willan | 6/15 |
| | |
| <u>BY THE COURT</u>: | |
| Decision | 18 |

        NOTE: The Court and attorneys are not being picked
up clearly on any microphone, rendering the proceeding
indiscernible at times.

4

```
 1              (Proceeding commenced at 4:08 p.m.)
 2          THE COURT:  All right.  This is the matter of
 3  Carter Equity versus Univest Bank (sic).  This is under
 4  Docket F-2486-21.  Counsel, enter your appearances
 5  please.
 6          MS. WILLAN:  Paige Willan; Klehr, Harrison;
 7  for plaintiff, Univest Bank.
 8          MR. LEAVELL:  Christopher Leavell; Klehr,
 9  Harrison; for Univest Bank and Trust Co.
10          MS. D'AGOSTINO:  Lani D'Agostino from the law
11  firm of Seidman and Pincus, on behalf of the defendants
12  330 Carter Equity and Ira Russack.
13          THE COURT:  Counsel, good afternoon.
14          I know that we were here approximately a week
15  ago on an order to show cause filed.  The Court had
16  given the parties approximately a week, I stayed the
17  Sheriff's sale temporarily to see if the parties could
18  reach a resolution.
19          Just asked the parties now whether there were
20  (indiscernible) truthful discussions, and just asked
21  them how they would like to proceed.
22          Ms. D'Agostino, would you like to go ahead?
23          MS. D'AGOSTINO:  Yes, Your Honor.  I'd just
24  like to say first that Mitchell Seidman, I believe, was
25  (indiscernible) the last time, and he did want to be
```

5

```
 1  here to argue this motion.  Unfortunately, he had
 2  another conflict with this, a mediation in person.  So,
 3  he's there right now.
 4          But it's my understanding that there was
 5  progress made, that there's remaining three to four
 6  open issues that likely progress could be made on the
 7  following issues, but some of them could probably be
 8  cleared up as well if there was more time.  But a
 9  guaranteed resolution, I'm not sure.
10          THE COURT:  Okay.
11          MS. WILLAN:  Your Honor, from plaintiff's
12  perspective, we did engage in conversations with Mr.
13  Seidman on behalf of 330 Carter.  While the parties
14  endeavor to come to a place where there might be an
15  agreement on a -- an adjournment of the Sheriff's sale,
16  Univest is not satisfied that -- that that's
17  appropriate at this point, and we're prepared to go
18  forward to -- to argue this motion.
19          THE COURT:  Ms. D'Agostino, would you like to
20  go ahead?
21          MS. D'AGOSTINO:  Yes, Your Honor.
22          So, Your Honor, (indiscernible) requested
23  here a 60 day stay under the statute.  There's two
24  bases for that.  And those being that our client has
25  already raised or has a letter of intent for almost 87
```

6

1    percent of the debt that's outstanding.  That being --
2    the outstanding debt being $18.7 million.  And our
3    client has already lined up $16.1 million, and needs
4    the 60 days to close that financing and arrange the
5    other $2 million.
6           In addition, Your Honor, the value of the
7    building, which is a commercial building in the
8    Princeton area of New Jersey, commercial office
9    building, Your Honor, and it currently, according to
10   the plaintiff's appraisal, far exceeds the amount due
11   to the plaintiff.  Plaintiff is fully secured and a
12   stay of the Sheriff's sale will not materially harm the
13   plaintiff.
14          And in this case, the equities weigh heavily
15   in favor of our client, who would suffer irreparable
16   harm, Your Honor, should the Sheriff's sale proceed.
17          THE COURT:  All right.  Ms. Willan?
18          MS. WILLAN:  Your Honor, first I'll address
19   the -- the letter of intent and the possibility of
20   financing to repay the debt to Univest.
21          What we have attached to the certification
22   that Mr. Russack filed is a redacted, non-binding
23   letter of intent.
24          The fact that it's redacted is significant in
25   this case, Your Honor.  On multiple occasions in the

7

1    past, Univest has received false representations and
2    false information from these borrowers.
3           This entire foreclosure action was initiated
4    because an overdraft in the amount of over $4 million
5    was created in a deposit account held by the borrower.
6    That overdraft occurred because of what borrower's own
7    prior counsel referred to as, and I'm quoting here, "a
8    check kite of substantial proportions".  So, that the
9    first piece of falsified documentation (indiscernible)
10   information.
11          Next, we received no fewer than four
12   certificates of insurance from the borrowers,
13   purportedly evidencing that there was property
14   insurance and general liability insurance on the
15   property.  It turned out that was completely false.
16   And as shown here later in my -- my presentation that
17   was important.  We have a -- a large valuable property
18   on which there was zero property insurance, and which
19   Univest believed there was property insurance because
20   of false representations and certificates of insurance.
21          In addition to that, and addressing the issue
22   of the substantial overdraft, we were informed by the
23   borrower's prior counsel that borrower had initiated
24   litigation against a third-party to recover those
25   funds, that $4 million that was overdrafted out of

8

1   their account.
2           We subsequently learned from a subsequent
3   counsel that the attorneys who had been identified as
4   the attorneys who would be filing suit in New York to
5   recover this $4.5 million had never been engaged by
6   borrowers, knew nothing about this overdraft, knew
7   nothing about a suit.
8           So, there's a pattern of false information
9   that Univest has been receiving from these borrowers.
10  And we have substantial reason to doubt the voracity of
11  a redacted letter of intent that doesn't even show the
12  name of the lender to verify that it's accurate.
13          In addition to that, as -- as Ms. D'Agostino
14  noted, this is not financing for 100 percent of the --
15  the debt that's owed.  It's only 87 percent.  There is
16  an additional $3 million or so that the borrower would
17  need to come up with to pay off the debt.  And there's
18  a substantial question as to whether the borrower can
19  do that.
20          In particular, on page 4 of the letter of
21  intent that was submitted with Mr. Russack's
22  certification, there's an exclusivity clause that
23  provides that Mr. Russack and 330 Carter expressly
24  agree to work solely with this lender to procure the
25  loan, and agree not to obtain or attempt to obtain

9

1   financing in connection with the property with any
2   party other than lender.  And then there's a $50,000
3   break-up fee if they do so.
4           So, I'm not sure where borrower is proposing
5   to find the remaining 3 to $4 million that's necessary
6   to pay of this debt, but it seems like they must have
7   to have it themselves, which it appears they do not.
8           In addition to that, this letter of intent,
9   assuming that it's genuine, appears to have been
10  executed on or around the 2nd of May.  We're now at May
11  24th, three weeks later.  We have seen no evidence of
12  any movement forward in actually obtaining this
13  financing, as opposed to just signing a non-binding
14  letter of intent.  We've seen no drafts of loan
15  agreements.  We've seen no evidence of diligence being
16  exchanged.
17          On page 3 of the letter of intent, there is a
18  -- an advance deposit that's required of $75,000 for
19  the lender to even begin the diligence process and
20  begin drafting loan documents.
21          We've asked for documentation that that --
22  that $75,000 deposit has been paid.  We were told it
23  was paid, but we've never received documentation of
24  that fact.
25          So, for all of those reasons, we believe that

10

1    there's substantial doubt that the borrower would
2    actually repay this debt, either in 60 days, or 90
3    days, or 30 days from now.
4              In addition to the questionable nature of the
5    -- the -- the letter of intent and the possibility of
6    -- of repaying the debt during the period of the
7    adjournment, as a matter of equity, there actually is
8    substantial prejudice to Univest if this adjournment is
9    granted.
10             This property was severely damaged by
11   Hurricane Ida on September 1st of 2021.  As I noted
12   earlier, there was no insurance on the property,
13   although that was a requirement of a variety of
14   contracts that the borrower entered into.
15             As of today, it is Univest's understanding
16   that there is no permanent power at the building, the
17   elevators are inoperable, and the HVAC system does not
18   work.
19             Because of that damage which continues
20   unabated to today, that is causing substantial damage
21   to the tenant relationship in the property.  As of
22   April 1st, 2022, Univest was copied on a letter from
23   the tenant in the property to the -- the borrower that
24   said that the borrower -- tenant believed that it had
25   the right under the lease to terminate as of that day,

11

1    although it was electing not to.  And the reason for
2    that was because of landlord's failure to properly
3    restore the premises within 180 days after the damage
4    caused by Ida.
5              And they explicitly reference -- the tenant
6    explicitly referenced in this and other letters the
7    fact that the -- the borrower here is taking a
8    piecemeal approach in which they're focusing only on
9    specific items that the tenant is -- is raising and
10   demanding that they address week-to-week.
11             So, as time moves forward, we have physical
12   damage to the property that appears is not being
13   remediated in a timely fashion.  We have economic
14   damage to the tenant relationship, including a possible
15   termination of -- of a substantial lease of the
16   property.
17             And we also learned that as of Monday, this
18   last Monday morning, as of yesterday morning, the
19   property manager apparently resigned from the property.
20   So, potentially there could be even further delays and
21   damage to the tenant relationship and to the
22   remediation process that's ongoing.
23             And so, for all of those reasons, it is
24   prejudicial to Univest to delay this sale.  It's
25   important that the bank be able to preserve its right

12

1   to its collateral, to preserve the value of that
2   collateral.
3           It has been months since Ida occurred, and
4   the borrower has not evidenced the ability to
5   appropriately and responsibly address the damage that
6   was caused by that event.
7           So, for that additional reason, we would
8   submit that a -- a delay of the Sheriff's sale is not
9   appropriate here.
10          THE COURT:  Thank you.  Now, Ms. Willan, the
11  -- the foreclosure action was filed just a little over
12  a year ago.  Is that correct?  It was May 7, 2021?
13          MS. WILLAN:  That is correct.
14          THE COURT:  Ms. D'Agostino, would you like to
15  go ahead and respond?
16          MS. D'AGOSTINO:  Yes, Your Honor.  Thank you.
17          I'm almost not sure where to begin.  Most, if
18  not every one of the things that were just said,
19  there's no certification in the record, there's -- none
20  of those copies of those letters have been provided to
21  me to make an appropriate response.
22          The only certification (indiscernible)
23  documentation in the record is from our client, Your
24  Honor, as well as a brief with cited case law to
25  support our position.

13

1           That be as it may, I just want to try to do
2   my best to address some of the items that Counsel just
3   rattled off.  Again, I have none of that documentation.
4   I don't believe it was filed with the Court for the
5   Court to consider as well.
6           There were allegations about damage to the
7   building, that the tenant is not happy.  As far as I
8   know, Your Honor, the tenant is happy.  The -- the
9   tenant is paying the rent.  And in fact, if even half
10  of the things were true that Counsel just said about
11  the tenant and the rents, they would have certainly --
12  if her client is as worried as she's saying they were,
13  (indiscernible) motion for a rent receiver.  That's
14  never been done in this case, Your Honor.  I mean, the
15  record stands with no rent receiver motion ever being
16  made.
17          And as far as I know, Your Honor, there --
18  those -- those rents are being submitted to a lock box.
19  The bank has the access to the lock box.  The bank gets
20  those rents.  And again, Your Honor, none of those
21  issues were put in a certification to be before this
22  Court.
23          Counsel made a statement about an allegation
24  about monies being overdrawn from a separate account
25  belonging to defendants.  I think she said it was

14

```
 1    something like $4 million.  If -- if -- first of all,
 2    it's irrelevant to this motion, again because it's not
 3    in a certification.
 4           However, I don't believe Counsel's being
 5    frank with the Court, and she can correct me if I'm
 6    wrong, but I believe that $4 million was added by the
 7    bank into the $18.7 million that they're seeking.  It's
 8    not in addition to, as far as I understand, if that's
 9    what she's talking about.  So, again, it's completely
10    irrelevant.  We're talking about 18.7, it's 18.7.
11           I have nothing, or any information, or any
12    back-up about any allegations of false insurance
13    certificates.
14           I know that -- what I do know, Your Honor, is
15    that there is a tenant in the building.  It's -- it's a
16    long-term tenant at that building.  They occupy at
17    least half or more of the building.  It's a very good
18    tenant.  And they are paying the rent.  And -- and
19    again, there's -- no motions have been made for a rent
20    receiver in this case.
21           I do understand that the HVAC system was
22    recently repaired.
23           And again, Your Honor, with regards to
24    irreparable harm, most, if not all, of the things
25    mentioned by Counsel would have been -- should have
```

15

```
 1    been presented in a certification, allow us time to
 2    address them and defend against those allegations, but
 3    they're not.  And to truly suffer -- they're the basis,
 4    according to counsel, for her client to be suffering
 5    some type of irreparable harm, certainly, they would
 6    have been the basis for a motion (indiscernible)
 7    foreclosure for a receiver to be put in place to
 8    protect the property, to make these repairs
 9    (indiscernible) extremely serious according to Counsel,
10    and yet there is a tenant in there that's
11    (indiscernible) paying the rent.
12           And, Your Honor, nothing that Counsel has
13    said has affected that the bank (indiscernible) is
14    secure.  There is a huge equity cushion here.  Although
15    there may be (indiscernible) on the numbers, last time
16    I checked it was not 4 million, or 3 million, it was
17    2.5 million is the difference.
18           THE COURT:  (Indiscernible) D'Agostino.  Ms.
19    Willan, anything -- anything else you'd like to
20    address?
21           MS. WILLAN:  Your Honor, I would like to
22    address two things.
23           One, the tenant is paying rent.  The tenant
24    has been paying abated rent since December of 2021,
25    because of the damage that was caused by Ida.  And
```

16

1   whether the tenant will continue to pay rent or even
2   continue to -- to occupy the property, I think is an
3   open question at this point.
4           Two, all of this documentation, the -- the
5   letters from the tenant, the certificates of insurance,
6   I provided all of those to Mr. Seidman last Monday and
7   emailed them to him last Monday.
8           And if Your Honor feels that it's necessary
9   for -- I perfectly understand that this was an
10  emergency motion.  We were trying to work it out; it
11  didn't work out.  Univest would -- would request, if
12  the basis for granting the motion was that Univest has
13  not put its evidence in opposition in a certification
14  or in -- in a form that's acceptable to the Court, I
15  would ask Your Honor to give us a -- a week to have the
16  opportunity to do so.  We can submit a certification.
17          We'd be happy to -- to have an evidentiary
18  hearing scheduled and put on evidence.  We have the
19  back-up of the documentation of all of the things that
20  -- that I relayed to you today.
21          THE COURT:  Ms. Willan, are you disputing
22  that the value of the property doesn't exceed the
23  amount of debt?
24          MS. WILLAN:  No, we do not dispute that the
25  value of the property exceeds the amount of -- the --

17

1   the amount of the debt.
2           THE COURT:  Okay.  Well, in -- in that case,
3   why shouldn't the defendant at least be given some
4   additional time, 60 days, to see if they can secure
5   sufficient financing to secure -- secure the -- the --
6   the debt?
7           MS. WILLAN:  Your Honor, --
8           THE COURT:  The judgment (indiscernible).
9           MS. WILLAN:  Your Honor, this -- the -- the
10  borrower has already exercised two statutory 30 day
11  adjournments.  It's been 22 days since this non-binding
12  letter of intent was executed.  Univest has not seen
13  any evidence, nor has any evidence been presented to
14  this Court that the borrower is actually moving forward
15  with procuring alternative financing.
16          And so, from Univest's perspective, because
17  of the underlying issues with the -- the physical
18  status of the property, with the tenant relationship at
19  the property, it's Univest's position that enough time
20  has already been granted to this borrower to take the
21  opportunity to find additional financing to pay off the
22  debt and -- and preserve their equity in the property.
23          Your Honor, if you are considering granting a
24  stay of the sale, then Univest would respectfully
25  request that you grant a shorter stay than 60 days.  At

18

1  that point, if the borrower has additional evidence
2  that it has been moving along in the process of
3  refinancing the property, a signed loan agreement, a --
4  a letter from the -- the lender indicating that
5  diligence has been completed, then perhaps Univest
6  would even agree to a further adjournment.
7          But at this point, providing 60 days on the
8  basis of a redacted non-binding letter of intent that
9  doesn't even provide for the full repayment of the
10 debt, with the additional -- addition of the issues
11 that are -- that exist at the property, we think that
12 that -- the balance of the equities there favors
13 Univest.
14          THE COURT:  Counsel, I -- I have great
15 concerns about granting a stay.  My one concern is that
16 the value here of the property could -- could
17 substantially or significantly exceed the amount of
18 judgment.  The borrower has provided a letter of
19 intent.  I am concerned that it doesn't seem like
20 there's been much progress made toward obtaining the
21 necessary loan and additional funds that would be
22 necessary to satisfy the judgment.
23          I'm also concerned as well that this action
24 was filed over a year ago.  Certainly, the defendant
25 has had quite a bit of time to put this kind of

19

1  financing in place.
2          This is a commercial property.  This is not
3  an issue of someone losing their home.  The mortgage,
4  the judgment, foreclosure was uncontested.
5          And certainly, there's -- there's cause for
6  concern, plaintiff has raised issues on certainly the
7  condition of the property.
8          Because of the amount -- the amount of equity
9  that may be outstanding the value of the property, I'm
10 willing to grant defendant's request for a stay, but I
11 believe that 30 days is appropriate at this time.
12          What I would like to give the parties an
13 opportunity to do is, specifically the plaintiffs to
14 file a brief in opposition and any type of
15 certification -- certifications that they believe is
16 appropriate so that if we get to the point of 21 days,
17 parties have not reached some type of resolution or
18 defendant has not made any progress in terms of
19 securing a loan, that the Court will be in a position
20 to adjudicate the issue of the injunction.
21          Just looking at the calendar, Ms. Willan, if
22 you'd like to submit something on behalf of your
23 client, if you could submit that by June 7th?
24          MS. WILLAN:  Yes, Your Honor.
25          THE COURT:  All right.  I will give defendant

20

1   the opportunity to reply June 14th.  And what I'll do
2   is -- what I'll do is I'll hold argument on 1:30 on
3   June 16th.  Just as a technical matter, just as the
4   basis of the calendar, I'll stay the Sheriff's sale to
5   June 22nd.
6           And as we approach the 16th, if the parties
7   believe additional time would be necessary or fruitful,
8   I can push back the date of oral argument.
9           MS. WILLAN:  Thank you, Your Honor.
10          MS. D'AGOSTINO:  So, as -- just for
11  clarification, Your Honor, as it stands, June 7th for
12  the plaintiff's submissions, defendant reply June 14,
13  argument will be heard 1:30 on June 16, I assume it's
14  going to be remote, and a stay will be put in place and
15  the Judge's -- and Your Honor's order now staying the
16  Sheriff's sale to June 22nd, 2022, to be re -- to be
17  looked at again or reevaluated at --
18          THE COURT:  That's -- that's correct.  And if
19  the Court denies relief at that time, that would be --
20  that would be dispositive.
21          MS. D'AGOSTINO:  Okay.  In the 16th, it would
22  be --okay.  Got it.
23          THE COURT:  I mean, technically, the next
24  sale -- here in Mercer County, we have sales every
25  Wednesday.  So, that's why I set it down for the 22nd,

21

1   just to extend the stay till the 22nd.
2           MS. D'AGOSTINO:  Thank you.
3           THE COURT:  Counsel, any additional
4   clarification or other issues you'd like to address?
5           MS. D'AGOSTINO:  No, Your Honor.
6           THE COURT:  Counsel, thank you.  Thank you
7   very much for your time today.  I'll look for your
8   submissions.  If the parties do make any progress,
9   please just keep my staff apprised.
10          MS. WILLAN:  Thank you, Your Honor.
11          MR. LEAVELL:  Thank you, Your Honor.
12          MS. D'AGOSTINO:  Thank you.
13          (Proceeding adjourned at 4:34 p.m.)
14
15
16
17
18
19
20
21
22
23
24
25

22

<u>CERTIFICATION</u>

1
2
3          I, MEGAN LASH, the assigned transcriber, do hereby
4    certify the foregoing transcript of proceedings on
5    CourtSmart, Index No. from 4:08:57 to 4:34:17, is
6    prepared to the best of my ability and in full
7    compliance with the current Transcript Format for
8    Judicial Proceedings and is a true and accurate
9    compressed transcript of the proceedings, as recorded.
10
11
12
13    **_/s/ Megan Lash_**                       596
14          Megan Lash                      AOC Number
15
16
17    KLJ Transcription Service          07/07/22
18          Agency Name                       Date
19
20
21
22
23
24
25

**Exhibit I**

**PREPARED BY THE COURT**

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION MERCER COUNTY |
| Plaintiff, | Docket No. F-2486-21 |
| v. | Civil Action |
| 330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY, | **ORDER STAYING SHERIFF'S SALE** |
| Defendants. | |

This matter being brought before the Court by Seidman & Pincus, LLC, attorneys for defendants 330 Carter Equity LLC and Ira Russack ("Defendants"), seeking the entry of an order staying the May 25, 2022 Sheriff's sale of the property located at 330 Carter Road, Princeton, NJ (the "Property"); and with Christopher J. Leavell, Esq., and Paige M. Willan, Esq., appearing for Plaintiff; and with the Court having considered the matter; and for the reasons stated on the record; and for good cause shown;

It is on this 24th day of May, 2022, **ORDERED**:

1. The Sheriff sale of the property located at 330 Carter Road, Princeton, NJ is adjourned to **JUNE 22, 2022**;

2. Plaintiff may file Opposition by **JUNE 7, 2022**.

3. Defendant may file a reply by **JUNE 14, 2022**.

4. The Court will conduct oral argument on the Order to Show Cause on **JUNE 16, 2022**, at 1:30 p.m. The hearing shall be conducted remotely via Zoom and information will be sent to the parties within 3 days before the date this matter is scheduled to be heard.

/s/                Timothy P. Lydon
HON. TIMOTHY P. LYDON, P.J.Ch.

# **Exhibit J**

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
GENERAL EQUITY PART
MERCER COUNTY
DOCKET NO. F-002486-21
APP. DIV. NO. _____

UNIVEST BANK AND TRUST, :
CO.,                     :
                         :              TRANSCRIPT
          Plaintiff,     :
                         :                 OF
      v.                 :
                         :               MOTION
330 CARTER EQUITY, LLC,  :
IRA RUSSACK and STATE OF :
NEW JERSEY,              :
                         :
          Defendants.    :

            Place:   Mercer County Superior Court
                     (Heard via Zoom)

            Date:    June 27, 2022


BEFORE:

    HONORABLE TIMOTHY P. LYDON, J.S.C.


TRANSCRIPT ORDERED BY:

    CHRISTOPHER J. LEAVELL, ESQ.
    (Klehr, Harrison, Harvey, Branzburg, LLP)




        Transcriber:   Megan Lash, AOC 596

        Agency:        KLJ Transcription Service, LLC
                       P.O. Box 8627
                       Saddle Brook, NJ  07663
                       (201) 703-1670
                       www.kljtranscription.com
                       info@kljtranscription.com

                       Digitally Recorded
                       Operator - Patrice Flim

APPEARANCES:

      PAIGE M. WILLAN, ESQ.
        -and-
      CHRISTOPHER J. LEAVELL, ESQ.
      (Klehr, Harrison, Harvey, Branzburg, LLP)
      Attorneys for the Plaintiff

      LANI M. D'AGOSTINO, ESQ. (Seidman & Pincus, LLC)
      Attorney for the Defendants, 330 Carter Equity,
      LLC and Ira Russack

3

I N D E X

|  |  | PAGE |
|---|---|---|
| ARGUMENT: |  |  |
| BY: Ms. D'Agostino |  | 5/17 |
| BY: Ms. Willan |  | 12 |
|  |  |  |
| BY THE COURT: |  |  |
| Decision |  | 18 |

     NOTE: The Court and attorneys are not being picked
up clearly on any microphone, rendering the proceeding
indiscernible at times.

4

```
 1                  (Proceeding commenced at 11:03 a.m.)
 2             THE COURT:  This is the matter of Univest
 3    National Bank and Trust versus 330 Carter Equity.  It's
 4    under Docket F-2486-21.  Counsel, your appearances
 5    please.
 6             MS. WILLAN:  Your Honor, Paige Willan; Klehr,
 7    Harrison; and Christopher Leavell; Klehr, Harrison; for
 8    plaintiff, Univest Bank.
 9             MS. D'AGOSTINO:  Lani D'Agostino here on
10    behalf of the defendants 330 Carter Equity and Ira
11    Russack.
12             THE COURT:  Counsel, since you were here on
13    the stay -- defendants' application for a stay of the
14    Sheriff's sale, there have been a number of stays
15    issued.  There's two stays as of right, and the Court
16    has also given a total of 45 days in terms of the stay.
17    Two different stays were granted to give the
18    opportunity to the -- essentially, defendant the
19    opportunity to take over the financing and provide some
20    type of evidence that financing was in place, and that
21    ultimately the sale could be averted.
22             Additional briefing was submitted by the
23    parties to the Court.  The Court has submitted and
24    reviewed -- or has reviewed all of the submissions.
25             Perhaps at this time, Ms. D'Agostino, please
```

5

```
 1    -- if you'd like to, please go ahead and present
 2    argument in terms of your motion to stay.
 3             MS. D'AGOSTINO:  Thank you, Your Honor.
 4    There's two bases for the order to show -- stay of the
 5    sale (indiscernible) that we originally asked for,
 6    because at the time we were being transparent about,
 7    you know, letting the Court know that it would take at
 8    least 60 days to get the financing in place.
 9             Those two basises (sic) that established the
10    defendants' entitlement to the stay of the sale,
11    include a total amount due to plaintiff that is
12    approximately $2.7 million.  The bulk of that amount,
13    16.15, has already been arranged -- financing has
14    already been arranged and is (indiscernible)
15    progressing, Your Honor.  And the value of the office
16    building, the property being foreclosed in this case,
17    is in excess of the amount owed to the plaintiff by
18    over $5 million, Your Honor.  That's a significant
19    equity cushion.  It would take years, not
20    (indiscernible) years for that equity cushion to
21    (indiscernible).
22             So, in that sense, the fact that the office
23    building does exceed the amount owed to the plaintiff,
24    a -- in fact, that's conceded by the plaintiffs and by
25    the expert appraisal.
```

6

1          The balancing of the equities in this case
2     also clearly weigh in favor of our client, mortgagor,
3     and Mr. Russack in that they will lose their equity in
4     this building, and they will lose their investment if
5     the Sheriff's sale is not stayed, and they don't have
6     the whole 60 day opportunity to close on that financing
7     and redeem their property.
8          And at the same time, Your Honor, the
9     plaintiff will suffer no material harm, as an overseer
10    creditor if the stay (indiscernible) stayed for the
11    full 60 days.
12         The -- the plaintiffs in their reply --
13    opposition papers, Your Honor, (indiscernible) about
14    repairs that need to be made at the property because of
15    the Hurricane Ida.  And in -- in the certification of
16    Mr. Russack that was submitted to the Court, he laid
17    out in detail the repairs that are being made and his
18    profound efforts to save the property and to make sure
19    the tenant has what they need.  At the same time,
20    trying to get the financing in place to redeem this
21    property.
22         So, in addition to the progress
23    (indiscernible) plaintiff, progress has also been made
24    with regards to the repairs that were made at the
25    property.  And it's significant to note, Your Honor,

7

1     that at no time where the plaintiff is now complaining
2     in this motion that the repairs are not being made
3     either quick enough, or up to their standard, or both,
4     that if they were so dissatisfied, at any point in
5     time, they could have moved for a motion
6     (indiscernible) and/or (indiscernible) in and become a
7     mortgage (indiscernible), Your Honor.  They did neither
8     of those.  Rather, now at this time, when Mr. Russack,
9     the mortgagor, requesting the 60 day stay in order to
10    get financing in place so they can redeem their
11    property now (indiscernible).
12         And also, Your Honor, I'd like to note that
13    the plaintiff does not deny that the rents are being
14    collected on a monthly basis by the plaintiff to their
15    lock box, do cover the amounts that are servicing the
16    mortgage.  And so, these repairs that our client made
17    are -- you know, they're not using this rent money.
18    These repairs are still being made though, Your Honor.
19         I did want to just want to point out to the
20    Court (indiscernible) about the decision of Mortgage
21    Electronic Registration Systems, Inc. Versus
22    (Indiscernible).  That's where the Chancery Division
23    easily exercised its discretionary power under the
24    relevant statutes here, Your Honor, that being N.J.S.A.
25    2A:17-36, and ordered the adjournment of the Sheriff's

8

```
1    sale for cause.  And they're almost identical or
2    similar circumstances, namely that the mortgaged
3    property was clearly worth more than the encumbrance.
4               The court there gave 45 days for the
5    mortgagor to execute a contract of sale of the
6    mortgaged property.
7               So, the court understood that at that point
8    they were given the 45 days for just the -- the
9    marketing and to get the property under contract, and
10   realizing that there would probably need to be another
11   adjournment so that it could be closed.  So, it -- it
12   was a process.
13              And they were provided -- the court was
14   concerned that the carrying charges during that time
15   period while the mortgage was going to be marketing the
16   property and getting it under contract, the principal,
17   and interest, and -- and (indiscernible) charges to the
18   property be paid.
19              And here, they are being paid, Your Honor.
20   And here we -- here we are in our case (indiscernible)
21   creditor as well, and a mortgagor making progress to
22   the property, Your Honor, and get the substantial
23   financing in place to do that.
24                    (Extended pause)
25              MS. D'AGOSTINO:  Another thing in our brief
```

9

```
1    Your Honor, we do cite to several bankruptcy decisions
2    where -- and I'm not going to go through each of those
3    cases, Your Honor, but they clearly explain about the
4    equity push and how courts look to that to make sure
5    that a creditor is protected, and it shields them from
6    harm.  And that's the situation here, Your Honor.
7               And -- and the mortgagor and Mr. Russack
8    respectfully request Your Honor grant the full 60 days
9    to allow them to complete the financing, get it in
10   place, get it closed, and redeem their property, Your
11   Honor, and save their equity in this property.
12              THE COURT:  Thank you, Ms. D'Agostino.  Ms.
13   D'Agostino, I just have a -- a couple of questions.
14   What is the status of the contract for the loan?
15              MS. D'AGOSTINO:  Your Honor, my -- the last
16   time I was updated was (indiscernible) with regards to
17   the certification.  So, if Your Honor is requesting
18   something more updated than that, I would have to get
19   back to the Court.
20              THE COURT:  So, the status is, is there is --
21   as far as you're -- what you know based on the
22   certification, no contract (indiscernible)?
23              MS. D'AGOSTINO:  No, Your Honor.  They -- for
24   the financing, they're not trying to sell the property.
25   My client wants to save the property.  So, they are
```

10

1    trying to complete the refinancing to have the
2    plaintiff paid off.
3                THE COURT:  They're in contract to the
4    plaintiffs.
5                MS. D'AGOSTINO:  There's a -- there's a
6    letter of intent in place.  And the process has
7    continued in the sense that up until the last
8    certification, the financing company that's going to be
9    providing the financing requested from the plaintiff a
10   payoff letter -- excuse me.  Yes, a payoff letter,
11   because they need it to (indiscernible) breakdown the
12   components that were due to the plaintiff so that it
13   could get through their process, underwriting, et
14   cetera.  And so, that's where they last left off.
15               And again, if Your Honor wanted something
16   more up to date than that, I -- I would have to get
17   back to the Court (indiscernible).
18               THE COURT:  So, the -- the answer is no,
19   there is no contract for financing.  I assume based on
20   that, there's no closing date either.
21               MS. D'AGOSTINO:  No, Your Honor.  Again, in
22   all fairness to my client, you knew from the beginning
23   it would be a minimum of 60 days to get that in place.
24   And that's why we requested that 60 days.
25               THE COURT:  Ms. D'Agostino, in fairness to

11

1    your client, it had 90 days in terms of stays.  It had
2    two stays by right, and then this Court has granted an
3    additional 45 days.  That's a total of 90 days in terms
4    of securing the financing.  And to plaintiff's point,
5    this -- this action was filed over a year ago.
6                So, in terms of time getting financing
7    together, I think it's a little unfair to say that if
8    you just only had, which essentially, would be 15 more
9    days, because the Court has already given you 45 days,
10   you asked for 60, so we would only be looking at
11   another 15 days.  I guess what essentially, you're
12   saying is that the contract for financing could be
13   concluded and the closing could occur within the next
14   15 days.  Is that essentially, what you're
15   representing?
16               MS. D'AGOSTINO:  That's our belief and that's
17   our hope, yes.  Both, Your Honor.
18               THE COURT:  I don't see any -- I don't see
19   any evidence that supports that here in the current
20   record, but I'll -- I will take you at your word.
21               In terms of the repairs, (indiscernible) the
22   repairs have been ongoing, but every -- every time
23   there's indication repairs have been made, there's
24   always a qualification that there's other work in
25   progress.  So, I assume, notwithstanding the damage

12

1      that was caused back in September of last year,
2      everything has not yet been remediated at this time.
3      Is that correct?
4            MS. D'AGOSTINO:  That's correct, Your Honor.
5            THE COURT:  Okay.  And then the appraisal
6      that was made where basing the value of the property
7      and the -- and the equity cushion that you're referring
8      to, that's based on appraisal that took place in 2020,
9      which would have taken place or occurred before the
10     damage was caused by the storm.  Is that correct?
11           MS. D'AGOSTINO:  I think it was right before
12     the storm, Your Honor.
13           THE COURT:  Ms. D'Agostino, thank you.
14           MS. D'AGOSTINO:  Thank you, Your Honor.
15           THE COURT:  Ms. Willan, would you like to go
16     ahead?
17           MS. WILLAN:  Thank you, Your Honor.
18           As the Court has already noted, the
19      defendants and party had 45 days of adjournment
20     following the filing of this motion, in addition, as --
21     as is noted in our papers and as the Court already
22     expressed, they previously had two 60 day -- two 30 day
23     adjournments for a total of 60 days as of right.
24           And prior to that, there were eight months in
25     which Univest negotiated with the defendants a

13

1      forbearance agreement, and the forbearance agreement
2      was either in place or Univest did not take action to
3      further pursue execution or a judgment while they
4      determined whether or not the defendants would comply
5      with terms of the forbearance agreement.
6           And in the 45 days since this motion was
7      filed, the Court has noted, there is no competent
8      evidence that has been submitted to this Court that
9      repayment to Univest is actually forthcoming.
10          Neither the Court, nor Univest has ever seen
11     an un-redacted copy of the non-binding letter of intent
12     that was submitted to the Court on May 13th.
13          Neither Univest, nor the Court has ever seen
14     a signed loan agreement, and apparently one does not
15     exist.
16          Neither Univest, nor this Court has ever seen
17     any evidence of any diligence that's occurred between
18     the defendants and their -- their purported lender.
19          Neither Univest, nor this Court has ever seen
20     any evidence of the $75,000 payment that's required by
21     the non-bonding LOI, to even start on a letter -- a
22     full loan agreement and diligence in order to close the
23     loan.  So, there's no evidence, no concrete evidence of
24     any progress whatsoever.
25          In addition, neither Univest, nor this Court

14

1    has ever seen any explanation of where the additional
2    approximately $4 million is going to come from to make
3    up the difference between the proposed financing and
4    the amount that's due to Univest.  And that's
5    particularly important, because the non-binding LOI has
6    an exclusivity clause that does not permit defendants
7    to obtain other sources of financing related to this
8    property.  So, where that additional money is going to
9    come from, we still don't know 45 days later.
10          The only evidence of progress that defendants
11   have submitted to this Court in connection with this
12   motion is a request for a payoff letter.  And I just
13   want to address that evidence.
14          That request was a request made from counsel
15   for defendants to counsel for Univest.  In response to
16   that request, Univest asked twice to see the original
17   request from the lender, so that we had some evidence
18   that the request was genuine and was actually coming
19   from a lender who was prepared to actually issue funds
20   in response to the payoff letter -- the payoff letter
21   request.  We never received the original request from
22   the lender.
23          The only thing that we've ever seen and the
24   only thing that's ever been submitted to this Court is
25   a request from defendants' counsel to plaintiff's

15

1    counsel for a payoff letter.  I would submit that that
2    is not evidence, competent evidence of actual progress
3    being made towards financing of -- of the property --
4    towards refinancing of the property and that defendants
5    can pay off Univest.
6          I just want to comment on two other items
7    that -- that Ms. D'Agostino raised in her argument.
8    First with respect to the rent monies, to be clear,
9    Univest does deny that the rent monies are, quote
10   unquote, "servicing the mortgage".
11          There are no longer any mortgage payments.
12   This mortgage has been reduced to a judgment.  It was
13   reduced to a judgment in the -- at the end of January
14   2022.
15          Since that time, as is appropriate under the
16   law, there have been no mortgage payments, quote
17   unquote, "made".  The -- the money that has been
18   collected as rents are being held in a segregated
19   special account to which the defendants have view-only
20   access.  They cannot actually transfer or reach the
21   funds, but they can see what is happening with those
22   funds.  And the only thing that those funds have been
23   used for since January 26th, 2022, is to pay expenses
24   of the property.
25          As is set forth in the certification of Mr.

16

1    Thomas, which we submitted on June 7th in connection
2    with our opposition to this motion, those funds just
3    barely cover the monthly expenses of the property,
4    particularly given the current circumstances where
5    there are substantial repairs that are ongoing.
6              And then the only other point that I wanted
7    to comment on is that Univest does disagree with
8    defendants' assertion that the appraisal that they have
9    used to assert that they have equity in the property
10   is, in fact, a -- an appropriate measure or metric of
11   value of the property as of today.  And, therefore, we
12   do disagree that -- that plaintiff -- defendants have
13   submitted any competent evidence that they actually do
14   have equity in the property.
15             As we noted in our briefing, a number of
16   things have happened in the interim between the time
17   when that appraisal was prepared for Univest; that
18   appraisal was prepared in July of 2020.  Since July of
19   2020, the building has been damaged by Hurricane Ida
20   substantially.
21             The market for commercial real estate has
22   changed dramatically.  And the only tenant in the
23   property which occupies 50 percent of the space of the
24   property, there is two years left -- two years last
25   left on their lease, and they have submitted a letter

17

1    to the defendants saying that they believe the
2    defendants are in breach of the lease because of their
3    failure to appropriately and timely complete repairs on
4    the property.
5              So, for all of those reasons, it is Univest's
6    position that defendants have not shown cause, as that
7    term is -- is used and in the New Jersey statute that
8    would permit a further stay of the Sheriff's sale, to
9    stay the sale.  And we would respectfully request that
10   the Court deny the motion and permit the sale to
11   proceed this Wednesday.
12             THE COURT:  Thank you, Ms. Willan.  Ms.
13   D'Agostino, would you like an opportunity to respond?
14             MS. D'AGOSTINO:  Your Honor, I think I did
15   cover all of those aspects and I -- I -- I know
16   plaintiff's counsel (indiscernible) but, you know, I do
17   think that the equities weigh in favor of the mortgagor
18   in this case to allow the granting of the 60 day stay,
19   which would be approximately another -- would be two
20   and a half weeks, Your Honor.  No, three weeks.  Is it
21   two?
22             THE COURT:  Yes.
23             MS. WILLAN:  Yes.
24             MS. D'AGOSTINO:  And -- and -- and again,
25   they -- they would not suffer any material harm,

18

1   whereas our clients would lose their equity and
2   substantial equity in this property.
3           And I notice that counsel (indiscernible) but
4   again, there's now money in this account that they
5   created to pay the expenses, plus their almost $5
6   million cushion in the property.
7           So, that's, you know, that's our respectful
8   request, Your Honor, for a 60 day extension that we
9   requested originally.  Thank you.
10          THE COURT:  Counsel, before the Court is the
11  defendants' application for a stay.  Such stays are
12  usually granted for cause under N.J.S.A. 2A:17-36.
13  Typically made, the factors that (indiscernible)
14  standard are analogous to the Crowe versus Degioia
15  factors.  So, (indiscernible) irreparable harm, whether
16  the defendants have any type of settled rights to
17  relief, whether there is reasonable probability of
18  success on the merits, and a weighing of the equities.
19  It is certainly on the burden of the defendant in terms
20  of showing that a stay is warranted.
21          Couple of things just in terms of the case,
22  the background.  The complaint was filed in this matter
23  over a year ago, in May of 2021.  The defendant has,
24  therefore, been on notice that their ownership interest
25  in this property is in jeopardy.

19

1           Over the course of that time, they've had
2   opportunities to obtain financing and to stabilize
3   their interest.  The plaintiff has worked with them to
4   do so.  They entered into a forbearance agreement with
5   the defendant back in September 2021.  The defendant
6   defaulted on that forbearance almost immediately.
7           There are still concerns of the property
8   damage.  In certifications, the defendants indicated
9   that they had made certain repairs, but they also
10  conceded that many of those repairs are ongoing.
11          A great deal has been made today of the
12  pending financing, as well as the equity cushion.  To
13  date, the Court has seen very little evidence of any
14  type of financing that could satisfy the judgment,
15  which is in excess of $18 million.  First of all, the
16  financing does not cover the entirety of the $18
17  million and it's not sure -- it's not clear where the
18  defendant would come up with the additional funds.
19          There's also the matter of the, quote
20  unquote, "equity cushion".  The cushion equity amount
21  being relied on by the defendant is based on an
22  appraisal that occurred in 2020.  That is essentially,
23  approximately a year and a half to two years old.  And
24  during that period of time, facts have changed.
25          This property was affected by a storm last

20

```
1     September, which as all parties recognize, created or
2     inflicted significant damage to the property.  And the
3     repairs are still being made.
4             Moreover, the appraisal occurred two years
5     ago.  And within that period of time, the market
6     certainly shifted.
7             There's certainly no clear evidence here that
8     there is any type of equity cushion, and that the
9     defendants would suffer any type of irreparable harm
10    going forward.  They certainly do not have any
11    (indiscernible) rights or any reasonable expectation of
12    -- of success on the merits.
13            I will note that there was -- this was
14    essentially, an uncontested foreclosure.  Default was
15    entered.
16            There -- again, as I indicated, there is no
17    strong evidence here that the financing could be
18    provided in a timely manner.  It's been represented to
19    this Court on a number of occasions that financing was
20    -- was imminent.
21            They have received in excess, along with
22    their mandatory adjournments (indiscernible) staying,
23    as well as time that's been granted to the Court, to
24    put this money into place.  And all we really have
25    today is a letter of intent, which the plaintiffs
```

21

```
1     indicate has been redacted, the (indiscernible) letter
2     of intent there's no indication that that was paid.  We
3     still do not even have a contract for financing.  And
4     there is certainly no closing date.
5             Defendants' claim that if the Court gave them
6     a full 60 days instead of 45 days everything --
7     everything would have come to fruition, and this matter
8     would have closed, and the financing would have been
9     provided; I don't see any (indiscernible) process that
10    suggests to this Court that the financing would be in
11    place and concluded in 60 days.
12            In terms of the balancing of the equities, at
13    most, at most, at most, this property remains
14    (indiscernible) additional repair.  There is no clear
15    evidence that there's any type of equity cushion here.
16    The tenant has made a number of complaints, hasn't paid
17    rent, has indicated that the lease may be in breach.
18    There may be opportunity here for some type of equity
19    cushion, but simply based on the carrying costs
20    (indiscernible) factors and (indiscernible) weighing in
21    favor of the plaintiff, most of the equities are
22    balanced.
23            Therefore, I'm denying the stay application
24    at this time.  And the sale will proceed.  I believe
25    the sale is scheduled, if I'm not mistaken, for this
```

```
                                                          22
1    Wednesday.
2              Counsel, is there anything further?
3              MS. D'AGOSTINO:  No, Your Honor.
4              MS. WILLAN:  Not (indiscernible), Your Honor.
5              THE COURT:  Counsel, thank you.  Thank you
6    for appearing today.  If anything else arises, bring it
7    to the Court's attention.
8              MS. WILLAN:  Thank you.
9              MS. D'AGOSTINO:  Thank you, Your Honor.
10             (Proceeding adjourned at 11:30 a.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                          23
1                        CERTIFICATION
2
3         I, MEGAN LASH, the assigned transcriber, do hereby
4    certify the foregoing transcript of proceedings on
5    CourtSmart, Index No. from 11:03:27 to 11:30:18, is
6    prepared to the best of my ability and in full
7    compliance with the current Transcript Format for
8    Judicial Proceedings and is a true and accurate
9    compressed transcript of the proceedings, as recorded.
10
11
12
13     /s/ Megan Lash                        596
14     Megan Lash                        AOC Number
15
16
17     KLJ Transcription Service         06/30/22
18         Agency Name                      Date
19
20
21
22
23
24
25
```

**Exhibit K**

**PREPARED BY THE COURT**

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO.<br><br>Plaintiff,<br><br>v.<br><br>330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>MERCER COUNTY<br><br>Docket No. F-2486-21<br>Civil Action<br><br>**ORDER** |

This matter being brought before the Court by Seidman & Pincus, LLC, attorneys for defendants 330 Carter Equity LLC and Ira Russack ("Defendants"), seeking the entry of an order staying the May 18, 2022 Sheriff's sale of the property located at 330 Carter Road, Princeton, NJ (the "Property") for 60 days; and it appearing that the Plaintiff Univest National Bank and Trust Co. ("Plaintiff") has filed opposition to this application; and Defendants having filed a reply to Plaintiff's opposition; and with the Court having considered the matter; and with the Court having heard oral argument; and for the reasons stated on the record; and for good cause shown;

It is on this 27th day of June, 2022,

1. **ORDERED** that Defendant's application seeking the entry of an order staying the sheriff sale of the property located at 330 Carter Road, Princeton, NJ is **DENIED**;

2. **ORDERED** that a copy of this order shall be served by Defendants' counsel upon Plaintiff's counsel via filing on NJ eCourts and by email within two (2) days of the entry of this order.

/s/                Timothy P. Lydon
HON. TIMOTHY P. LYDON, P.J.Ch.

**<u>Exhibit L</u>**

# SEIDMAN & PINCUS, LLC

### ATTORNEYS AT LAW
777 TERRACE AVENUE, SUITE 508
HASBROUCK HEIGHTS, NEW JERSEY  07604
(201) 473-0047   FAX: (201) 288-7009

MEMBERS:
MITCHELL B. SEIDMAN*
E-MAIL: ms@seidmanllc.com

ANDREW J. PINCUS*
E-MAIL: ap@seidmanllc.com

ADMISSION:
* MEMBER OF NJ & NY BAR
⁺ MEMBER OF NJ, NY & DC BAR
⁓ MEMBER OF NJ BAR

OF COUNSEL:
LANI D'AGOSTINO⁓⁓
E-MAIL: ld@seidmanllc.com

JENNIFER S. MANHEIM*
E-MAIL: jm@seidmanllc.com

MARIA A. ARNOTT*
E-MAIL: ma@seidmanllc.com

REENA FORST⁺
E-MAIL: rforst@rflawfirm.com

MINDY ZLOTOGURA*
E-MAIL: mz@seidmanllc.com

JUNE 29, 2022

**VIA ECOURTS**
The Honorable Timothy P. Lydon, P.J.Ch.
Superior Court of New Jersey
Chancery Division, Mercer County
Civil Courthouse
175 South Broad St., 4th Fl.
Trenton, NJ 08650

> **Re:**   **Univest Bank and Trust Co. v. 330 Carter Equity LLC,** *et al.*
> **Superior Court of NJ, Mercer County**
> **Docket No. SWC-F-002486-21**
>
> **Rochelle Friedman v. Univest National Bank and Trust Co.**
> **Supreme Court of New York, County of Kings**
> **Index No.  518508/ 2022**

Dear Judge Lydon:

We represent defendants 330 Carter Equity LLC and Ira Russack (collectively, "Defendants") in the above-referenced matter venued in the Superior Court of New Jersey.  And, although we do not represent the plaintiff, Rochell Friedman, in the above-referenced matter venued in New York, we write with regards to (i) the recently entered Order to Show Cause (" NY OTSC") dated June 28, 2022 in which the Honorable Karen Rothenberg, J.S.C. of Supreme Court of the State of New York, Kings County ordered the stay of the sale of the property located at 330 Carter Road, Princeton, New Jersey (the "Property"); and (2) the correspondence sent to Your Honor today by counsel for Univest Bank and Trust Co. regarding the NY OTSC in which counsel requests this Court refuse to enforce the NY OTSC.

The NY OTSC is entitled to the full faith and credit of this Court including, but not limited to, enforcement unless and until same has been vacated by the New York court.  Our state's courts have an obligation to recognize and accept other states' public records, judicial proceedings, and legislative acts.  U.S. Constitution, Article IV Sec. 1.  As such this Court should enter an order

**SEIDMAN & PINCUS, LLC**
June 29, 2022
Page 2

directing the Mercer County Sheriff to stay the sale of the Property until a date after July 7, 2022 (the return date of the NY OTSC) and/or such time as the New York court renders its decisions with regard to the rights of Ms. Friedman.  Thank you.

Very truly yours,

*/s/ Lani D'Agostino*

Lani D'Agostino

cc:     Christopher Leavell, Esq. (via Ecourts and email)
        Mercer County Sheriff (via email)

\\seidman.local\Data\AllShare\Russack, Ira vs. Univest Bank – Russack-Univest\ltr to ct 6.29.22.docx

**Exhibit M**

| From: | Hiyasmin Urbano |
| To: | Lani D'Agostino; Katie Klodowski |
| Cc: | Mitchell Seidman; Leavell, Christopher; Willan, Paige; cchell@mercercounty.org; Katherine Stott Bittle |
| Subject: | RE: [External]FW: UNIVEST V. 330 CARTER EQUITY, LLC Property: 330 Carter Rd. Princeton, NJ F-2486-21 |
| Date: | Wednesday, June 29, 2022 1:42:43 PM |

Ms. D'Agostino,

Received.  Judge Lydon has reviewed your letter. It is procedurally deficient and provides no support for the representations made in the letter.  Therefore, the request is denied.

*Hiyasmin Urbano,* Secretary to the

Honorable Timothy P. Lydon, P.J.Ch.

Mercer County Courthouse

Chancery Division

175 S. Broad Street – 3rd Floor

Trenton, New Jersey 08650

609.571.4200 Ext. 74204

609.376.0834 Fax

**From:** Lani D'Agostino <ld@seidmanllc.com>
**Sent:** Wednesday, June 29, 2022 1:38 PM
**To:** Katie Klodowski <katie.klodowski@njcourts.gov>; Hiyasmin Urbano <hiyasmin.urbano@njcourts.gov>
**Cc:** Mitchell Seidman <ms@seidmanllc.com>; Lani D'Agostino <ld@seidmanllc.com>
**Subject:** [External]FW: UNIVEST V. 330 CARTER EQUITY, LLC Property: 330 Carter Rd. Princeton, NJ F-2486-21
**Importance:** High

**CAUTION:** This email originated from outside the Judiciary organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hiyasmin and Katie,  I am resending this email to you (to make sure you received same) with the copy of the letter we filed on Ecourts in this foreclosure.  Please provide to Judge Lydon as the sale is today at 2pm.  Thank you.

Lani D'Agostino, Esq.
SEIDMAN & PINCUS, LLC
777 Terrace Avenue, Suite 508
Hasbrouck Heights, New Jersey 07604
T 201-473-0047 ext. 103
F 201-288-7009
LD@SEIDMANLLC.COM

**From:** Lani D'Agostino <ld@seidmanllc.com>
**Sent:** Wednesday, June 29, 2022 1:26 PM

**To:** Hiyasmin Urbano <hiyasmin.urbano@njcourts.gov>
**Cc:** Lani D'Agostino <ld@seidmanllc.com>; Mitchell Seidman <ms@seidmanllc.com>
**Subject:** FW: UNIVEST V. 330 CARTER EQUITY, LLC Property: 330 Carter Rd. Princeton, NJ F-2486-21
**Importance:** High

Lani D'Agostino, Esq.
SEIDMAN & PINCUS, LLC
777 Terrace Avenue, Suite 508
Hasbrouck Heights, New Jersey 07604
T 201-473-0047 ext. 103
F 201-288-7009
LD@SEIDMANLLC.COM

---

**From:** Lani D'Agostino <ld@seidmanllc.com>
**Sent:** Wednesday, June 29, 2022 1:21 PM
**To:** Leavell, Christopher <CLeavell@klehr.com>; Chell, Christine <cchell@mercercounty.org>;
Peterson, Malik <mpeterson@mercercounty.org>
**Cc:** Willan, Paige <PWillan@klehr.com>; Hiyasmin Urbano <hiyasmin.urbano@njcourts.gov>; Lani
D'Agostino <ld@seidmanllc.com>; Mitchell Seidman <ms@seidmanllc.com>
**Subject:** UNIVEST V. 330 CARTER EQUITY, LLC Property: 330 Carter Rd. Princeton, NJ F-2486-21
**Importance:** High

All,

See attached IMPORTANT CORRESPONDENCE FILED WITH THE COURT REQUESTING THE STAY OF
THE FORECLOSURE SALE/ ENFORCEMENT OF THE NY OTSC STAYING THE FORECLOSURE **TODAY** OF
330 CARTER RD., PRINCETON.

I can be reached on my cell 908-256-6827

Lani D'Agostino, Esq.
SEIDMAN & PINCUS, LLC
777 Terrace Avenue, Suite 508
Hasbrouck Heights, New Jersey 07604
T 201-473-0047 ext. 103
F 201-288-7009
LD@SEIDMANLLC.COM

CAUTION: External email. Do not click links or open attachments unless you recognize the
sender and know the content is safe.

**Exhibit N**

**PREPARED BY THE COURT**

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO., | SUPERIOR COURT OF NEW JERSEY LAW DIVISION – MERCER COUNTY DOCKET NO. F-2486-21 |
| Plaintiff, | |
| | CIVIL ACTION |
| v. | |
| 330 CARTER EQUITY LLC, IRA RUSSACK, AND STATE OF NEW JERSEY, | |
| Defendant. | **ORDER** |

    **THIS MATTER** having come before the Court, the Hon. Robert Lougy, A.J.S.C., presiding, on the order to show cause filed by Defendants 330 Carter Equity LLC and Ira Russack, represented by Mitchell B. Seidman, Esq., seeking relief as stated therein; and Plaintiff Univest National Bank and Trust Co., represented by Paige M. Willan, Esq., admitted *pro hac vice*, having filed opposition; and Plaintiff having filed a reply; and the Court having considered the parties' arguments and papers; and for the reasons as stated herein; and for good cause shown; and for good cause shown;

**IT IS** on this 22nd day of July 2022 **ORDERED** that:

1.    Defendants' objection to the sheriff's sale is **DENIED**.

2.    Defendants' request for an offsetting money judgment in favor of Defendant and against Plaintiff in the amount of excess is **DENIED**.

3.    The sheriff is authorized to release and deliver the deed to the Property to Plaintiff as the successful bidder of the Property at auction.

4.    Regarding Defendants' application for an order granting Defendants a credit of the property's fair market value against the foreclosure amount, the Court schedules a case management conference to establish a discovery schedule and to schedule a fair market value hearing for **AUGUST 2, 2022**, at 9:30 a.m. before the Hon. Timothy Lydon, P.J.Ch.  Further instructions from Judge Lydon's chambers shall be forthcoming regarding the conference.

/s/ Robert Lougy
ROBERT LOUGY, A.J.S.C.

**PURSUANT TO <u>RULE</u> 1:7-4, THE COURT PROVIDES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW.**

This matter comes before the Court on Defendants' order to show cause objecting to the sheriff's sale and seeking a fair market value credit against the

July 22, 2022
Page 2 of 14

judgment of foreclosure.[1]  Plaintiff objects.  The Court heard oral argument on

Defendants' application on July 19, 2022.

_____

[1]  The Court disapproves of Defendants bringing this matter before the Court by
way of an order to show cause.  The appropriate procedural mechanism for
Defendants' application was to proceed via a motion, not by order to show cause.
An order to show cause is authorized only in two specific instances: under <u>Rule</u>
4:67 and under <u>Rule</u> 4:52.  Per <u>Rule</u> 4:67-1(a), a party seeking to commence a
summary action require authorization in either statute or court rule to proceed
summarily, and nothing in that rule allows a defendant to submit an order to show
cause.  Indeed, the phrase "commence a summary action" precludes a defendant
from filing an order to show cause under that rule.  No defendant commences an
action because all actions are commenced by a complaint.  <u>See</u> <u>R.</u> 4:2-2 ("A civil
action is commenced by filing a complaint with the court.").  Additionally,
Defendants do not proceed under <u>Rule</u> 4:52-1 because they seek no restraints.
Finally, <u>Rule</u> 4:65-5 specifically requires that all objections to a sheriff's sale
proceed by way of a "motion for the hearing of an objection to the sale."
Proceeding by order to show cause for that relief is directly contrary to that rule's
directive.

The Court understands that Plaintiff declined to consent to any extension
of the timeframe set forth in <u>Rule</u> 4:65-5 – as was its right – but that refusal
did not authorize Defendants to proceed by order to show cause absent some
authority.  The better course of action would have been that Defendants file a
motion for the hearing on their objection, asked that it be heard on an
accelerated basis different from the schedule established in <u>Rule</u> 1:6-3, given
the time constraints imposed by <u>Rule</u> 4:65-5.  Such an application would have
additionally afforded the Court the opportunity to direct that the motion be
returnable more than twenty days after the sale, as the rule explicitly permits.

These irregularities provide sufficient bases to deny Defendants' application
in its entirety on procedural grounds.  Defendants may only seek expedited or
emergent relief when they are authorized to do so and, given the nature of their
application, no such authorization exists.  That said, however, given this
disposition of Defendants' application, Plaintiff suffers no harm from the
Court overlooking that procedural irregularity in this instance, effectively
converting the submitted order to show cause into such a motion.  Nothing in the
Court's reservation of Defendants' application for fair market value pending
potential further discovery and appraisals and a fair market value hearing precludes

The facts below are not in dispute.  Defendant 330 Carter Equity LLC ("the Borrower") owns the property at issue.  It is a three-story office/laboratory building containing a gross floor area of 215,590 feet zoned for Research Office.  In September 2020, Plaintiff extended a commercial loan to the Borrower of $15,700,000.  At or about the same time, Defendant Russack executed a Guaranty and Suretyship Agreement wherein he agreed to personally guarantee all the Borrower's obligations.

On April 29, 2021, Plaintiff declared default.  Plaintiff instituted this action. On January 26, 2022, the court entered a final judgment of foreclosure.  The total amount due is approximately $18,812,723.  On that same date, a Writ of Execution issued, authorizing the sheriff to conduct a sale.  In May 2022, the court granted a thirty-day stay of the sheriff's sale.  The sale was ultimately held on June 29, 2022.

Plaintiff announced that it would bid up to $19,590,393.09 for the property. Plaintiff was the successful bidder for the property with a winning bid of of $100. No other parties bid for the property.

While the parties disagree regarding Defendants' efforts to maintain and repair the property, they all acknowledge that the property requires considerable repair work from damages sustained in September 2021.  Plaintiff represents that

---

Plaintiff from advancing and maintaining its position that Defendants are entitled to no fair market value credit whatsoever, as a matter of law, until such time that Plaintiff pursues a deficiency action.

the fire protection system is inoperable, that electricity for the building is being provided by an external source, and that the building's life safety systems also need urgent repair. The parties dispute whether the property's HVAC system has been adequately repaired. See, e.g., Russack Certif., at ¶ 12 (stating that "the HVAC system [] is now up and running"); Thomas Certif., at ¶ 45 ("Although it appeared to be partially operational, it was apparent that not all of the damage had been repaired."); id. at ¶ 69 (explaining that tenant had further abated its rent as of May 26, 2022 because of HVAC system).

Both sides agree that, under the Property's current legal limbo, service providers are reluctant to work on the Property. Russack Certif., at ¶ 12; Thomas Certif., at ¶ 17.

Defendants submit appraisals of the property that value it at $22,450,00 in "as is" condition and $36,240,000 in "as stabilized" condition. In July 2020, Plaintiff's appraiser valued the property at $23,900,00 in "as is" condition and at $29,700,000 in "as stabilized" condition.

In support of their application, Defendants argue the following. They argue that the disparity between the appraised value and the winning bid of $100 establishes that the figure does not reflect the value of the property. They argue that they are entitled to credit against Plaintiff's foreclosure judgment equal to the fair market value of the Property at the time of the auction sale and that the time is

ripe for them to make such an application.  They argue that they have submitted sufficient proofs by way of an expert appraisal and urge that the "as stabilized" price in the appraisal is the "truer picture of the fair market value of the Property" because this litigation impeded their ability to make the necessary repairs.  They argue that Plaintiff is not entitled to a windfall profit and ask for a judgment to be entered against Plaintiff for the excess.

Plaintiff argues the following in opposition, arguing that Defendants' application is unsupported in both law and equity.  It argues that Defendants fail to advance any valid objection to the sheriff's sale and make no allegation – much less showing – of fraud, accident, mistake, or irregularity. Further, it argues that New Jersey law is clear: an inadequate sales price is no ground to set aside a sale.  And equity leads to a same result, as Defendants have had more than sufficient time to arrange replacement financing but failed to do so and, Plaintiff argues, come before the Court with hands soiled by falsified insurance certificates and "a check kite of substantial proportions."  It argues that Defendants' request for a judgment against Plaintiff likewise has no support in New Jersey law or basis in equity.  Regarding Defendants' request for a fair market value credit, Plaintiff argues that Defendants fail to establish a legal or factual basis entitling them to a credit and, further, have no support for impeding issuance of the deed and confirmation of the sale while

the fair market credit issue is adjudicated.  Plaintiff discounts the weight and
credibility of the submitted appraisal, as (a) the appraiser provides no support
for the estimated costs of repairs; (b) incorrectly asserts that insurance will
cover the repairs to the HVAC system and elevators; and (c) does not
acknowledge or account for the ongoing abatement of the rental income.  Thus,
the appraisal is based on "misinformation and guess work."  Finally, Plaintiff
argues that Defendants have made no showing that they are unable to pay the
mortgage.  Plaintiff additionally argues that Defendants' ability to seek a fair
market credit does not impede the confirmation of sale and issuance of the
deed.

In reply, Defendants argue the following.  They argue that they have
established a valid objection because the winning bid did not represent the fair
market value, and rely upon their appraisal, Plaintiff's earlier appraisal, and
Plaintiff's maximum bid, and Plaintiff's earlier concession that it is
oversecured.  They further argue that, because the fair market value of the
Property exceeds the judgment amount, they are entitled to a judgment against
Plaintiff for the excess.  And they reiterate that they are entitled to a fair
market value credit.  They acknowledge that the appraisal was necessarily
performed quickly and that the appraiser needs additional information from
Plaintiff and the tenant that will be incorporated into a supplemental appraisal.

They argue that the Court should stay the issuance of the Sheriff's deed until the Court resolves the fair market value issue.

Defendants advance objections to the sheriff's sale of this property. Rule 4:65-5 governs sheriff's sales and objections. When a sheriff is authorized to sell real property, he or she "shall deliver a good and sufficient conveyance in pursuance of the sale unless a motion for the hearing of an objection to the sale is served within [ten] days after the sale or at any time thereafter before the delivery of the conveyance." R. 4:65-5. The party objecting must give notice "to all persons in interest." Ibid.

Rule 4:65-5 grants a debtor the "absolute right to redeem the property by tendering the full amount due" during the ten days following a sheriff's sale. Brookshire Equities, LLC v. Montaquiza, 346 N.J. Super. 310, 315 (App. Div. 2002) (citing Hardyston Nat'l Bank of Hamburg v. Tartamella, 56 N.J. 508, 513, 267 A.2d 495 (1970)). A debtor may extend this period by filing an objection to the sheriff's sale within the ten-day period. Id. at 316 (citing Hardyston, 56 N.J. at 513). Under limited circumstances, a debtor may be permitted to file an objection "after the ten-day period and before conveyance of the deed," provided there is a "valid ground for objection." Id. at 317. Examples include "fraud, accident, surprise, irregularity, or impropriety in the

sheriff's sale." Ibid. (citing Orange Land Co. v. Bender, 96 N.J. Super. 158, 164 (App. Div. 1967)).

"[T]he Chancery Division has the authority to set aside a sheriff's sale and order a resale of property. However, the exercise of this power is discretionary and must be based on considerations of equity and justice." First Tr. Nat'l Ass'n v. Merola, 319 N.J. Super. 44, 49 (App. Div. 1999) (citation omitted). "[A] judicial sale may be set aside 'by reasons of fraud, accident, surprise, or mistake, irregularities in the conduct of the sale, and so on[;]'" however, "a judicial sale is not ordinarily vacated 'on the ground of mistake flowing from [a moving party's] own culpable negligence.'" Ibid. (third alteration in original) (quoting Karel v. Davis, 122 N.J. Eq. 526, 528 (E. & A. 1937)).

The power to set aside a judicial sale should be "sparingly exercised." Id. at 52 (quoting Karel, 122 N.J. Eq. at 529). A sheriff's sale should only be vacated "when necessary to correct a plain injustice." Karel, 122 N.J. Eq. at 529; see also E. Jersey Sav. & Loan Ass'n v. Shatto, 226 N.J. Super. 473, 476 (Ch. Div. 1987) (holding that "[t]he power to set aside a foreclosure sale is to be exercised with great care and only when necessary for compelling reasons"). "The burden of proof rests with the objector." Shatto, 226 N.J. Super at 476.

It is well-established that a Sheriff's sale normally should not be vacated on the basis of inadequacy of sale price alone. G.E. Capital Mortg. Servs., Inc. v.

Marilao, 352 N.J. Super. 274, 285 (App. Div. 2002) ("[i]nadequacy of price alone

normally does not warrant setting aside a Sheriff's sale"); Crane v. Bielski, 15 N.J.

342, 348 (1954) ("inadequacy is just one of the factors to be taken into

consideration" and is not "an indispensable ingredient"); W. Ridgelawn Cemetery

v. Jacobs, 108 N.J. Eq. 513, 514-15 (Ch. 1931) ("mere inadequacy of price affords

no ground of relief."). A Sheriff's sale "is a form of distress sale that cannot

reasonably be expected to produce full fair market value." Marilao, 352 N.J.

Super. at 285; see also Carteret Sav. & Loan Ass'n, F.A. v. Davis, 105 N.J. 344,

351 (1987) ("foreclosure sales rarely, if ever, bring the fair market value of the

foreclosed property"). Thus, in order to vacate a Sheriff's sale due to inadequacy of

the sale price,

> it is essential that the price be so grossly inadequate as to
> support the inference of fraud, or to shock the judgment
> and conscience, or be accompanied by an independent
> substantive ground for equitable relief . . . making
> confirmation inequitable and unjust to one or more of the
> parties.

> [Karel, 122 N.J. Eq. at 530-31.]

Here, the Court finds no basis to set aside the sale based on the sales price alone.

The property, by all accounts, needs substantial repairs and, additionally, has a

dissatisfied tenant with a documented history of rent abatement. Additionally,

although Plaintiff does not credit them, if the Court takes Defendants at their

word, Defendants made unsuccessful efforts to refinance their debt, presumably as

secured by the property.  That the Defendants were unable to do so may suggest

that other lenders were unwilling to finance the property's purchase.  And, finally,

nothing in the record alleges, much less establishes, any fraud, accident, mistake,

or procedural irregularity.

Accordingly, the Court denies Defendants' application to enjoin the release

and delivery of the deed to Plaintiff.  As indicated earlier, while the parties do not

agree on much concerning the care and maintenance of the property since its

storm-related damage in September 2021, they acknowledge that contracting for

repairs and maintenance has proven difficult and to the detriment of the property

and the tenant.  Nothing will be gained in this litigation from further preventing the

Sheriff from delivering the deed to Plaintiff.  At oral argument, Defendant

Russack's most capable counsel argued that the Court's consideration of the

equities should encompass consideration of the Plaintiff's action against him in

Pennsylvania courts.  The Court declines to do so, as it has no knowledge of the

procedural or factual histories of that matter.  Defendant can pursue whatever

reliefs or defenses that he deems appropriate in the separate proceeding happening

in the Pennsylvania courts.  See, e.g., Morsemere Fed Sav. & Loan Ass'n v.

Nicolaou, 206 N.J. Super. 637, 645 (App. Div. 1986) ("A court of equity has

inherent power to prevent a potential double recovery or windfall to the judgment

creditor who not only may profit on the purchase of the property at the foreclosure

SWC-F-002486-21  07/22/2022  Pg 12 of 14  Trans ID: CHC2022171196
Case 1:22-cv-03858-WFK-SJB  Document 14-2  Filed 10/12/22  Page 159 of 282 PageID #: 404


sale (if purchased for less than fair market value), but who also seeks to obtain satisfaction of his judgment.").

The Court deems it appropriate, at this time, to allow Defendants to pursue their fair market value credit. Plaintiff reserved the right to submit its own appraisal and, given the time constraints created by Defendants' application, the Court deems the same to be reasonable. The Court establishes a case management conference with the Presiding Judge of Chancery for the purposes of discovery schedule.

Brunswick Bank & Trust v. Heln Management LLC informs us that "because 'equity abhors a forfeiture,' a court of equity may in appropriate circumstances, through application of fair market value credits, or by other recognized means, spare a party from an unwanted forfeiture." 453 N.J. Super. 324, 330 (App. Div. 2018); see also MMU of N.Y. v. Grieser, 415 N.J. Super. 37, 40 (App. Div. 2010) (concluding that "even in the absence of express statutory authorization, a court has inherent equitable authority to allow a fair market value credit in order to prevent a double recovery by a judgment creditor against a judgment debtor."). "Ascertaining the fair market values of property acquired by [Plaintiff] is one way in which a court of equity may determine whether [Plaintiff] has been overcompensated." Brunswick Bank, 453 N.J. Super. at 331; see also id. at 328 (referencing earlier unpublished decision in same matter, "[w]e emphasized

July 22, 2022
Page 12 of 14

a court's power to prevent a windfall and to ensure a judgment creditor recovers no more than the amount of the debt by applying the fair market value credit of property struck off at a sheriff sale.").  However, as Plaintiff was the successful bidder of the property, any excess value of the property over Defendants' indebtedness may be "the type of windfall law and equity would allow Brunswick Bank to reap."  Id. at 333; id. at 333 n.9.

Finally, as the Court is not determining whether and how much of a fair market value credit Defendants may be entitled to, the Court declines to enter a judgment in any amount against Plaintiff.  Defendants provide no authority for such relief, the Appellate Division has rejected that argument, and the Supreme Court has commented on same.  West Pleasant-CPGT, Inc. v. U.S. Home Corp., 243 N.J. 92, 109 n.3. (2020) (discussing Brunswick Bank and noting that "even there, the Appellate Division rejected any claim to require a money judgment to debtors if the fair market value of property purchased by the creditor at sheriff's sale exceeded the shortfall owed on the debt.").

The Court understands Plaintiff's reliance upon West Pleasant-CPGT in support of its argument that Defendants have no rights to a fair market value credit unless and until Plaintiff seeks to enforce the judgment.  Such a holding would be contrary to the Brunswick Bank holding and discussion.  Rather than disagree with that holding in West Pleasant-CPGT, the Supreme Court rather concluded that it

had little relevance to the issue before it.  <u>Ibid.</u>  Plaintiff has preserved its argument that Defendants have no entitlement to a credit unless and until Plaintiff undertakes an enforcement action; it does not convince this Court of that conclusion on this record and at this stage of Defendants' request for a credit.

July 22, 2022

Page 14 of 14

**Exhibit O**

Shalom D. Stone (033141987)
Rebekah R. Conroy (028932003)
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, New Jersey 07932
(973) 400-4181
*Attorneys for Proposed Intervenor*
*Rochelle Friedman*

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO. <br><br>      Plaintiff, <br><br> v. <br><br> 330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY, <br><br>      Defendants. | SUPERIOR COURT OF NEW JERSEY MERCER COUNTY: CHANCERY DIVISION <br> Docket No. SWC-F-002486-21 <br><br> CIVIL ACTION <br><br> **NOTICE OF MOTION TO INTERVENE** |

      **PLEASE TAKE NOTICE** that as soon as counsel may be heard, the undersigned attorneys for the Proposed Intervenor Rochelle Friedman, shall make application to the Superior Court of New Jersey, Chancery Division, Mercer County, before the Honorable Thomas P. Lydon, P.J.Ch., or such other Judge as may be hearing applications, an Order granting Ms. Friedman's motion to intervene pursuant to *R*. 4:33.

      **PLEASE TAKE FURTHER NOTICE** that in support of said application, the Proposed Intervenor shall rely on the accompanying Memorandum of Law and Certification of Counsel.

      **PLEASE TAKE FURTHER NOTICE** that oral argument is hereby requested if opposition is filed.  A proposed Order is attached hereto.

                        **STONE CONROY LLC**

                        *Attorneys for Proposed Intervenor*
                        *Rochelle Friedman*

By: /s/ Rebekah Conroy
Rebekah Conroy

Dated:  July 27, 2022

Shalom D. Stone (033141987)
Rebekah R. Conroy (028932003)
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, New Jersey 07932
(973) 400-4181
*Attorneys for Proposed Intervenor*
*Rochelle Friedman*

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO.<br><br>      Plaintiff,<br><br>v.<br><br>330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY,<br><br>      Defendants. | SUPERIOR COURT OF NEW JERSEY MERCER COUNTY: CHANCERY DIVISION<br>Docket No. SWC-F-002486-21<br><br>CIVIL ACTION<br><br>**CERTIFICATION OF REBEKAH CONROY** |

REBEKAH CONROY, of full age, does hereby certify and state:

1.      I am a Member of Stone Conroy LLC, counsel for Intervenor Rochelle Friedman in the above matter. I am one of the attorneys charged with the care and maintenance of this matter and have personal knowledge of the facts recited herein.

2.      Attached hereto as **Exhibit A** is a true copy of the June 15, 2022 Order of the Hon. Timothy P. Lydon, P.J.Ch.

3.      Attached hereto as **Exhibit B** is a true copy of the June 27, 2022 Order of the Hon. Timothy P. Lydon, P.J.Ch.

4.      Attached hereto as **Exhibit C** is a true copy of the June 28, 2022 Order to Show Cause and the Order entered by the Honorable Karen B. Rothenberg, J.S.C., Supreme Court of the State of New York, County of Kings, Index No. 518508/22.

5.      Attached hereto as **Exhibit D** is a true copy of correspondence dated June 29, 2022, from Kleher Harrison Harvey Branzburg LLP to the Honorable Timothy P. Lydon, P.J.Ch.

6.     Attached hereto as **Exhibit E**  is a true copy of June 29, 2022 correspondence from Seidmann & Pincus LLC to the Honorable Timothy P. Lydon, P.J.Ch..

7.     Attached hereto as **Exhibit F** is a true copy of e-mail correspondence from the Chambers of  the Honorable Timothy P. Lydon, P.J.Ch..

8.     Attached hereto as **Exhibit G** is a true copy of the July 26, 2022 Affidavit of Service of Simon Babaisakov.

9.     Attached hereto as **Exhibit H** is a true copy of the July 25, 2022 Order of the Honorable Robert Lougy, A.J.S.C.

I certify the above is true to the best of my knowledge. I am aware if any information herein is knowingly false, I may be subject to punishment.

Dated: July 27, 2022                                    /s/ Rebekah Conroy
                                                        Rebekah Conroy

Shalom D. Stone (033141987)
Rebekah R. Conroy (028932003)
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, New Jersey 07932
(973) 400-4181
*Attorneys for Proposed Intervenor Plaintiff*
*Rochelle Friedman*

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO.<br><br>       Plaintiff,<br><br>v.<br><br>330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY,<br><br>       Defendants. | SUPERIOR COURT OF NEW JERSEY MERCER COUNTY: CHANCERY DIVISION<br><br>Docket No. SWC-F-002486-21<br><br>CIVIL ACTION<br><br>**[PROPOSED FORM OF] ORDER** |

     **THIS MATTER** having been brought before the Court by the Proposed Intervenor Rochelle Friedman, by Notice of Motion to Intervene in this case pursuant to R. 4:33, and the Court having considered the opposition and moving papers; and having heard argument of the parties; and good cause having been shown;

     It is on this _____ day of _____, 2022, ORDERED as follows:

    1.  The motion to intervene is hereby GRANTED; AND

    2.  A copy of this Order be served upon all counsel of record within seven (7) days of the date of receipt of this Order.

                              _____
                              Hon. Timothy P. Lydon, P.J.Ch.

Shalom D. Stone (033141987)
Rebekah R. Conroy (028932003)
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, New Jersey 07932
(973) 400-4181
*Attorneys for Proposed Intervenor*
*Rochelle Friedman*

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO.<br><br>    Plaintiff,<br><br>v.<br><br>330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY,<br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY MERCER COUNTY: CHANCERY DIVISION<br>Docket No. SWC-F-002486-21<br><br>CIVIL ACTION |

## BRIEF IN SUPPORT OF ROCHELLE FRIEDMAN'S
## MOTION TO INTERVENE

***Of Counsel & On the Brief***

Shalom D. Stone, Esq.
Rebekah R. Conroy, Esq.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... ii

STATEMENT OF FACTS ........................................................................................ 1

ARGUMENT ........................................................................................................... 2

    POINT ONE ........................................................................................................ 2

    FRIEDMAN IS ENTITLED TO INTERVENE AS OF RIGHT UNDER R. 4:33-1. ......... 2

        A.    Friedman has An Interest In The Subject Of This Litigation. ................................ 3

        B.    The Disposition Of This Action Will Impair Or Impede Friedman's Ability To Protect Her Interests. ................................ 4

        C.    Friedman's Interests Are Not Adequately Represented By the Existing Parties. ................................ 5

        D.    This Motion Is Timely. ................................ 5

    POINT TWO ........................................................................................................ 6

    FRIEDMAN IS ENTITLED TO PERMISSIVE INTERVENTION UNDER R. 4:33-2.... 6

    CONCLUSION ..................................................................................................... 6

## <u>TABLE OF AUTHORITIES</u>

**CASES**

<u>Allstate N.J. Ins. Co. v. Neurology Pain Assoc.</u>,
    418 N.J. Super. 246 (App. Div. 2011)...................................................................... 3

<u>Atlantic Employers Insurance Co. v. Tots & Toddlers Pre-School Day Care Center</u>,
    239 N.J. Super. 276 (App. Div. 1990)...................................................................... 4

<u>B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.</u>,
    440 F.3d 541 (1st Cir. 2006) ...................................................................................... 5

<u>Chesterbrooke Ltd. v. Planning Bd.</u>,
    237 N.J. Super. 118 (App Div. 1989)........................................................................ 3

<u>Clark v. Brown</u>,
    101 N.J. Super. 404 (Law Div. 1968) ...................................................................... 5

<u>DYFS v. D.P.</u>,
    422 N.J. Super. 583 (App. Div. 2011)...................................................................... 3

<u>Evesham Township Zoning Bd. of Adjustment v. Evesham Township. Council</u>,
    86 N.J. 295 (1981).................................................................................................... 6

<u>Harris v. Pernsley</u>,
    820 F.2d 592 (3d Cir. 1987)...................................................................................... 4

<u>Meehan v. K.D. Partners, L.P.</u>,
    317 N.J. Super. 563 (App. Div. 1998)...................................................................... 3

<u>N.J. Division of Youth v. Family Serv.</u>,
    422 N.J. Super. 583 (App. Div. 2011)...................................................................... 6

<u>Nuesse v. Camp</u>,
    385 F.2d 694 (D.C. Cir. 1967) .................................................................................. 3

<u>State v. Lanza</u>,
    74 N.J. Super. 362 (App. Div. 1962)........................................................................ 5

<u>Sutter v. Horizon Blue Cross Blue Shield of N.J.</u>,
    406 N.J. Super. 86 (App. Div. 2009)........................................................................ 3

Trbovich v. United Mine Workers,
  404 U.S. 528 (1972) ............................................................................................ 5

**OTHER AUTHORITIES**

F.R.C.P. 24(a) ....................................................................................................... 3

R. 4:33-1 ........................................................................................................ 2, 3, 4

R. 4:33-2 ........................................................................................................... 2, 6

R. 4:37-(1)(b) ........................................................................................................ 5

## STATEMENT OF FACTS

This case concerns the ownership and foreclosure of a $30 million commercial building located at 330 Carter Ave., Princeton, New Jersey (the "Property"). Intervenor Rochelle Friedman is a 25% shareholder in Defendant 330 Carter Equity LLC (the "LLC"), a Defendant owner of the Property.

On June 15, 2022, the Court granted a stay of the Sheriff's sale of the Property pending oral argument on Defendants' motion to further adjourn the sheriff's sale pursuant to N.J.S.A. § 2A:17-36, given a material positive change in the financial circumstances of the LLC and the value of the property. (**Exhibit A** to July 27, 2022 Conroy Cert.)  On June 27, 2022, the trial court heard oral argument on that application and denied Defendants' request to further adjourn the Sheriff's Sale of the Property, setting such sale to take place on June 29, 2022. (**Exhibit B**).

In an effort to protect her legitimate ownership interests in the Property, on June 28, 2022, Friedman applied for and was granted a temporary restraining order by the Honorable Karen B. Rothenberg, J.S.C., Supreme Court of the State of New York, County of Kings, Index No. 518508/22, "precluding Univest National Bank and Trust Co. and all acting in concert with it, including any sheriff, from selling or auctioning the property," pending further order from Judge Rothenberg. (**Exhibit C**).

A copy of the New York Order was duly received by Univest on June 29, 2022. (**Exhibit D**); and a copy was formally served on Univest on June 29, 2022. (**Exhibit G**).  Also on June 29, 2022, the New York Order was presented to this Court along with Defendants' request to stay the Sheriff's Sale, scheduled for June 29, 2022, pending resolution of the New York proceeding. (**Exhibit E**).

1

This Court denied that request, stating "Judge Lydon has reviewed your letter. It is procedurally deficient and provides no support for the representations made in the letter. Therefore, the request is denied." (**Exhibit F**).

Despite the restraints of the New York Order, which precluded Univest from proceeding with the Sheriff's sale, the Sheriff's sale went forward on June 29, 2022. Univest was the winning bidder. Thereafter, the transfer of the deed was again stayed, until July 25, 2022, based on Defendants' application for a Fair Market Value credit.  That stay was lifted on July 25, 2022, and further proceedings were scheduled to determine whether and what FMV credit would apply. (**Exhibit H**).

Friedman has a substantial interest in the subject matter of the litigation and will undoubtedly be affected by the judgments issuing from this Court in the matter.  Friedman's claims are inextricably intertwined with those alleged by the foreclosure defendants and as such, she should be permitted to intervene in the action to assert her rights with regard to the property and as protected under the New York Order.

As a result, the Friedman should be permitted to intervene, both as of right under R. 4:33-1 and by permissive intervention under R. 4:33-2.

## **ARGUMENT**

## **POINT ONE**

### **FRIEDMAN IS ENTITLED TO INTERVENE AS OF RIGHT UNDER R. 4:33-1.**

To intervene in an action as of right under R. 4:33-1, New Jersey courts require a proposed intervenor to:

> (1) claim an interest relating to the property or transaction which is the subject of the [action], (2) show [that the movant] is so situated that the disposition of the action may as a practical matter impair

2

or impede its ability to protect that interest, (3) demonstrate that the [movant's] interest is not adequately represented by existing parties, and (4) make a timely application to intervene.

Sutter v. Horizon Blue Cross Blue Shield of N.J., 406 N.J. Super. 86, 106 (App. Div. 2009) (quotations omitted); DYFS v. D.P., 422 N.J. Super. 583, 590 (App. Div. 2011). If satisfied, then the court is required to grant the motion to intervene. Sutter, 40 N.J. Super. at 106. See also Chesterbrooke Ltd. v. Planning Bd., 237 N.J. Super. 118, 124 (App Div. 1989) ("If all criteria are met, an application for intervention as of right must be approved by the court.") (quotations omitted).

Motions to intervene pursuant to R. 4:33-1 are construed liberally. Allstate N.J. Ins. Co. v. Neurology Pain Assoc., 418 N.J. Super. 246, 254 (App. Div. 2011); Meehan v. K.D. Partners, L.P., 317 N.J. Super. 563, 568 (App. Div. 1998) (R. 4:33-1 is construed "liberally."). Consistent with the liberal construction of R. 4:33-1, New Jersey courts are to take a "practical approach in determining whether a moving party has a cognizable interest in the litigation." Allstate, 418 N.J. Super. at 254-55.

As with its identically worded federal analogue, F.R.C.P. 24(a), intervention is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Allstate, 418 N.J. Super. at 254-55, quoting Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967).

Friedman satisfies all four criteria, and therefore should be entitled to intervene in this litigation as of right.

**A.    Friedman has An Interest In The Subject Of This Litigation.**

Friedman has a claimed interest in the subject matter of the litigation, and a duly entered court order from a sister jurisdiction protecting her rights—at least on a temporary basis. See

3

Atlantic Employers Insurance Co. v. Tots & Toddlers Pre-School Day Care Center, 239 N.J. Super. 276, 280 (App. Div. 1990) ("R. 4:33-1 simply requires the applicant to claim 'an interest'… ."). Friedman has financial interests arising out of the property located at 330 Carter Road, the subject of the present case, and as such, her claims intersect with the parties' claims and she should thus be permitted to intervene.

Friedman has invested substantial resources into the Property and is a 25% stakeholder. There can be no doubt that Friedman has a cognizable legal interest in the litigation.

**B.     The Disposition Of This Action Will Impair Or Impede Friedman's Ability To Protect Her Interests.**

To show impairment of interests under R. 4:33-1, an applicant for intervention must show only that the disposition of an action "*may* as a practical matter" impede the applicant's ability to protect its interests in the subject of the action. R. 4:33-1 (emphasis added). Courts "may consider any significant legal effect on the applicant's interest." Harris v. Pernsley, 820 F.2d 592, 601 (3d Cir. 1987) (citations omitted) (analyzing the analogous federal intervention rule). Applicants for intervention have a sufficient interest in the litigation when the action "will have a significant *stare decisis* effect on the applicant's rights or where the contractual rights of the applicant may be affected by a proposed remedy." Id. at 601 (citations omitted).

Here, Friedman's interests will be impeded by the disposition of this action without her involvement; specifically, her ownership interests will be impeded, as already evidenced by the New York Order, which was ignored by Univest. Because the facts, legal claims, and parties intersect, the potential recoveries of the parties also potentially intersect, yet are distinct and particular to each party. As such, Friedman should be permitted to intervene to protect her ownership interests.

**C.      Friedman's Interests Are Not Adequately Represented By the Existing Parties.**

Friedman's interests in the litigation are distinct from those of the LLC and Defendant Russack and, consequently, cannot be adequately represented by the existing parties. Friedman obtained the New York Order to protect these distinct interests and the New York Order protects her interest in the Property. Because the New York Order was issued to Friedman, Defendants cannot adequately protect Friedman's interests. "Typically, an intervenor need only make a 'minimal' showing that the representation afforded by the named party would prove inadequate." B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 545 (1st Cir. 2006) (citing, Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10 (1972)).  Friedman's claims and damages, while intersecting with the Defendants, are separate and distinct from those parties.

**D.      This Motion Is Timely.**

The Intervenor Plaintiffs' motion to intervene is timely.  The timeliness of a motion to intervene is based on whether granting the motion would result in prejudice to the other parties and the stage in the proceedings at which the motion is made.  Clark v. Brown, 101 N.J. Super. 404, 410-411 (Law Div. 1968) (citing State v. Lanza, 74 N.J. Super. 362, 372 (App. Div. 1962) (analyzing New Jersey predecessor R. 4:37(1)(b)).

The parties to this litigation would suffer no prejudice if the Intervenor Plaintiffs' motion were granted.  The decision denying Defendant's request to stay the Sheriff's sale took place on June 29, 2022, and the transfer of the deed was stayed thereafter until July 25, 2022.  This motion was filed two days later; thus, the parties will not be prejudiced by the addition of Friedman at this time.

## POINT TWO

**FRIEDMAN IS ENTITLED TO PERMISSIVE INTERVENTION UNDER R. 4:33-2.**

Permissive intervention is appropriate "if the claim or defense and the main action have a question of law or fact in common." R. 4:33-2. Friedman's interests involve questions of law and fact in common with those raised by the parties to this action.

Permissive intervention is to be "liberally construed by trial courts with a view to whether intervention will unduly delay or prejudice the adjudication of the rights of the parties." ACLU of N.J. v. County of Hudson, 352 N.J. Super. 44, 69 (App. Div. 2002) (citations and quotations omitted). See also N.J. Division of Youth v. Family Serv., 422 N.J. Super. 583, 590-591 (App. Div. 2011) (trial court is to "liberally determine" permissive intervention.). The rule gives trial courts "considerable discretion" to grant motions for permissive intervention. Evesham Township Zoning Bd. of Adjustment v. Evesham Township. Council, 86 N.J. 295, 299 (1981).

Were Friedman permitted to intervene in this action, the current parties to this litigation would not be unduly prejudiced, and the litigation would not be unduly delayed. By contrast, if denied the opportunity to intervene and defend her interests in this case, Friedman would be impaired in her ability to prosecute her rights in any subsequent proceeding. Permissive Intervention is designed to protect parties from such impairment. Friedman's motion to intervene in the proceedings should therefore be granted.

## CONCLUSION

For the reasons set forth, Friedman's Motion to Intervene should be granted.

Respectfully submitted,
**STONE CONROY LLC**
*Attorneys for Proposed Intervenor Rochelle M. Friedman*

6

By: /s/ Rebekah Conroy

Rebekah Conroy

Dated: July 27, 2022

# EXHIBIT A

**PREPARED BY THE COURT**

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION MERCER COUNTY |
| Plaintiff, | Docket No. F-2486-21 Civil Action |
| v. | |
| 330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY, | **ORDER STAYING SHERIFF'S SALE** |
| Defendants. | |

This matter being brought before the Court by Seidman & Pincus, LLC, attorneys for defendants 330 Carter Equity LLC and Ira Russack ("Defendants"), seeking the entry of an order staying the May 25, 2022 Sheriff's sale of the property located at 330 Carter Road, Princeton, NJ (the "Property"); and with Christopher J. Leavell, Esq., and Paige M. Willan, Esq., appearing for Plaintiff; and for good cause shown;

It is on this 15th day of June, 2022, **ORDERED**:

1. The Sheriff sale of the property located at 330 Carter Road, Princeton, NJ is adjourned to **JUNE 29, 2022**;

2. The Court will conduct oral argument on the Order to Show Cause on **JUNE 27, 2022**, at 11:30 a.m. The hearing shall be conducted remotely via Zoom and information will be sent to the parties within 3 days before the date this matter is scheduled to be heard.

/s/              Timothy P. Lydon
HON. TIMOTHY P. LYDON, P.J.Ch.

# EXHIBIT B

Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 184 of 282 PageID #: 429

**PREPARED BY THE COURT**

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION MERCER COUNTY |
| Plaintiff, | Docket No. F-2486-21 Civil Action |
| v. | |
| 330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY, | **ORDER** |
| Defendants. | |

This matter being brought before the Court by Seidman & Pincus, LLC, attorneys for defendants 330 Carter Equity LLC and Ira Russack ("Defendants"), seeking the entry of an order staying the May 18, 2022 Sheriff's sale of the property located at 330 Carter Road, Princeton, NJ (the "Property") for 60 days; and it appearing that the Plaintiff Univest National Bank and Trust Co. ("Plaintiff") has filed opposition to this application; and Defendants having filed a reply to Plaintiff's opposition; and with the Court having considered the matter; and with the Court having heard oral argument; and for the reasons stated on the record; and for good cause shown;

It is on this 27th day of June, 2022,

1. **ORDERED** that Defendant's application seeking the entry of an order staying the sheriff sale of the property located at 330 Carter Road, Princeton, NJ is **DENIED**;

2. **ORDERED** that a copy of this order shall be served by Defendants' counsel upon Plaintiff's counsel via filing on NJ eCourts and by email within two (2) days of the entry of this order.

/s/                Timothy P. Lydon
HON. TIMOTHY P. LYDON, P.J.Ch.

# EXHIBIT C

At IAS Part _72_ of the Supreme
Court of the State of New York, held
in and for the County of New York,
at the Courthouse located at 360
Adams Street, Brooklyn, NY on the
_28th_ day of June 2022.

PRESENT: Hon. Karen Rothenberg
J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

ROCHELLE FRIEDMAN,
---------------------------------------------------x

                                    Plaintiff

                   -against-                              Index No: 518508/22

UNIVEST NATIONAL BANK AND TRUST CO.,

                                    Defendant,
---------------------------------------------------x

## ORDER TO SHOW CAUSE

Upon the annexed affirmation of Frank R. Seddio, Esq., together with exhibits the annexed affirmation of Rochelle Freidman, together with exhibits, the summons and complaint and all pleadings and proceedings had herein:

LET all parties show cause before this Court, IAS Part _57_, Room _774_, at the Courthouse, located at 360 Adams Street, Brooklyn, New York, on _July 7th_ _2022 at 9:30_ as soon thereafter as counsel can be heard, why an order should not be entered issuing a _OR VIA virtual appearances as required_ _AM_ preliminary injunction barring Defendant Univest National Bank And Trust Co. ("Defendant"), _by the Court_ and all acting in concert with it, including any sheriff, from selling or auctioning the premises known as 330 Carter Road, Princeton, NJ (the "Property") and granting such other and further relief as the Court deems just and proper.

SUFFICIENT CAUSE THEREORE APPEARING,

ORDERED, that pending the hearing of this motion, Defendant, and all acting in concert with it, including any sheriff, are enjoined from selling or auctioning the Property; *and personal service*

LET service upon Respondent by NYSCEF of a copy of this Order and the papers on which it was based on or before *June 29th* 2022, be deemed good and sufficient service thereof.

ENTER:

Hon: _Karen Rothenberg_

J.S.C

HON KAREN B. ROTHENBERG

*stay*

*Karen Rothenberg*
*J.S.C*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
--------------------------------------------------------------x
ROCHELLE FRIEDMAN,

                              Plaintiff              Index No.

        -against-

  UNIVEST NATIONAL BANK AND TRUST CO.,

                              Defendant,
--------------------------------------------------------------x

## AFFIRMATION OF FRANK R. SEDDIO, ESQ. IN SUPPORT OF EMERGENCY ORDER TO SHOW CAUSE

        FRANK R. SEDDIO, ESQ., an attorney duly admitted to practice before the courts of the

state of New York hereby affirms the truth of the following pursuant to CPLR 2106:

        1.      Together with Sam Sprigel, Esq., I am co-counsel for Plaintiff Rochelle Friedman

("Plaintiff") in this action.

        2.      I submit this affirmation in support of Plaintiff's emergency motion seeking an a

preliminary injunction barring Defendant Univest National Bank And Trust Co. ("Defendant"),

and all acting in concert with it, including any sheriff, from selling or auctioning the premises

known as 330 Carter Road, Princeton, NJ (the "Property") and granting such other and further

relief as the Court deems just and proper.

        3.      Plaintiff is a Kings County resident and a 25% shareholder in 330 Carter Equity

LLC ("Carter" or "Mortgagor"), a New York corporation.

        4.      Carter owns real property known as 330 Carter Road, Princeton, NJ (the

"Property"), a commercial building.

        5.      Defendant Univest National Bank & Trust Co. ("Defendant" or "Mortgage")

holds a mortgage on the Property and is seeking to sell it auction. It is owed approximately

$18,796,043.86 on the Mortgage.

6.      Such a foreclosure and/or auction is improper because (a) the total amount due to the Defendant is approximately $18,796,043.86 and the Mortgagor has already arranged for financing in the amount of $16,150,000.00 to pay off the bulk of the amount due, and (b) the value of the office building exceeds the amount owed to the Defendant such that Defendant is oversecured and a stay of the Sheriff's sale will not materially harm the Plaintiff

7.      In general, "[o]n a motion for a preliminary injunction, the applicant must prove three things, namely: (1) the likelihood of ultimate success on the merits, (2) irreparable injury absent the granting of the preliminary injunction, and (3) that the equities are balanced in his favor." *McLaughlin, Piven, Vogel, Inc. v W. J. Nolan & Co.*, 114 A.D.2d 165, 172-173 (2d Dep't 1986) (citations omitted).

8.      "As to the likelihood of success on the merits, a prima facie showing of a right to relief is sufficient; actual proof of the case should be left to further court proceedings, or, in this case, arbitration." *Id.* (citing *Gambar Enters., Inc. v Kelly Servs., Inc.*, 69 A.D.2d 297, 306 (4th Dep't 1979); *See also Schlosser v United Presbyt. Home, Inc.*, 56 A.D.2d 615, 615 (2d Dep't 1977) ("Although we have grave doubts regarding the likelihood of plaintiffs' success on the merits, they have demonstrated that if a preliminary injunction is not granted, any subsequent judgment might be rendered ineffectual. . . The purpose of a preliminary injunction is to maintain the status quo; Special Term did not abuse its discretion in concluding that plaintiffs were entitled to the relief requested.").

9.      "The second element of proof required for a preliminary injunction is proof that irreparable injury will occur if the relief is denied. Irreparable injury, for purposes of equity, has been held to mean any injury for which money damages are insufficient." *McLaughlin.*, 114

A.D.2d at 174 (citation omitted). However, even where monetary damages are sufficient to compensate a party, and here they are not, injunctive relief may be granted in some circumstances to maintain the status quo. *Arthur Young & Co. v Black*, 97 A.D.2d 369, 370 (1st Dep't 1983) ("Although ultimately monetary damages would be compensation to plaintiff, we prefer to maintain a *status quo* that will encourage the parties to quickly resolve their differences at a trial on the merits.").

10.    Finally, "[i]t must be shown that the irreparable injury to be sustained is more burdensome [to the plaintiff] than the harm caused to defendant through imposition of the injunction." *Id.* (quoting *Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.*, 70 AD2d 1021, 1022 (3d Dep't 1979).

11.    Mortgagor has already obtained $16,150,000.00 in financing to pay off the bulk of the amount due to the Defendant. Annexed hereto as Exhibit A is the copy of the May 2, 2022 Letter of Intent ("LOI") wherein Rok Lending LLC ("Rok") sets forth the terms on which it will extend this $16,150,000.00 in financing to the Mortgagor.

12.    Mortgagor believes that with an additional 60 days (the 60 day stay sought herein) it can both (i) close on this $16,150,000.00 in financing, and (ii) raise the additional funds needed to pay off the Defendant in full.

13.    As stated above, the approximate amount due to the Defendant is $18,796,043.86. According to the Defendant's own appraisal, the value of the subject office building is between $23,900,00 and $29,700,000. Annexed hereto as Exhibit B are the first three pages of the Plaintiff's July 2020 appraisal report setting forth these values. (The appraisal report is voluminous/124 pages – the full report is available, if necessary.) The first three pages of this appraisal report show (i) that it is the Defendant's own appraisal, (ii) the appraised values and

3

dates set forth above, and (iii) the appraiser's certification signature.

14.     Two other points to note about the value of the office building, are as follows. First, Mortgagor is in the process of obtaining a current appraisal of this office building. Mortgagor expects that the value of the office building in its current appraisal will be equal to or greater than the values in Defendant's July 2020 appraisal as the July 2020 appraisal was performed right in the middle of the shutdown when businesses were not working in offices and where the future of office space was very uncertain. The current appraisal will (obviously) be post-shutdown when, at least to some degree, businesses are back working in offices – and the future is less uncertain.

15.     Second, upon information and belief, if asked, the Defendant may concede that the value of the office building exceeds the amount owed to it herein.

16.     The foregoing demonstrates that the Defendant is oversecured– that the value of the office building exceeds the amount due to the Defendant. A balancing of the equities therefore clearly weighs in favor of the Plaintiff as she will lose her equity in the office building and lose her investment if the sale is not stayed, while Plaintiff will suffer no harm from a short stay. Rochelle Friedman stands to lose her entire investment absent a short stay from this Court.

17.     Pending its hearing and decision on this motion, the Court should stay any auction of the Property.

18.     I did not give notice to Defendant of this application because such notice would severely prejudice Plaintiff, as, if Defendant is provided advance notice of this application, it will likely sell or otherwise impair the property before this motion can be heard.

4

Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 192 of 282 PageID #:
437

## **CONCLUSION**

WHEREFORE, for the reasons detailed herein, Plaintiff respectfully request that the

Court grant this motion in its entirety together with such other and further relief as the Court

deems just and proper.

Dated: Brooklyn, New York
       June 27, 2022

Frank R. Seddio, Esq.

5

5 of 6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------x
ROCHELLE FRIEDMAN,

                           Plaintiff         Index No.

        -against-

UNIVEST NATIONAL BANK AND TRUST CO.,

                        Defendant,
-------------------------------------------------------------x

## AFFIRMATION OF ROCHELLE FRIEDMAN

STATE OF NEW YORK    )
                    :ss:
COUNTY OF KINGS     )

    ROCHELLE FRIEDMAN, who does not swear for religious reasons being duly deposed, affirms the following under penalty of perjury:

    1.       I am a Kings County resident and a 25% shareholder in 330 Carter Equity LLC ("Carter" or "Mortgagor").

    2.       Carter owns real property known as 330 Carter Road, Princeton, NJ (the "Property"), a commercial building.

    3.       Defendant Univest National Bank & Trust Co. ("Defendant" or "Mortgage") holds a mortgage on the Property and is seeking to foreclose and to sell it auction. It is owed approximately $18,796,043.86 on the Mortgage.

    4.       Such a foreclosure auction is improper because (a) the total amount due to the Defendant is approximately $18,796,043.86 and Mortgagor has already arranged for financing in the amount of $16,150,000.00 to pay off the bulk of the amount due, and (b) the value of the

office building exceeds the amount owed to the Defendant, such that Defendant is oversecured and a stay of the Sheriff's sale will not materially harm the Defendant.

5.      Mortgagor has already obtained $16,150,000.00 in financing to pay off the bulk of the amount due to the Defendant. Annexed hereto as Exhibit A is the copy of the May 2, 2022 Letter of Intent ("LOI") wherein the Lending sets forth the terms on which it will extend this $16,150,000.00 in financing to the Mortgagor.

6.      Mortgagor believes that with an additional 60 days (the 60 day stay sought herein) it can both (i) close on this $16,150,000.00 in financing, and (ii) raise the additional funds needed to pay off the Plaintiff in full.

7.      As stated above, the approximate amount due to the Plaintiff is $18,796,043.86. According to the Plaintiff's own appraisal, the value of the subject office building is between $23,900,00 and $29,700,000. Annexed hereto as Exhibit B are the first three pages of the Plaintiff's July 2020 appraisal report setting forth these values. The first three pages of this appraisal report show (i) that it is the Plaintiff's own appraisal, (ii) the appraised values and dates set forth above, and (iii) the appraiser's certification signature.

8.      The Mortgagor is in the process of obtaining a current appraisal of this office building. Mortgagor expects that the value of the office building in its current appraisal will be equal to or greater than the values in Plaintiff's July 2020 appraisal as the July 2020 appraisal was performed right in the middle of the shutdown when businesses were not working in offices and where the future of office space was very uncertain. The current appraisal will (obviously) be post-shutdown when, at least to some degree, businesses are back working in offices – and the future is less uncertain.

9.      Second, upon information and belief, if asked, the Defendant may concede that

the value of the office building exceeds the amount owed to it herein. The foregoing

demonstrates that the Defendant is over secured in this matter — that the value of the office

building exceeds the amount due to the Plaintiff. A balancing of the equities therefore clearly

weighs in favor of the Plaintiff as I will lose my equity and investment in the office building if

the sale is not stayed, while Defendant will suffer no harm.


By: _____

Rochelle Friedman


Sworn and subscribed before me
On this 2̲8̲ day of June 2022

_____

NOTARY PUBLIC

BRUCE L WEINER
NOTARY PUBLIC, State of New York
No. 02WE4698760
Qualified in Kings County
Commission Expires August 31, 2017 ~ 2 5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------------x
ROCHELLE FRIEDMAN,

                       Plaintiff             Index No.

       -against-                 CPLR 2217(b) AFFIRMATION

UNIVEST NATIONAL BANK AND TRUST CO.,

                    Defendant,
------------------------------------------------------------------x

       JAKE RYAN BAUMGARTEN, an attorney fully admitted to practice before the Courts of the State of New York, affirms the following to be true under penalty of perjury pursuant to CPLR 2106:

1. I am an associate at Seddio and Assocaites PC, counsel of record for Plaintiff in the above-captioned action.
2. I submit this affirmation in support of Plaintiffs Order to Show Cause seeking a stay of the sale of the property at issue in this case.
3. I have knowledge of the facts set forth herein.
4. Pursuant to CPLR 2217, I respectfully submit that Plaintiff has not made a prior motion for similar relief.

WHEREFORE, for the reasons detailed herein, Plaintiff respectfully request that the Court grant this motion in its entirety together with such other and further relief as the Court deems just and proper.

Dated: Brooklyn, New York
      June 28, 2022

                                          Jake Ryan Baumgarten, Esq

NYSCEF DOC. NO. 5
RECEIVED NYSCEF: 06/28/2022

May 2, 2022

_____ (the "Lender"), hereby submits this Letter of Intent (the "LOI") to confirm certain non-binding understandings and agreements with respect to the proposed loan (the "Loan") from Lender or its assigns secured by the real property described below ("Collateral"). Upon execution of the LOI by all parties and satisfaction of the conditions precedent hereunder, Lender will prepare loan documents (collectively the "Loan Documents") evidencing the terms of the Loan.

| | |
|---|---|
| Borrower: | A single purpose entity acceptable to Lender in its sole discretion. All borrowing entities shall be managed by a common bankruptcy remote special purpose entity. |
| Loan Amount: | Sixteen Million One Hundred Fifty Thousand and 00/100 Dollars ($16,150,000.00) but at no time shall the Loan amount ("Loan Amount") exceed 70% LTC/LTV of the Collateral, whichever is lower. |
| Collateral: | Collateral includes Lender having a first security interest in all assets of each Borrower and a first priority lien in the real property, rents, and improvements from: <br> • 330 Carter Rd, Princeton, NJ 08540 <br> • A pledge of 100% of membership interest in Borrower |
| Term: | Twelve (12) months. |
| Extension(s): | Lender will agree to extend the Initial Term for an additional Six (6) months (the "Extension Term") in exchange for Borrower paying to Lender an extension fee (the "Extension Fee") in an amount equal to one (1.0%) percent of the outstanding principal balance of the Loan as of the last day of the Initial Term. The aforementioned extension shall be granted provided: (i) the Borrower has never been late on any payments under the Loan, (ii) the Borrower is not in default under any Loan Documents at the time of the closing of any extension, and (iii) the outstanding principal balance of the Loan does not exceed Sixty-Five (65%) percent of the Lender determined value of the Collateral. Borrower shall pay to Lender the Extension Fee on the Initial Term expiration date. The entire outstanding principal as well as all unpaid interest, is due in full on the Maturity Date. |
| Interest Rate: | The fixed interest rate per annum is equal to Ten (10.00%) (the "Interest Rate") and shall be: (i) payable monthly based upon the outstanding principal balance, (ii) paid in arrears and (iii) calculated by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on a year consisting of 360 days. |

1

| | |
|---|---|
| Rate Reset: | There will be a rate reset every month and at the time of each extension (if applicable). The interest rate will be adjusted and set at the Prime Rate as published in the Wall Street Journal plus 650 bps with a minimum rate of 10.00%. |
| Prepayment of Loan: | No prepayment of the Loan shall be permitted without the Lender having received Eight (8) full months of interest on the Loan Amount whether advanced or otherwise. During each Extension Term, no prepayment of the Loan shall be permitted without the Lender having received all interest due during that period. |
| Monthly Payments: | Payments shall be interest only and paid in arrears and calculated by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on a year consisting of 360 days. |
| Guarantor(s): | Recourse for 50% of Loan Amount. |
| Origination/ Exit Fee: | Borrower agrees to pay to Lender at Maturity an Origination Fee of Two (2.00) points based upon the Loan Amount. Borrower agrees to pay to Lender at Maturity an Exit Fee of One (1.00) points based upon the Loan Amount. |
| Lien Release: | If the Collateral, or any portion thereof, including tax credits, are sold or otherwise removed as collateral prior to the Maturity Date, one hundred (100%) percent of the net proceeds of the sale will be paid to Lender and allocated as follows: (i) accrued unpaid interest, if any, due to Lender (ii) any Guaranteed Interest due, (iii) all other amounts due and owing by Borrower under the Loan Documents, and (iv) the outstanding principal balance of the Loan.  No release of Lender's lien on any Collateral shall be granted by Lender unless the proceeds will fully pay all obligations to Lender, or Lender provides its prior written consent to a partial release of its lien on Collateral. |
| Future Funded Capex Reserve: | Subject to review, Lender will fund future advances for tenant improvements at the Lender's sole discretion. |
| Assignment of Loan: | Borrower acknowledges and agrees that the Lender may assign the Loan and Loan Documents at any time. |
| Tax and Insurance Reserve: | At Closing, Lender will hold Six (6) months of property taxes based upon the latest tax bill from the local tax collector's office; and twelve (12) months of general liability insurance and property insurance equal to the amount paid for the policy in place at the closing date. This Reserve will be credited to Borrower upon full repayment of Loan. |

7498806_2

| Interest Reserve: | N/A |
|---|---|

**Insurance:** Lender will require general liability insurance and property insurance, (collectively "Insurance") containing a mortgagee loss payable clause satisfactory to Lender and an agreement to notify Lender in writing at least thirty (30) days prior to any cancellation or reduction in coverage of the policy. The insurance policies shall be in the amount, which shall be based on the recommendation of the Lender's counsel and advisor, is the greater of the replacement value of the property or balance of the Loan and be issued by a company satisfactory to Lender. Notwithstanding the foregoing, the Borrower shall carry such types of insurance as may be required by the Lender in the Lender's sole discretion. A copy of the original insurance policies shall be delivered to Lender at the time of the Closing of this Loan.

**Title Insurance:** Lender, at the advice of its counsel and insurance advisor, may require the issuance of a title insurance policy up to one hundred (100%) percent of the amount of the Loan plus endorsements. Borrower shall choose the closing agent subject to Lender's approval, and the closing agent shall issue the Lender title insurance and close the Loan. Borrower shall be responsible for payment of all premiums and costs related thereto.

**Closing:** Subject to Lender, in its sole discretion, determining that Borrower and Guarantor have satisfied all pre-closing requirements including completion and review of all third-party reports, Closing shall take place within four weeks following receipt of upfront Advance Deposit and following the execution of this LOI.

**Expenses:** Borrower shall pay all costs and expenses in connection with the Loan including, but not limited to, background checks, insurance policy review, attorney fees, recording costs, taxes, title insurance premiums, appraisals, and inspection fees.

**Advance Deposit:** Lender agrees to engage its attorneys to review the due diligence items and draft the Loan Documents to close this transaction with a non-refundable Seventy-Five Thousand and 00/100 ($75,000.00) Dollars Advance Deposit from Borrower. If Borrower does not close then the Advance Deposit shall be applied to the Expenses and any balance shall be immediately released to Borrower in accordance with the terms of this LOI. If closing does occur any remaining portion of this Advance Deposit after expenses shall be credited towards the Origination Fee.

**Underwriting Fee:** $10,000.00 for Lender's due diligence costs at Closing. The underwriting fee will be deemed earned upon acceptance of this LOI.

**Processing Fee:** $10,000.00 to be paid to Lender at Closing.

3

7498806_2

| Brokerage Fees: | Borrower shall indemnify, defend and hold Lender harmless for any claims for this and any other broker's commissions in connection with the Loan. |
| --- | --- |
| Lease Approval: | Lender shall the right to approve new leases and amendment(s) to existing leases. |
| Management Cash Sweep: | Loan will be subject to a management cash sweep during any period in which there is a monetary or maturity default by the Borrower. |
| Control Agreement: | Loan will be subject to a control agreement on all property related bank accounts. |
| Business Purpose: | Borrower and Guarantor represent to Lender, for Lender's reliance, that the proceeds of the Loan will be used solely for business or commercial purposes and not for personal, family or household use. |
| Exclusivity: | Borrower and Guarantor hereby expressly agree and acknowledge that (a) Lender is devoting its personnel and financial resources to the consideration of the Loan; (b) in Lender's industry, business opportunities are limited and extremely competitive; (c) compensation to the Lender, in the event Borrower obtains financing from a source other than Lender would be extremely difficult to calculate; (d) Lender cannot, as a result of this underwriting and analysis, commit its resources to other potential transactions and may be deprived of business opportunities thereby; and (e) Lender may suffer negative impact in the industry in the event Borrower does not complete this proposed transaction or obtains financing from a competitor of the Lender. Accordingly, Borrower and Guarantor hereby expressly agrees to work solely with Lender to procure the Loan and agrees not to, and will cause their principals and affiliates not to, obtain or attempt to arrange financing in connection with the Property with any party other than the Lender. In the event the Borrower, Guarantor or an affiliate or controlled entity of either (a) obtains financing for the Property from a source other Lender, or (b) sells, assigns or otherwise conveys the Property or its contract to acquire the Property, Borrower and Guarantor shall be obligated to pay and Lender shall be deemed to have earned a break-up fee in the amount of $50,000 (the "Breakup Fee"), which Breakup Fee shall constitute liquidated damages. Borrower and Guarantor shall be responsible for Lender's legal fees and costs in connection with recovery of the Breakup Fee. This foregoing exclusivity provision is in consideration for Lender issuing this Term Sheet and shall be binding upon Borrower and Guarantor so long as Lender is prepared to close, with terms materially in accordance with the LOI for a period of one (1) month. |
| Non-Binding Letter of Intent: | The Borrower, Lender and Guarantor, agree that this is a non-binding letter of intent, and Lender shall have no obligation to fund the Loan, unless and until the Lender has agreed to an actual Loan closing and has funded the amount due hereunder.  In the event the Lender, in its sole and absolute discretion, decides not |

7498806_2

to fund the Loan, the parties acknowledge that the Lender shall have no obligations to the Borrower. Notwithstanding the foregoing, any costs incurred by the Lender in investigating, preparing and in any other way determining whether to make the Loan to Borrower shall be reimbursed and paid by the Borrower to Lender whether or not the Lender decides to fund the Loan. Lender may offset such costs from any funds received from the Advance Deposit to pay the foregoing. Notwithstanding anything contained herein to the contrary, the provisions of this LOI regarding Borrower's payment of Lender's expenses shall be binding upon the Borrower whether or not the Lender decides to fund the Loan.

This LOI will be null and void if not accepted by May 4, 2022 at 5:00 p.m. If the terms and conditions set forth in this LOI meet with your approval, please indicate your acceptance by signing below, emailing the executed copy to                                and wiring all required funds to the provided account.

limited liability company

**Borrower**: _____

By: _____
      *Ira Russack*

Name: _____
      Ira Russack

Title: _____
      Mm

**Guarantor(s)**: _____

By: _____
      *Ira Russack*

7498806_2

**CBRE VALUATION & ADVISORY SERVICES**

# APPRAISAL REPORT

330 CARTER ROAD
HOPEWELL TOWNSHIP, NEW JERSEY   08540
CBRE FILE NO. 20-047NE-2711-1

UNIVEST BANK AND TRUST CO.

**CBRE**

VALUATION & ADVISORY SERVICES

# CBRE

Park 80 West Plaza Two
Saddle Brook, NJ 07663

T 201-712-5600
F 201-712-5650

www.cbre.com

Date of Report: July 13, 2020

Ms. Deb McCandless
Collateral Review Analyst
UNIVEST BANK AND TRUST CO.
14 North Main Street, PO Box 197
Souderton, Pennsylvania  18964

RE:     Appraisal of: 330 Carter Road
        Hopewell Township, Mercer County, New Jersey  08540
        CBRE, Inc. File No. 20-047NE-2711-1

Dear Ms. Mccandless:

At your request and authorization, CBRE, Inc. has prepared an appraisal of the market value of
the referenced property.  Our analysis is presented in the following Appraisal Report.

The subject is a 190,558-square foot, three-story, suburban office building located at 330 Carter
Road in Hopewell Township, Mercer County, New Jersey. The improvements were constructed in
1969, renovated in 2007 and are situated on a 1.12-acre site. The subject is 50.8% occupied by
Sensors Unlimited, Inc. as the sole tenant and is more fully described legally and physically within
the body of this report.

The subject is not currently stabilized. Therefore, at the request of the client, we have also
estimated the subject's prospective market value at stabilized operation levels.

Based on the analysis contained in the following report, the market values of the subject are
concluded as follows:

| MARKET VALUE CONCLUSION | | | |
|---|---|---|---|
| Appraisal Premise | Interest Appraised | Date of Value | Value Conclusion |
| As Is | Leased Fee Interest | July 9, 2020 | $23,900,000 |
| As Stabilized | Leased Fee Interest | July 9, 2021 | $29,700,000 |

Compiled by CBRE

The report, in its entirety, including all assumptions and limiting conditions, is an integral part of,
and inseparable from, this letter.

As of the date of value and the date of this report, the nation, region, and market area are
impacted by the COVID-19 pandemic. This could have a prolonged effect on macroeconomic
conditions, though at this time the length of duration is unknown. The perceived impact on real
estate varies on several factors including asset class, use, tenancy, and location.  Our analysis
considers available information as of the effective date.

Ms. Deb McCandless
July 13, 2020
Page 2

The following appraisal sets forth the most pertinent data gathered, the techniques employed, and the reasoning leading to the opinion of value. The analyses, opinions and conclusions were developed based on, and this report has been prepared in conformance with, the guidelines and recommendations set forth in the Uniform Standards of Professional Appraisal Practice (USPAP), and the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute. It also conforms to Title XI Regulations and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) updated in 1994 and further updated by the Interagency Appraisal and Evaluation Guidelines promulgated in 2010.

The intended use and user of our report are specifically identified in our report as agreed upon in our contract for services and/or reliance language found in the report. As a condition to being granted the status of an intended user, any intended user who has not entered into a written agreement with CBRE in connection with its use of our report agrees to be bound by the terms and conditions of the agreement between CBRE and the client who ordered the report. No other use or user of the report is permitted by any other party for any other purpose. Dissemination of this report by any party to any non-intended users does not extend reliance to any such party, and CBRE will not be responsible for any unauthorized use of or reliance upon the report, its conclusions or contents (or any portion thereof).

It has been a pleasure to assist you in this assignment. If you have any questions concerning the analysis, or if CBRE can be of further service, please contact us.

Respectfully submitted,

CBRE - VALUATION & ADVISORY SERVICES

Drew Manzi
Vice President
NJ State Certification No.: 42RG00234000

Phone:   201-712-5875
Fax:     201-712-5650
Email:   drew.manzi@cbre.com

Mark Mediavilla, MAI
Director
NJ State Certification No.: 42RG00260100

Phone:   631-370-6011
Fax:     631-370-6001
Email:   Mark.Mediavilla@cbre.com

Zachary Myers
Valuation Associate

Phone: (201) 712-5892
Email: zack.myers@cbre.com

CBRE

SWC-F-002486-21   07/27/2022 10:40:57 AM   Pg 21 of 21   Trans ID: CHC2022173045
NYSCEF DOC. NO. 6
Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 205 of 282 PageID #: 450
RECEIVED NYSCEF: 06/28/2022

# Certification

We certify to the best of our knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are our personal, impartial and unbiased professional analyses, opinions, and conclusions.

3. We have no present or prospective interest in or bias with respect to the property that is the subject of this report and have no personal interest in or bias with respect to the parties involved with this assignment.

4. Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

5. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

6. This appraisal assignment was not based upon a requested minimum valuation, a specific valuation, or the approval of a loan.

7. Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice, as well as the requirements of the State of New Jersey.

8. The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

9. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

10. As of the date of this report, Mark Mediavilla, MAI has completed the continuing education program for Designated Members of the Appraisal Institute.

11. Zack Myers and Drew Manzi have and Mark Mediavilla, MAI has not made a personal inspection of the property that is the subject of this report.

12. No one provided significant real property appraisal assistance to the persons signing this report.

13. Valuation & Advisory Services operates as an independent economic entity within CBRE, Inc. Although employees of other CBRE, Inc. divisions may be contacted as a part of our routine market research investigations, absolute client confidentiality and privacy were maintained at all times with regard to this assignment without conflict of interest.



# EXHIBIT E

# SEIDMAN & PINCUS, LLC

### ATTORNEYS AT LAW
777 TERRACE AVENUE, SUITE 508
HASBROUCK HEIGHTS, NEW JERSEY  07604
(201) 473-0047   FAX: (201) 288-7009

MEMBERS:
MITCHELL B. SEIDMAN*
E-MAIL: ms@seidmanllc.com

ANDREW J. PINCUS*
E-MAIL: ap@seidmanllc.com

ADMISSION:
* MEMBER OF NJ & NY BAR
⁺ MEMBER OF NJ, NY & DC BAR
˜ MEMBER OF NJ BAR

OF COUNSEL:
LANI D'AGOSTINO˜˜
E-MAIL: ld@seidmanllc.com

JENNIFER S. MANHEIM*
E-MAIL: jm@seidmanllc.com

MARIA A. ARNOTT*
E-MAIL: ma@seidmanllc.com

REENA FORST⁺
E-MAIL: rforst@rflawfirm.com

MINDY ZLOTOGURA*
E-MAIL: mz@seidmanllc.com

JUNE 29, 2022

**VIA ECOURTS**
The Honorable Timothy P. Lydon, P.J.Ch.
Superior Court of New Jersey
Chancery Division, Mercer County
Civil Courthouse
175 South Broad St., 4ᵗʰ Fl.
Trenton, NJ 08650

> **Re:**  **Univest Bank and Trust Co. v. 330 Carter Equity LLC, *et al*.**
> **Superior Court of NJ, Mercer County**
> **Docket No. SWC-F-002486-21**
>
> **Rochelle Friedman v. Univest National Bank and Trust Co.**
> **Supreme Court of New York, County of Kings**
> **Index No.  518508/ 2022**

Dear Judge Lydon:

We represent defendants 330 Carter Equity LLC and Ira Russack (collectively, "Defendants") in the above-referenced matter venued in the Superior Court of New Jersey.  And, although we do not represent the plaintiff, Rochell Friedman, in the above-referenced matter venued in New York, we write with regards to (i) the recently entered Order to Show Cause (" NY OTSC") dated June 28, 2022 in which the Honorable Karen Rothenberg, J.S.C. of Supreme Court of the State of New York, Kings County ordered the stay of the sale of the property located at 330 Carter Road, Princeton, New Jersey (the "Property"); and (2) the correspondence sent to Your Honor today by counsel for Univest Bank and Trust Co. regarding the NY OTSC in which counsel requests this Court refuse to enforce the NY OTSC.

The NY OTSC is entitled to the full faith and credit of this Court including, but not limited to, enforcement unless and until same has been vacated by the New York court.  Our state's courts have an obligation to recognize and accept other states' public records, judicial proceedings, and legislative acts.  U.S. Constitution, Article IV Sec. 1.  As such this Court should enter an order

**SEIDMAN & PINCUS, LLC**
June 29, 2022
Page 2

directing the Mercer County Sheriff to stay the sale of the Property until a date after July 7, 2022 (the return date of the NY OTSC) and/or such time as the New York court renders its decisions with regard to the rights of Ms. Friedman.  Thank you.

Very truly yours,

*/s/ Lani D'Agostino*

Lani D'Agostino

cc:     Christopher Leavell, Esq. (via Ecourts and email)
        Mercer County Sheriff (via email)

\\seidman.local\Data\AllShare\Russack, Ira vs. Univest Bank – Russack-Univest\ltr to ct 6.29.22.docx

# EXHIBIT F

| | |
|---|---|
| **From:** | Mitchell Seidman |
| **To:** | Sam Sam; Rebekah Conroy |
| **Subject:** | FW: [External]FW: UNIVEST V. 330 CARTER EQUITY, LLC Property: 330 Carter Rd. Princeton, NJ F-2486-21 |
| **Date:** | Tuesday, July 5, 2022 1:16:29 PM |

███████████

████████████████████████████████████████

██████████████████████████████████

Mitchell B. Seidman, Esq.

**Seidman & Pincus, LLC**

777 Terrace Avenue, Suite 508

Hasbrouck Heights, NJ 07604

Phone: 201-473-0047, ext. 11

Fax:     201-288-7009

Cell:     973-723-3329

Email:   ms@seidmanllc.com

---

**From:** Mitchell Seidman
**Sent:** Wednesday, June 29, 2022 2:07 PM
**To:** irarussack@gmail.com; mettvonmettz@gmail.com; Sam Sam <oldenequitiesgroup@gmail.com>
**Cc:** Lani D'Agostino <ld@seidmanllc.com>
**Subject:** FW: [External]FW: UNIVEST V. 330 CARTER EQUITY, LLC Property: 330 Carter Rd. Princeton, NJ F-2486-21

███████████

████████████████████████████████████████

████████████████████████

Mitchell B. Seidman, Esq.

Seidman & Pincus, LLC

777 Terrace Avenue, Suite 508

Hasbrouck Heights, NJ 07604

Phone: 201-473-0047, ext. 101

Fax:     201-288-7009

Cell:     973-723-3329

Email:   ms@seidmanllc.com

---

**From:** Hiyasmin Urbano <hiyasmin.urbano@njcourts.gov>
**Sent:** Wednesday, June 29, 2022 1:40 PM
**To:** Lani D'Agostino <ld@seidmanllc.com>; Katie Klodowski <katie.klodowski@njcourts.gov>
**Cc:** Mitchell Seidman <ms@seidmanllc.com>; CLEAVELL@KLEHR.COM; pwillan@klehr.com; cchell@mercercounty.org; Katherine Stott Bittle <Katherine.StottBittle@njcourts.gov>

**Subject:** RE: [External]FW: UNIVEST V. 330 CARTER EQUITY, LLC Property: 330 Carter Rd. Princeton, NJ F-2486-21

Ms. D'Agostino,

Received.  Judge Lydon has reviewed your letter. It is procedurally deficient and provides no support for the representations made in the letter.  Therefore, the request is denied.

*Hiyasmin Urbano*, Secretary to the

Honorable Timothy P. Lydon, P.J.Ch.

Mercer County Courthouse

Chancery Division

175 S. Broad Street – 3rd Floor

Trenton, New Jersey 08650

609.571.4200 Ext. 74204

609.376.0834 Fax

---

**From:** Lani D'Agostino <ld@seidmanllc.com>
**Sent:** Wednesday, June 29, 2022 1:38 PM
**To:** Katie Klodowski <katie.klodowski@njcourts.gov>; Hiyasmin Urbano <hiyasmin.urbano@njcourts.gov>
**Cc:** Mitchell Seidman <ms@seidmanllc.com>; Lani D'Agostino <ld@seidmanllc.com>
**Subject:** [External]FW: UNIVEST V. 330 CARTER EQUITY, LLC Property: 330 Carter Rd. Princeton, NJ F-2486-21
**Importance:** High

**CAUTION:** This email originated from outside the Judiciary organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hiyasmin and Katie,  I am resending this email to you (to make sure you received same) with the copy of the letter we filed on Ecourts in this foreclosure.  Please provide to Judge Lydon as the sale is today at 2pm.  Thank you.

Lani D'Agostino, Esq.
SEIDMAN & PINCUS, LLC
777 Terrace Avenue, Suite 508
Hasbrouck Heights, New Jersey 07604
T 201-473-0047 ext. 103
F 201-288-7009
LD@SEIDMANLLC.COM

---

**From:** Lani D'Agostino <ld@seidmanllc.com>
**Sent:** Wednesday, June 29, 2022 1:26 PM
**To:** Hiyasmin Urbano <hiyasmin.urbano@njcourts.gov>
**Cc:** Lani D'Agostino <ld@seidmanllc.com>; Mitchell Seidman <ms@seidmanllc.com>

**Subject:** FW: UNIVEST V. 330 CARTER EQUITY, LLC Property: 330 Carter Rd. Princeton, NJ F-2486-21
**Importance:** High

Lani D'Agostino, Esq.
SEIDMAN & PINCUS, LLC
777 Terrace Avenue, Suite 508
Hasbrouck Heights, New Jersey 07604
T 201-473-0047 ext. 103
F 201-288-7009
LD@SEIDMANLLC.COM

---

**From:** Lani D'Agostino <ld@seidmanllc.com>
**Sent:** Wednesday, June 29, 2022 1:21 PM
**To:** Leavell, Christopher <CLeavell@klehr.com>; Chell, Christine <cchell@mercercounty.org>; Peterson, Malik <mpeterson@mercercounty.org>
**Cc:** Willan, Paige <PWillan@klehr.com>; Hiyasmin Urbano <hiyasmin.urbano@njcourts.gov>; Lani D'Agostino <ld@seidmanllc.com>; Mitchell Seidman <ms@seidmanllc.com>
**Subject:** UNIVEST V. 330 CARTER EQUITY, LLC Property: 330 Carter Rd. Princeton, NJ F-2486-21
**Importance:** High

All,

See attached IMPORTANT CORRESPONDENCE FILED WITH THE COURT REQUESTING THE STAY OF THE FORECLOSURE SALE/ ENFORCEMENT OF THE NY OTSC STAYING THE FORECLOSURE **TODAY** OF 330 CARTER RD., PRINCETON.

I can be reached on my cell 908-256-6827

Lani D'Agostino, Esq.
SEIDMAN & PINCUS, LLC
777 Terrace Avenue, Suite 508
Hasbrouck Heights, New Jersey 07604
T 201-473-0047 ext. 103
F 201-288-7009
LD@SEIDMANLLC.COM

Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 215 of 282 PageID #: 460

# EXHIBIT G

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
x---------------------------------------------------------------

ROCHELLE FRIEDMAN,

Plaintiff                          Index No.: 518508/2022

-against-                          AFFIDAVIT OF SERVICE

UNIVEST NATIONAL BANK AND TRUST CO.,

Defendant,
x---------------------------------------------------------------

State of New York,  COUNTY OF KINGS:

SS:

Simon Babaisakov, being duly sworn, says:

1.  I am not a party to this action.

2.  My address is  ~~Edelman Ave~~ 0 8857
     1861 Kestria 281

3.  On June 29, 2022, at approximately 4pm, I hand delivered a copy of the **Summons,**

**Complaint, Order dated June 28, 2022 entered by the Hon. Karen B. Rothenberg,**

**J.S.C.," and supporting Affirmation and exhibits** on Univest National Bank and Trust

Co., located at  4390 Davisville Rd. Hatboro, PA 19040, to an individual who identified

herself as Sam Doe.

_____
Simon Babaisakov

Sworn to before me this
26 Day of _____ 2022.
44

_____
NOTARY PUBLIC

KEVIN NEPOMNIASHY
Notary Public - State of New York
NO. 01NE6383028
Qualified in Kings County
My Commission Expires Nov 5, 2022

# EXHIBIT H

**PREPARED BY THE COURT**

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO., | SUPERIOR COURT OF NEW JERSEY LAW DIVISION – MERCER COUNTY DOCKET NO. F-2486-21 |
| Plaintiff, | CIVIL ACTION |
| v. | |
| 330 CARTER EQUITY LLC, IRA RUSSACK, AND STATE OF NEW JERSEY, | |
| Defendant. | **ORDER** |

**THIS MATTER** having come before the Court, the Hon. Robert Lougy, A.J.S.C., presiding, on the order to show cause filed by Defendants 330 Carter Equity LLC and Ira Russack, represented by Mitchell B. Seidman, Esq., seeking relief as stated therein; and Plaintiff Univest National Bank and Trust Co., represented by Paige M. Willan, Esq., admitted *pro hac vice*, having filed opposition; and Plaintiff having filed a reply; and the Court having considered the parties' arguments and papers; and for the reasons as stated herein; and for good cause shown; and for good cause shown;

**IT IS** on this 22nd day of July 2022 **ORDERED** that:

1.    Defendants' objection to the sheriff's sale is **DENIED**.

2.    Defendants' request for an offsetting money judgment in favor of Defendant and against Plaintiff in the amount of excess is **DENIED**.

3.    The sheriff is authorized to release and deliver the deed to the Property to Plaintiff as the successful bidder of the Property at auction.

4.    Regarding Defendants' application for an order granting Defendants a credit of the property's fair market value against the foreclosure amount, the Court schedules a case management conference to establish a discovery schedule and to schedule a fair market value hearing for **AUGUST 2, 2022**, at 9:30 a.m. before the Hon. Timothy Lydon, P.J.Ch.   Further instructions from Judge Lydon's chambers shall be forthcoming regarding the conference.

/s/ Robert Lougy
ROBERT LOUGY, A.J.S.C.

**PURSUANT TO <u>RULE</u> 1:7-4, THE COURT PROVIDES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW.**

This matter comes before the Court on Defendants' order to show cause objecting to the sheriff's sale and seeking a fair market value credit against the

July 22, 2022
Page 2 of 14

judgment of foreclosure.[1]  Plaintiff objects.  The Court heard oral argument on

Defendants' application on July 19, 2022.

---

[1]  The Court disapproves of Defendants bringing this matter before the Court by way of an order to show cause.  The appropriate procedural mechanism for Defendants' application was to proceed via a motion, not by order to show cause.  An order to show cause is authorized only in two specific instances: under Rule 4:67 and under Rule 4:52.  Per Rule 4:67-1(a), a party seeking to commence a summary action require authorization in either statute or court rule to proceed summarily, and nothing in that rule allows a defendant to submit an order to show cause.  Indeed, the phrase "commence a summary action" precludes a defendant from filing an order to show cause under that rule.  No defendant commences an action because all actions are commenced by a complaint.  See R. 4:2-2 ("A civil action is commenced by filing a complaint with the court.").  Additionally, Defendants do not proceed under Rule 4:52-1 because they seek no restraints.  Finally, Rule 4:65-5 specifically requires that all objections to a sheriff's sale proceed by way of a "motion for the hearing of an objection to the sale."  Proceeding by order to show cause for that relief is directly contrary to that rule's directive.

The Court understands that Plaintiff declined to consent to any extension of the timeframe set forth in Rule 4:65-5 – as was its right – but that refusal did not authorize Defendants to proceed by order to show cause absent some authority.  The better course of action would have been that Defendants file a motion for the hearing on their objection, asked that it be heard on an accelerated basis different from the schedule established in Rule 1:6-3, given the time constraints imposed by Rule 4:65-5.  Such an application would have additionally afforded the Court the opportunity to direct that the motion be returnable more than twenty days after the sale, as the rule explicitly permits.

These irregularities provide sufficient bases to deny Defendants' application in its entirety on procedural grounds.  Defendants may only seek expedited or emergent relief when they are authorized to do so and, given the nature of their application, no such authorization exists.  That said, however, given this disposition of Defendants' application, Plaintiff suffers no harm from the Court overlooking that procedural irregularity in this instance, effectively converting the submitted order to show cause into such a motion.  Nothing in the Court's reservation of Defendants' application for fair market value pending potential further discovery and appraisals and a fair market value hearing precludes

The facts below are not in dispute. Defendant 330 Carter Equity LLC ("the Borrower") owns the property at issue. It is a three-story office/laboratory building containing a gross floor area of 215,590 feet zoned for Research Office. In September 2020, Plaintiff extended a commercial loan to the Borrower of $15,700,000. At or about the same time, Defendant Russack executed a Guaranty and Suretyship Agreement wherein he agreed to personally guarantee all the Borrower's obligations.

On April 29, 2021, Plaintiff declared default. Plaintiff instituted this action. On January 26, 2022, the court entered a final judgment of foreclosure. The total amount due is approximately $18,812,723. On that same date, a Writ of Execution issued, authorizing the sheriff to conduct a sale. In May 2022, the court granted a thirty-day stay of the sheriff's sale. The sale was ultimately held on June 29, 2022.

Plaintiff announced that it would bid up to $19,590,393.09 for the property. Plaintiff was the successful bidder for the property with a winning bid of of $100. No other parties bid for the property.

While the parties disagree regarding Defendants' efforts to maintain and repair the property, they all acknowledge that the property requires considerable repair work from damages sustained in September 2021. Plaintiff represents that

---

Plaintiff from advancing and maintaining its position that Defendants are entitled to no fair market value credit whatsoever, as a matter of law, until such time that Plaintiff pursues a deficiency action.

the fire protection system is inoperable, that electricity for the building is being provided by an external source, and that the building's life safety systems also need urgent repair. The parties dispute whether the property's HVAC system has been adequately repaired. See, e.g., Russack Certif., at ¶ 12 (stating that "the HVAC system [] is now up and running"); Thomas Certif., at ¶ 45 ("Although it appeared to be partially operational, it was apparent that not all of the damage had been repaired."); id. at ¶ 69 (explaining that tenant had further abated its rent as of May 26, 2022 because of HVAC system).

Both sides agree that, under the Property's current legal limbo, service providers are reluctant to work on the Property. Russack Certif., at ¶ 12; Thomas Certif., at ¶ 17.

Defendants submit appraisals of the property that value it at $22,450,00 in "as is" condition and $36,240,000 in "as stabilized" condition. In July 2020, Plaintiff's appraiser valued the property at $23,900,00 in "as is" condition and at $29,700,000 in "as stabilized" condition.

In support of their application, Defendants argue the following. They argue that the disparity between the appraised value and the winning bid of $100 establishes that the figure does not reflect the value of the property. They argue that they are entitled to credit against Plaintiff's foreclosure judgment equal to the fair market value of the Property at the time of the auction sale and that the time is

ripe for them to make such an application. They argue that they have submitted sufficient proofs by way of an expert appraisal and urge that the "as stabilized" price in the appraisal is the "truer picture of the fair market value of the Property" because this litigation impeded their ability to make the necessary repairs. They argue that Plaintiff is not entitled to a windfall profit and ask for a judgment to be entered against Plaintiff for the excess.

Plaintiff argues the following in opposition, arguing that Defendants' application is unsupported in both law and equity. It argues that Defendants fail to advance any valid objection to the sheriff's sale and make no allegation – much less showing – of fraud, accident, mistake, or irregularity. Further, it argues that New Jersey law is clear: an inadequate sales price is no ground to set aside a sale. And equity leads to a same result, as Defendants have had more than sufficient time to arrange replacement financing but failed to do so and, Plaintiff argues, come before the Court with hands soiled by falsified insurance certificates and "a check kite of substantial proportions." It argues that Defendants' request for a judgment against Plaintiff likewise has no support in New Jersey law or basis in equity. Regarding Defendants' request for a fair market value credit, Plaintiff argues that Defendants fail to establish a legal or factual basis entitling them to a credit and, further, have no support for impeding issuance of the deed and confirmation of the sale while

the fair market credit issue is adjudicated.  Plaintiff discounts the weight and credibility of the submitted appraisal, as (a) the appraiser provides no support for the estimated costs of repairs; (b) incorrectly asserts that insurance will cover the repairs to the HVAC system and elevators; and (c) does not acknowledge or account for the ongoing abatement of the rental income.  Thus, the appraisal is based on "misinformation and guess work."  Finally, Plaintiff argues that Defendants have made no showing that they are unable to pay the mortgage.  Plaintiff additionally argues that Defendants' ability to seek a fair market credit does not impede the confirmation of sale and issuance of the deed.

In reply, Defendants argue the following.  They argue that they have established a valid objection because the winning bid did not represent the fair market value, and rely upon their appraisal, Plaintiff's earlier appraisal, and Plaintiff's maximum bid, and Plaintiff's earlier concession that it is oversecured.  They further argue that, because the fair market value of the Property exceeds the judgment amount, they are entitled to a judgment against Plaintiff for the excess.  And they reiterate that they are entitled to a fair market value credit.  They acknowledge that the appraisal was necessarily performed quickly and that the appraiser needs additional information from Plaintiff and the tenant that will be incorporated into a supplemental appraisal.

They argue that the Court should stay the issuance of the Sheriff's deed until the Court resolves the fair market value issue.

Defendants advance objections to the sheriff's sale of this property. Rule 4:65-5 governs sheriff's sales and objections. When a sheriff is authorized to sell real property, he or she "shall deliver a good and sufficient conveyance in pursuance of the sale unless a motion for the hearing of an objection to the sale is served within [ten] days after the sale or at any time thereafter before the delivery of the conveyance." R. 4:65-5. The party objecting must give notice "to all persons in interest." Ibid.

Rule 4:65-5 grants a debtor the "absolute right to redeem the property by tendering the full amount due" during the ten days following a sheriff's sale. Brookshire Equities, LLC v. Montaquiza, 346 N.J. Super. 310, 315 (App. Div. 2002) (citing Hardyston Nat'l Bank of Hamburg v. Tartamella, 56 N.J. 508, 513, 267 A.2d 495 (1970)). A debtor may extend this period by filing an objection to the sheriff's sale within the ten-day period. Id. at 316 (citing Hardyston, 56 N.J. at 513). Under limited circumstances, a debtor may be permitted to file an objection "after the ten-day period and before conveyance of the deed," provided there is a "valid ground for objection." Id. at 317. Examples include "fraud, accident, surprise, irregularity, or impropriety in the

sheriff's sale." Ibid. (citing Orange Land Co. v. Bender, 96 N.J. Super. 158, 164 (App. Div. 1967)).

"[T]he Chancery Division has the authority to set aside a sheriff's sale and order a resale of property. However, the exercise of this power is discretionary and must be based on considerations of equity and justice." First Tr. Nat'l Ass'n v. Merola, 319 N.J. Super. 44, 49 (App. Div. 1999) (citation omitted). "[A] judicial sale may be set aside 'by reasons of fraud, accident, surprise, or mistake, irregularities in the conduct of the sale, and so on[;]'" however, "a judicial sale is not ordinarily vacated 'on the ground of mistake flowing from [a moving party's] own culpable negligence.'" Ibid. (third alteration in original) (quoting Karel v. Davis, 122 N.J. Eq. 526, 528 (E. & A. 1937)).

The power to set aside a judicial sale should be "sparingly exercised." Id. at 52 (quoting Karel, 122 N.J. Eq. at 529). A sheriff's sale should only be vacated "when necessary to correct a plain injustice." Karel, 122 N.J. Eq. at 529; see also E. Jersey Sav. & Loan Ass'n v. Shatto, 226 N.J. Super. 473, 476 (Ch. Div. 1987) (holding that "[t]he power to set aside a foreclosure sale is to be exercised with great care and only when necessary for compelling reasons"). "The burden of proof rests with the objector." Shatto, 226 N.J. Super at 476.

It is well-established that a Sheriff's sale normally should not be vacated on the basis of inadequacy of sale price alone. G.E. Capital Mortg. Servs., Inc. v.

Marilao, 352 N.J. Super. 274, 285 (App. Div. 2002) ("[i]nadequacy of price alone

normally does not warrant setting aside a Sheriff's sale"); Crane v. Bielski, 15 N.J.

342, 348 (1954) ("inadequacy is just one of the factors to be taken into

consideration" and is not "an indispensable ingredient"); W. Ridgelawn Cemetery

v. Jacobs, 108 N.J. Eq. 513, 514-15 (Ch. 1931) ("mere inadequacy of price affords

no ground of relief.").  A Sheriff's sale "is a form of distress sale that cannot

reasonably be expected to produce full fair market value."  Marilao, 352 N.J.

Super. at 285; see also Carteret Sav. & Loan Ass'n, F.A. v. Davis, 105 N.J. 344,

351 (1987) ("foreclosure sales rarely, if ever, bring the fair market value of the

foreclosed property"). Thus, in order to vacate a Sheriff's sale due to inadequacy of

the sale price,

> it is essential that the price be so grossly inadequate as to
> support the inference of fraud, or to shock the judgment
> and conscience, or be accompanied by an independent
> substantive ground for equitable relief . . . making
> confirmation inequitable and unjust to one or more of the
> parties.
>
> [Karel, 122 N.J. Eq. at 530-31.]

Here, the Court finds no basis to set aside the sale based on the sales price alone.

The property, by all accounts, needs substantial repairs and, additionally, has a

dissatisfied tenant with a documented history of rent abatement.  Additionally,

although Plaintiff does not credit them, if the Court takes Defendants at their

word, Defendants made unsuccessful efforts to refinance their debt, presumably as

secured by the property.  That the Defendants were unable to do so may suggest

that other lenders were unwilling to finance the property's purchase.  And, finally,

nothing in the record alleges, much less establishes, any fraud, accident, mistake,

or procedural irregularity.

Accordingly, the Court denies Defendants' application to enjoin the release

and delivery of the deed to Plaintiff.  As indicated earlier, while the parties do not

agree on much concerning the care and maintenance of the property since its

storm-related damage in September 2021, they acknowledge that contracting for

repairs and maintenance has proven difficult and to the detriment of the property

and the tenant.  Nothing will be gained in this litigation from further preventing the

Sheriff from delivering the deed to Plaintiff.  At oral argument, Defendant

Russack's most capable counsel argued that the Court's consideration of the

equities should encompass consideration of the Plaintiff's action against him in

Pennsylvania courts.  The Court declines to do so, as it has no knowledge of the

procedural or factual histories of that matter.  Defendant can pursue whatever

reliefs or defenses that he deems appropriate in the separate proceeding happening

in the Pennsylvania courts.  See, e.g., Morsemere Fed Sav. & Loan Ass'n v.

Nicolaou, 206 N.J. Super. 637, 645 (App. Div. 1986) ("A court of equity has

inherent power to prevent a potential double recovery or windfall to the judgment

creditor who not only may profit on the purchase of the property at the foreclosure

July 22, 2022
Page 11 of 14

sale (if purchased for less than fair market value), but who also seeks to obtain satisfaction of his judgment.").

The Court deems it appropriate, at this time, to allow Defendants to pursue their fair market value credit. Plaintiff reserved the right to submit its own appraisal and, given the time constraints created by Defendants' application, the Court deems the same to be reasonable. The Court establishes a case management conference with the Presiding Judge of Chancery for the purposes of discovery schedule.

Brunswick Bank & Trust v. Heln Management LLC informs us that "because 'equity abhors a forfeiture,' a court of equity may in appropriate circumstances, through application of fair market value credits, or by other recognized means, spare a party from an unwanted forfeiture." 453 N.J. Super. 324, 330 (App. Div. 2018); see also MMU of N.Y. v. Grieser, 415 N.J. Super. 37, 40 (App. Div. 2010) (concluding that "even in the absence of express statutory authorization, a court has inherent equitable authority to allow a fair market value credit in order to prevent a double recovery by a judgment creditor against a judgment debtor."). "Ascertaining the fair market values of property acquired by [Plaintiff] is one way in which a court of equity may determine whether [Plaintiff] has been overcompensated." Brunswick Bank, 453 N.J. Super. at 331; see also id. at 328 (referencing earlier unpublished decision in same matter, "[w]e emphasized

July 22, 2022
Page 12 of 14

a court's power to prevent a windfall and to ensure a judgment creditor recovers no more than the amount of the debt by applying the fair market value credit of property struck off at a sheriff sale.").  However, as Plaintiff was the successful bidder of the property, any excess value of the property over Defendants' indebtedness may be "the type of windfall law and equity would allow Brunswick Bank to reap."  Id. at 333; id. at 333 n.9.

Finally, as the Court is not determining whether and how much of a fair market value credit Defendants may be entitled to, the Court declines to enter a judgment in any amount against Plaintiff.  Defendants provide no authority for such relief, the Appellate Division has rejected that argument, and the Supreme Court has commented on same.  West Pleasant-CPGT, Inc. v. U.S. Home Corp., 243 N.J. 92, 109 n.3. (2020) (discussing Brunswick Bank and noting that "even there, the Appellate Division rejected any claim to require a money judgment to debtors if the fair market value of property purchased by the creditor at sheriff's sale exceeded the shortfall owed on the debt.").

The Court understands Plaintiff's reliance upon West Pleasant-CPGT in support of its argument that Defendants have no rights to a fair market value credit unless and until Plaintiff seeks to enforce the judgment.  Such a holding would be contrary to the Brunswick Bank holding and discussion.  Rather than disagree with that holding in West Pleasant-CPGT, the Supreme Court rather concluded that it

July 22, 2022
Page 13 of 14

had little relevance to the issue before it.  <u>Ibid.</u>  Plaintiff has preserved its

argument that Defendants have no entitlement to a credit unless and until Plaintiff

undertakes an enforcement action; it does not convince this Court of that

conclusion on this record and at this stage of Defendants' request for a credit.

Shalom D. Stone (033141987)
Rebekah R. Conroy (028932003)
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, New Jersey 07932
(973) 400-4181
*Attorneys for Proposed Intervenor*
*Rochelle Friedman*

|  |  |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO.<br><br>        Plaintiff,<br><br>v.<br><br>330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY,<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY MERCER COUNTY:<br>CHANCERY DIVISION<br>Docket No. SWC-F-002486-21<br><br>CIVIL ACTION<br><br>**CERTIFICATION OF SERVICE** |

REBEKAH CONROY, of full age, does hereby certify and state:

1.      I am a Member of Stone Conroy LLC, counsel for Intervenor Rochelle Friedman in the above matter. I am one of the attorneys charged with the care and maintenance of this matter and have personal knowledge of the facts recited herein.

2.      Today I caused the following documents to be served via Ecourts on all counsel of record:

   a.  Notice of motion to Intervene
   b.  Letter Brief in Support of Motion to Intervene
   c.  Certification of Counsel with Exhibits
   d.  Proposed Form of Order; and
   e.  This Certification of Service.

I certify the above is true to the best of my knowledge. I am aware if any information herein is knowingly false, I may be subject to punishment.

Dated: July 27, 2022                                    /s/ Rebekah Conroy

1

Rebekah Conroy

# EXHIBIT D


**KLEHR HARRISON
HARVEY BRANZBURG**LLP

Christopher J. Leavell
**Direct Dial:** (856) 486-6973
**Email:** cleavell@klehr.com

June 29, 2022

<u>**VIA ELECTRONIC FILING & ELECTRONIC MAIL**</u>
Hon. Timothy P. Lydon, P.J. Ch.
Superior Court of New Jersey, Chancery Division, Mercer County
Civil Courthouse
175 South Broad Street, 4th Floor
Trenton, NJ 08650

   **Re: Univest Bank and Trust Co. v. 330 Carter Equity, LLC, et al., No.**

Dear Judge Lydon:

   Univest respectfully submits this letter to inform the Court of a development related to the sheriff's sale of 330 Carter Road, Hopewell, NJ (the "Property") scheduled for today, June 29, 2022.

   On June 27, 2022, this Court entered an Order denying Defendants' application for a stay of the sheriff's sale of the Property.  A copy of that order is enclosed with this letter.  The Court entered the Order after hearing Defendants' arguments concerning purported financing that they had allegedly obtained for the Property and concerning a purported "equity cushion" that Defendants allegedly have in the Property.

   On June 29, 2022, at 8:41 AM, Univest received, via email from the sheriff's office, a copy of an Order to Show Cause obtained by a Rochelle Friedman from the New York Supreme Court, Kings County, purporting to enjoin Univest from proceeding with a sheriff's sale of the Property. A copy of that order to show cause is enclosed with this letter.  Univest has not been served with this Order to Show Cause.  Univest has not been served with any complaint initiating an action against it in New York.  Nor has Univest been served with any of the supporting papers upon which the Order to Show Cause was based, but was able to obtain them from the public dockets of the New York Supreme Court.

   Ms. Friedman claims to own a minority interest in defendant 330 Carter Equity.  In the papers submitted in connection with the Order to Show Cause, she makes the precise same arguments that this Court ruled upon in its June 27 order after extensive briefing and oral argument – that is, that financing has supposedly been arranged for the Property and that a sheriff's sale will

---

1835 MARKET STREET | SUITE 1400 | PHILADELPHIA, PA 19103 | t 215.569.2700 | f 215.568.6603 | www.klehr.com

PENNSYLVANIA | NEW JERSEY | DELAWARE | NEW YORK

10059113.v1



June 29, 2022
Page 2

cause her to lose her alleged equity in the Property.  Copies of Ms. Friedman's affirmation and her attorney's affirmation are enclosed with this letter.

This Order to Show Cause is defective for several reasons.  First, the New York Supreme Court has no personal jurisdiction over Univest.  Univest is not registered to do business in New York, has no offices in New York, and conducts no regular business in New York.  Nor does the New York Court have jurisdiction over the Property, which is located in New Jersey, or over the sheriff, a New Jersey public official.  Moreover, Ms. Friedman has no standing to assert claims relating to any purported equity in the Property, which is owned by 330 Carter Equity, LLC, a New Jersey limited liability company.  Finally, even if Ms. Friedman did have standing to make the arguments contained in her application to the New York Supreme Court, she barred by collateral estoppel from doing so by this Court's Order of June 27, 2022.

We have been in contact with the sheriff's office, who has informed us that they will proceed with the sale notwithstanding the order from an out-of-state Court, and has asked for us to confirm our position concerning the sale.

For the reasons set forth above, Univest intends to proceed with the sale of the Property today, June 29, 2022.  Univest and its counsel are available to the Court at any time to provide any additional information that the Court may require.  The purpose of this letter is to keep the Court fully informed of developments related to this matter.

Respectfully submitted,

/s/ *Christopher J. Leavell*

Christopher J. Leavell

CJL:ny
Enclosures
CC:   Mitchell Siedman, Esq. (via email at ms@seidmanllc.com)
      Lani D'Agostino, Esq. (via email at ld@seidmanllc.com)
      Christine Chell, Foreclosure Department, Mercer County Sheriff's Office (via email at cchell@mercercounty.org)

**PREPARED BY THE COURT**

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO.<br><br>Plaintiff,<br><br>v.<br><br>330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>MERCER COUNTY<br><br>Docket No. F-2486-21<br>Civil Action<br><br>**ORDER** |

This matter being brought before the Court by Seidman & Pincus, LLC, attorneys for defendants 330 Carter Equity LLC and Ira Russack ("Defendants"), seeking the entry of an order staying the May 18, 2022 Sheriff's sale of the property located at 330 Carter Road, Princeton, NJ (the "Property") for 60 days; and it appearing that the Plaintiff Univest National Bank and Trust Co. ("Plaintiff") has filed opposition to this application; and Defendants having filed a reply to Plaintiff's opposition; and with the Court having considered the matter; and with the Court having heard oral argument; and for the reasons stated on the record; and for good cause shown;

It is on this 27th day of June, 2022,

1. **ORDERED** that Defendant's application seeking the entry of an order staying the sheriff sale of the property located at 330 Carter Road, Princeton, NJ is **DENIED**;

2. **ORDERED** that a copy of this order shall be served by Defendants' counsel upon Plaintiff's counsel via filing on NJ eCourts and by email within two (2) days of the entry of this order.

/s/                Timothy P. Lydon
HON. TIMOTHY P. LYDON, P.J.Ch.

At IAS Part **72** of the Supreme
Court of the State of New York, held
in and for the County of New York,
at the Courthouse located at 360
Adams Street, Brooklyn, NY on the
**28** day of June 2022.

PRESENT: Hon. *Karen Rothenberg*
J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------x
ROCHELLE FRIEDMAN,

                                                Plaintiff

                    -against-                                        Index No. **518508/22**

UNIVEST NATIONAL BANK AND TRUST CO.,

                                                Defendant,
-------------------------------------------------------------x

## ORDER TO SHOW CAUSE

Upon the annexed affirmation of Frank R. Seddio, Esq., together with exhibits the
annexed affirmation of Rochelle Freidman, together with exhibits, the summons and complaint
and all pleadings and proceedings had herein:

LET all parties show cause before this Court, IAS Part **57**, Room **774**, at the
Courthouse, located at 360 Adams Street, Brooklyn, New York, on **July 7th** **2022** **at 9:30 AM**
as soon thereafter as counsel can be heard, *OR via virtual appearances as required by the Court* why an order should not be entered issuing a
preliminary injunction barring Defendant Univest National Bank And Trust Co. ("Defendant"),
and all acting in concert with it, including any sheriff, from selling or auctioning the premises
known as 330 Carter Road, Princeton, NJ (the "Property") and granting such other and further
relief as the Court deems just and proper.

SUFFICIENT CAUSE THEREORE APPEARING,

ORDERED, that pending the hearing of this motion, Defendant, and all acting in concert with it, including any sheriff, are enjoined from selling or auctioning the Property; *and personal service*

LET service upon Respondent by NYSCEF of a copy of this Order and the papers on which it was based on or before *June 29th* 2022, be deemed good and sufficient service thereof.

ENTER:

Hon: _____

J.S.C

HON KAREN B ROTHENBERG

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

----------------------------------------------------------------x

ROCHELLE FRIEDMAN,

                     Plaintiff          Index No.

      -against-

UNIVEST NATIONAL BANK AND TRUST CO.,

                    Defendant,

----------------------------------------------------------------x

### AFFIRMATION OF ROCHELLE FRIEDMAN

STATE OF NEW YORK    )
                :ss:
COUNTY OF KINGS     )

     ROCHELLE FRIEDMAN, who does not swear for religious reasons being duly deposed, affirms the following under penalty of perjury:

     1.     I am a Kings County resident and a 25% shareholder in 330 Carter Equity LLC ("Carter" or "Mortgagor").

     2.     Carter owns real property known as 330 Carter Road, Princeton, NJ (the "Property"), a commercial building.

     3.     Defendant Univest National Bank & Trust Co. ("Defendant" or "Mortgage") holds a mortgage on the Property and is seeking to foreclose and to sell it auction. It is owed approximately $18,796,043.86 on the Mortgage.

     4.     Such a foreclosure auction is improper because (a) the total amount due to the Defendant is approximately $18,796,043.86 and Mortgagor has already arranged for financing in the amount of $16,150,000.00 to pay off the bulk of the amount due, and (b) the value of the

office building exceeds the amount owed to the Defendant, such that Defendant is oversecured and a stay of the Sheriff's sale will not materially harm the Defendant.

5.     Mortgagor has already obtained $16,150,000.00 in financing to pay off the bulk of the amount due to the Defendant. Annexed hereto as Exhibit A is the copy of the May 2, 2022 Letter of Intent ("LOI") wherein the Lending sets forth the terms on which it will extend this $16,150,000.00 in financing to the Mortgagor.

6.     Mortgagor believes that with an additional 60 days (the 60 day stay sought herein) it can both (i) close on this $16,150,000.00 in financing, and (ii) raise the additional funds needed to pay off the Plaintiff in full.

7.     As stated above, the approximate amount due to the Plaintiff is $18,796,043.86. According to the Plaintiff's own appraisal, the value of the subject office building is between $23,900,00 and $29,700,000. Annexed hereto as Exhibit B are the first three pages of the Plaintiff's July 2020 appraisal report setting forth these values. The first three pages of this appraisal report show (i) that it is the Plaintiff's own appraisal, (ii) the appraised values and dates set forth above, and (iii) the appraiser's certification signature.

8.     The Mortgagor is in the process of obtaining a current appraisal of this office building. Mortgagor expects that the value of the office building in its current appraisal will be equal to or greater than the values in Plaintiff's July 2020 appraisal as the July 2020 appraisal was performed right in the middle of the shutdown when businesses were not working in offices and where the future of office space was very uncertain. The current appraisal will (obviously) be post-shutdown when, at least to some degree, businesses are back working in offices – and the future is less uncertain.

9.    Second, upon information and belief, if asked, the Defendant may concede that

the value of the office building exceeds the amount owed to it herein. The foregoing

demonstrates that the Defendant is over secured in this matter — that the value of the office

building exceeds the amount due to the Plaintiff. A balancing of the equities therefore clearly

weighs in favor of the Plaintiff as I will lose my equity and investment in the office building if

the sale is not stayed, while Defendant will suffer no harm.


By: _____

Rochelle Friedman


Sworn and subscribed before me
On this ⅜⅜ day of June 2022

_____

NOTARY PUBLIC

BRUCE L WEINER
NOTARY PUBLIC, State of New York
No. 02WE4898750
Qualified in Kings County
Commission Expires August 31, 2017 2 5

FILED: KI SWC-F-002486-21 07/27/2022 10:40:57 AM Pg 10 of 25 Trans ID: CHC2022173045 518508/2022

NYSCEF DOC. NO. 5 Case 1:22-cv-03858-WFK-SJB Document 14-2 Filed 10/12/22 Page 244 of 282 PageID #: RECEIVED NYSCEF: 06/28/2022

489

May 2, 2022

_____ , (the "Lender"), hereby submits this Letter of Intent (the "LOI") to confirm certain non-binding understandings and agreements with respect to the proposed loan (the "Loan") from Lender or its assigns secured by the real property described below ("Collateral"). Upon execution of the LOI by all parties and satisfaction of the conditions precedent hereunder, Lender will prepare loan documents (collectively the "Loan Documents") evidencing the terms of the Loan.

| | |
|---|---|
| Borrower: | A single purpose entity acceptable to Lender in its sole discretion. All borrowing entities shall be managed by a common bankruptcy remote special purpose entity. |
| Loan Amount: | Sixteen Million One Hundred Fifty Thousand and 00/100 Dollars ($16,150,000.00) but at no time shall the Loan amount ("Loan Amount") exceed 70% LTC/LTV of the Collateral, whichever is lower. |
| Collateral: | Collateral includes Lender having a first security interest in all assets of each Borrower and a first priority lien in the real property, rents, and improvements from:<br>• 330 Carter Rd, Princeton, NJ 08540<br>• A pledge of 100% of membership interest in Borrower |
| Term: | Twelve (12) months. |
| Extension(s): | Lender will agree to extend the Initial Term for an additional Six (6) months (the "Extension Term") in exchange for Borrower paying to Lender an extension fee (the "Extension Fee") in an amount equal to one (1.0%) percent of the outstanding principal balance of the Loan as of the last day of the Initial Term. The aforementioned extension shall be granted provided: (i) the Borrower has never been late on any payments under the Loan, (ii) the Borrower is not in default under any Loan Documents at the time of the closing of any extension, and (iii) the outstanding principal balance of the Loan does not exceed Sixty-Five (65%) percent of the Lender determined value of the Collateral. Borrower shall pay to Lender the Extension Fee on the Initial Term expiration date. The entire outstanding principal as well as all unpaid interest, is due in full on the Maturity Date. |
| Interest Rate: | The fixed interest rate per annum is equal to Ten (10.00%) (the "Interest Rate") and shall be: (i) payable monthly based upon the outstanding principal balance, (ii) paid in arrears and (iii) calculated by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on a year consisting of 360 days. |

1

| Rate Reset: | There will be a rate reset every month and at the time of each extension (if applicable). The interest rate will be adjusted and set at the Prime Rate as published in the Wall Street Journal plus 650 bps with a minimum rate of 10.00%. |
|---|---|
| Prepayment of Loan: | No prepayment of the Loan shall be permitted without the Lender having received Eight (8) full months of interest on the Loan Amount whether advanced or otherwise. During each Extension Term, no prepayment of the Loan shall be permitted without the Lender having received all interest due during that period. |
| Monthly Payments: | Payments shall be interest only and paid in arrears and calculated by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on a year consisting of 360 days. |
| Guarantor(s): | Recourse for 50% of Loan Amount. |
| Origination/ Exit Fee: | Borrower agrees to pay to Lender at Maturity an Origination Fee of Two (2.00) points based upon the Loan Amount. Borrower agrees to pay to Lender at Maturity an Exit Fee of One (1.00) points based upon the Loan Amount. |
| Lien Release: | If the Collateral, or any portion thereof, including tax credits, are sold or otherwise removed as collateral prior to the Maturity Date, one hundred (100%) percent of the net proceeds of the sale will be paid to Lender and allocated as follows: (i) accrued unpaid interest, if any, due to Lender (ii) any Guaranteed Interest due, (iii) all other amounts due and owing by Borrower under the Loan Documents, and (iv) the outstanding principal balance of the Loan. No release of Lender's lien on any Collateral shall be granted by Lender unless the proceeds will fully pay all obligations to Lender, or Lender provides its prior written consent to a partial release of its lien on Collateral. |
| Future Funded Capex Reserve: | Subject to review, Lender will fund future advances for tenant improvements at the Lender's sole discretion. |
| Assignment of Loan: | Borrower acknowledges and agrees that the Lender may assign the Loan and Loan Documents at any time. |
| Tax and Insurance Reserve: | At Closing, Lender will hold Six (6) months of property taxes based upon the latest tax bill from the local tax collector's office; and twelve (12) months of general liability insurance and property insurance equal to the amount paid for the policy in place at the closing date. This Reserve will be credited to Borrower upon full repayment of Loan. |

2

Interest Reserve:    N/A

Insurance:    Lender will require general liability insurance and property insurance, (collectively "Insurance") containing a mortgagee loss payable clause satisfactory to Lender and an agreement to notify Lender in writing at least thirty (30) days prior to any cancellation or reduction in coverage of the policy. The insurance policies shall be in the amount, which shall be based on the recommendation of the Lender's counsel and advisor, is the greater of the replacement value of the property or balance of the Loan and be issued by a company satisfactory to Lender. Notwithstanding the foregoing, the Borrower shall carry such types of insurance as may be required by the Lender in the Lender's sole discretion. A copy of the original insurance policies shall be delivered to Lender at the time of the Closing of this Loan.

Title Insurance:    Lender, at the advice of its counsel and insurance advisor, may require the issuance of a title insurance policy up to one hundred (100%) percent of the amount of the Loan plus endorsements. Borrower shall choose the closing agent subject to Lender's approval, and the closing agent shall issue the Lender title insurance and close the Loan. Borrower shall be responsible for payment of all premiums and costs related thereto.

Closing:    Subject to Lender, in its sole discretion, determining that Borrower and Guarantor have satisfied all pre-closing requirements including completion and review of all third-party reports, Closing shall take place within four weeks following receipt of upfront Advance Deposit and following the execution of this LOI.

Expenses:    Borrower shall pay all costs and expenses in connection with the Loan including, but not limited to, background checks, insurance policy review, attorney fees, recording costs, taxes, title insurance premiums, appraisals, and inspection fees.

Advance Deposit:    Lender agrees to engage its attorneys to review the due diligence items and draft the Loan Documents to close this transaction with a non-refundable Seventy-Five Thousand and 00/100 ($75,000.00) Dollars Advance Deposit from Borrower. If Borrower does not close then the Advance Deposit shall be applied to the Expenses and any balance shall be immediately released to Borrower in accordance with the terms of this LOI. If closing does occur any remaining portion of this Advance Deposit after expenses shall be credited towards the Origination Fee.

Underwriting Fee:    $10,000.00 for Lender's due diligence costs at Closing. The underwriting fee will be deemed earned upon acceptance of this LOI.

Processing Fee:    $10,000.00 to be paid to Lender at Closing.

3

7498806_2

| | |
|---|---|
| Brokerage Fees: | Borrower shall indemnify, defend and hold Lender harmless for any claims for this and any other broker's commissions in connection with the Loan. |
| Lease Approval: | Lender shall the right to approve new leases and amendment(s) to existing leases. |
| Management Cash Sweep: | Loan will be subject to a management cash sweep during any period in which there is a monetary or maturity default by the Borrower. |
| Control Agreement: | Loan will be subject to a control agreement on all property related bank accounts. |
| Business Purpose: | Borrower and Guarantor represent to Lender, for Lender's reliance, that the proceeds of the Loan will be used solely for business or commercial purposes and not for personal, family or household use. |
| Exclusivity: | Borrower and Guarantor hereby expressly agree and acknowledge that (a) Lender is devoting its personnel and financial resources to the consideration of the Loan; (b) in Lender's industry, business opportunities are limited and extremely competitive; (c) compensation to the Lender, in the event Borrower obtains financing from a source other than Lender would be extremely difficult to calculate; (d) Lender cannot, as a result of this underwriting and analysis, commit its resources to other potential transactions and may be deprived of business opportunities thereby; and (e) Lender may suffer negative impact in the industry in the event Borrower does not complete this proposed transaction or obtains financing from a competitor of the Lender. Accordingly, Borrower and Guarantor hereby expressly agrees to work solely with Lender to procure the Loan and agrees not to, and will cause their principals and affiliates not to, obtain or attempt to arrange financing in connection with the Property with any party other than the Lender. In the event the Borrower, Guarantor or an affiliate or controlled entity of either (a) obtains financing for the Property from a source other Lender, or (b) sells, assigns or otherwise conveys the Property or its contract to acquire the Property, Borrower and Guarantor shall be obligated to pay and Lender shall be deemed to have earned a break-up fee in the amount of $50,000 (the "Breakup Fee"), which Breakup Fee shall constitute liquidated damages. Borrower and Guarantor shall be responsible for Lender's legal fees and costs in connection with recovery of the Breakup Fee. This foregoing exclusivity provision is in consideration for Lender issuing this Term Sheet and shall be binding upon Borrower and Guarantor so long as Lender is prepared to close, with terms materially in accordance with the LOI for a period of one (1) month. |
| Non-Binding Letter of Intent: | The Borrower, Lender and Guarantor, agree that this is a non-binding letter of intent, and Lender shall have no obligation to fund the Loan, unless and until the Lender has agreed to an actual Loan closing and has funded the amount due hereunder. In the event the Lender, in its sole and absolute discretion, decides not |

4

to fund the Loan, the parties acknowledge that the Lender shall have no obligations to the Borrower. Notwithstanding the foregoing, any costs incurred by the Lender in investigating, preparing and in any other way determining whether to make the Loan to Borrower shall be reimbursed and paid by the Borrower to Lender whether or not the Lender decides to fund the Loan. Lender may offset such costs from any funds received from the Advance Deposit to pay the foregoing. Notwithstanding anything contained herein to the contrary, the provisions of this LOI regarding Borrower's payment of Lender's expenses shall be binding upon the Borrower whether or not the Lender decides to fund the Loan.

This LOI will be null and void if not accepted by May 4, 2022 at 5:00 p.m. If the terms and conditions set forth in this LOI meet with your approval, please indicate your acceptance by signing below, emailing the executed copy to              and wiring all required funds to the provided account.

limited liability company

**Borrower**: _____

By: _____Ira Russack_____

Name: _____Ira Russack_____

Title: _____Mm_____

**Guarantor(s)**: _____

By: _____Ira Russack_____

5

Case 1.22-cv-03858-WFK-SJB Document 14-2 Filed 10/12/22 Page 249 of 282 PageID #: 494

**CBRE VALUATION & ADVISORY SERVICES**

# APPRAISAL REPORT

330 CARTER ROAD
HOPEWELL TOWNSHIP, NEW JERSEY 08540
CBRE FILE NO. 20-047NE-2711-1

UNIVEST BANK AND TRUST CO.

**CBRE**

VALUATION & ADVISORY SERVICES

**CBRE**

Park 80 West Plaza Two
Saddle Brook, NJ 07663

T 201-712-5600
F 201-712-5650

www.cbre.com

Date of Report: July 13, 2020

Ms. Deb McCandless
Collateral Review Analyst
UNIVEST BANK AND TRUST CO.
14 North Main Street, PO Box 197
Souderton, Pennsylvania 18964

RE: Appraisal of: 330 Carter Road
Hopewell Township, Mercer County, New Jersey 08540
CBRE, Inc. File No. 20-047NE-2711-1

Dear Ms. Mccandless:

At your request and authorization, CBRE, Inc. has prepared an appraisal of the market value of
the referenced property. Our analysis is presented in the following Appraisal Report.

The subject is a 190,558-square foot, three-story, suburban office building located at 330 Carter
Road in Hopewell Township, Mercer County, New Jersey. The improvements were constructed in
1969, renovated in 2007 and are situated on a 1.12-acre site. The subject is 50.8% occupied by
Sensors Unlimited, Inc. as the sole tenant and is more fully described legally and physically within
the body of this report.

The subject is not currently stabilized. Therefore, at the request of the client, we have also
estimated the subject's prospective market value at stabilized operation levels.

Based on the analysis contained in the following report, the market values of the subject are
concluded as follows:

| MARKET VALUE CONCLUSION | | | |
|---|---|---|---|
| **Appraisal Premise** | **Interest Appraised** | **Date of Value** | **Value Conclusion** |
| As Is | Leased Fee Interest | July 9, 2020 | $23,900,000 |
| As Stabilized | Leased Fee Interest | July 9, 2021 | $29,700,000 |

**Compiled by CBRE**

The report, in its entirety, including all assumptions and limiting conditions, is an integral part of,
and inseparable from, this letter.

As of the date of value and the date of this report, the nation, region, and market area are
impacted by the COVID-19 pandemic. This could have a prolonged effect on macroeconomic
conditions, though at this time the length of duration is unknown. The perceived impact on real
estate varies on several factors including asset class, use, tenancy, and location. Our analysis
considers available information as of the effective date.

Ms. Deb McCandless
July 13, 2020
Page 2

The following appraisal sets forth the most pertinent data gathered, the techniques employed, and the reasoning leading to the opinion of value. The analyses, opinions and conclusions were developed based on, and this report has been prepared in conformance with, the guidelines and recommendations set forth in the Uniform Standards of Professional Appraisal Practice (USPAP), and the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute. It also conforms to Title XI Regulations and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) updated in 1994 and further updated by the Interagency Appraisal and Evaluation Guidelines promulgated in 2010.

The intended use and user of our report are specifically identified in our report as agreed upon in our contract for services and/or reliance language found in the report. As a condition to being granted the status of an intended user, any intended user who has not entered into a written agreement with CBRE in connection with its use of our report agrees to be bound by the terms and conditions of the agreement between CBRE and the client who ordered the report. No other use or user of the report is permitted by any other party for any other purpose. Dissemination of this report by any party to any non-intended users does not extend reliance to any such party, and CBRE will not be responsible for any unauthorized use of or reliance upon the report, its conclusions or contents (or any portion thereof).

It has been a pleasure to assist you in this assignment. If you have any questions concerning the analysis, or if CBRE can be of further service, please contact us.

Respectfully submitted,

CBRE - VALUATION & ADVISORY SERVICES

Drew Manzi
Vice President
NJ State Certification No.: 42RG00234000

Phone:   201-712-5875
Fax:       201-712-5650
Email:    drew.manzi@cbre.com

Zachary Myers
Valuation Associate

Phone: (201) 712-5892
Email: zack.myers@cbre.com

Mark Mediavilla, MAI
Director
NJ State Certification No.: 42RG00260100

Phone:   631-370-6011
Fax:       631-370-6001
Email:    Mark.Mediavilla@cbre.com

CBRE

FILED: KINGS COUNTY CLERK 07/27/2022 10:40:57 AM SWC-F-002486-21 07/27/2022 10:40:57 AM Pg 18 of 25 Trans ID: CHC2022173045 518508/2022
NYSCEF DOC. NO. 6 Case 1:22-cv-03858-WFK-SJB Document 14-2 Filed 10/12/22 Page 252 of 282 PageID #: RECEIVED NYSCEF: 06/28/2022
497

# Certification

We certify to the best of our knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are our personal, impartial and unbiased professional analyses, opinions, and conclusions.

3. We have no present or prospective interest in or bias with respect to the property that is the subject of this report and have no personal interest in or bias with respect to the parties involved with this assignment.

4. Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

5. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

6. This appraisal assignment was not based upon a requested minimum valuation, a specific valuation, or the approval of a loan.

7. Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice, as well as the requirements of the State of New Jersey.

8. The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

9. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

10. As of the date of this report, Mark Mediavilla, MAI has completed the continuing education program for Designated Members of the Appraisal Institute.

11. Zack Myers and Drew Manzi have and Mark Mediavilla, MAI has not made a personal inspection of the property that is the subject of this report.

12. No one provided significant real property appraisal assistance to the persons signing this report.

13. Valuation & Advisory Services operates as an independent economic entity within CBRE, Inc. Although employees of other CBRE, Inc. divisions may be contacted as a part of our routine market research investigations, absolute client confidentiality and privacy were maintained at all times with regard to this assignment without conflict of interest.



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------x
ROCHELLE FRIEDMAN,

                          **Plaintiff**         **Index No.**

       -against-

UNIVEST NATIONAL BANK AND TRUST CO.,

                         **Defendant,**
-------------------------------------------------------------------x

## AFFIRMATION OF FRANK R. SEDDIO, ESQ. IN SUPPORT OF EMERGENCY ORDER TO SHOW CAUSE

      FRANK R. SEDDIO, ESQ., an attorney duly admitted to practice before the courts of the state of New York hereby affirms the truth of the following pursuant to CPLR 2106:

      1.      Together with Sam Sprigel, Esq., I am co-counsel for Plaintiff Rochelle Friedman ("Plaintiff") in this action.

      2.      I submit this affirmation in support of Plaintiff's emergency motion seeking an a preliminary injunction barring Defendant Univest National Bank And Trust Co. ("Defendant"), and all acting in concert with it, including any sheriff, from selling or auctioning the premises known as 330 Carter Road, Princeton, NJ (the "Property") and granting such other and further relief as the Court deems just and proper.

      3.      Plaintiff is a Kings County resident and a 25% shareholder in 330 Carter Equity LLC ("Carter" or "Mortgagor"), a New York corporation.

      4.      Carter owns real property known as 330 Carter Road, Princeton, NJ (the "Property"), a commercial building.

      5.      Defendant Univest National Bank & Trust Co. ("Defendant" or "Mortgage") holds a mortgage on the Property and is seeking to sell it auction. It is owed approximately

$18,796,043.86 on the Mortgage.

6. Such a foreclosure and/or auction is improper because (a) the total amount due to the Defendant is approximately $18,796,043.86 and the Mortgagor has already arranged for financing in the amount of $16,150,000.00 to pay off the bulk of the amount due, and (b) the value of the office building exceeds the amount owed to the Defendant such that Defendant is oversecured and a stay of the Sheriff's sale will not materially harm the Plaintiff

7. In general, "[o]n a motion for a preliminary injunction, the applicant must prove three things, namely: (1) the likelihood of ultimate success on the merits, (2) irreparable injury absent the granting of the preliminary injunction, and (3) that the equities are balanced in his favor." *McLaughlin, Piven, Vogel, Inc. v W. J. Nolan & Co.*, 114 A.D.2d 165, 172-173 (2d Dep't 1986) (citations omitted).

8. "As to the likelihood of success on the merits, a prima facie showing of a right to relief is sufficient; actual proof of the case should be left to further court proceedings, or, in this case, arbitration." *Id.* (citing *Gambar Enters., Inc. v Kelly Servs., Inc.*, 69 A.D.2d 297, 306 (4th Dep't 1979); *See also Schlosser v United Presbyt. Home, Inc.*, 56 A.D.2d 615, 615 (2d Dep't 1977) ("Although we have grave doubts regarding the likelihood of plaintiffs' success on the merits, they have demonstrated that if a preliminary injunction is not granted, any subsequent judgment might be rendered ineffectual. . . The purpose of a preliminary injunction is to maintain the status quo; Special Term did not abuse its discretion in concluding that plaintiffs were entitled to the relief requested.").

9. "The second element of proof required for a preliminary injunction is proof that irreparable injury will occur if the relief is denied. Irreparable injury, for purposes of equity, has been held to mean any injury for which money damages are insufficient." *McLaughlin.*, 114

2

A.D.2d at 174 (citation omitted). However, even where monetary damages are sufficient to compensate a party, and here they are not, injunctive relief may be granted in some circumstances to maintain the status quo. *Arthur Young & Co. v Black*, 97 A.D.2d 369, 370 (1st Dep't 1983) ("Although ultimately monetary damages would be compensation to plaintiff, we prefer to maintain a *status quo* that will encourage the parties to quickly resolve their differences at a trial on the merits.").

10.    Finally, "[i]t must be shown that the irreparable injury to be sustained is more burdensome [to the plaintiff] than the harm caused to defendant through imposition of the injunction." *Id.* (quoting *Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.*, 70 AD2d 1021, 1022 (3d Dep't 1979).

11.    Mortgagor has already obtained $16,150,000.00 in financing to pay off the bulk of the amount due to the Defendant. Annexed hereto as Exhibit A is the copy of the May 2, 2022 Letter of Intent ("LOI") wherein Rok Lending LLC ("Rok") sets forth the terms on which it will extend this $16,150,000.00 in financing to the Mortgagor.

12.    Mortgagor believes that with an additional 60 days (the 60 day stay sought herein) it can both (i) close on this $16,150,000.00 in financing, and (ii) raise the additional funds needed to pay off the Defendant in full.

13.    As stated above, the approximate amount due to the Defendant is $18,796,043.86. According to the Defendant's own appraisal, the value of the subject office building is between $23,900,00 and $29,700,000. Annexed hereto as Exhibit B are the first three pages of the Plaintiff's July 2020 appraisal report setting forth these values. (The appraisal report is voluminous/124 pages – the full report is available, if necessary.) The first three pages of this appraisal report show (i) that it is the Defendant's own appraisal, (ii) the appraised values and

3

dates set forth above, and (iii) the appraiser's certification signature.

14.     Two other points to note about the value of the office building, are as follows. First, Mortgagor is in the process of obtaining a current appraisal of this office building. Mortgagor expects that the value of the office building in its current appraisal will be equal to or greater than the values in Defendant's July 2020 appraisal as the July 2020 appraisal was performed right in the middle of the shutdown when businesses were not working in offices and where the future of office space was very uncertain. The current appraisal will (obviously) be post-shutdown when, at least to some degree, businesses are back working in offices – and the future is less uncertain.

15.     Second, upon information and belief, if asked, the Defendant may concede that the value of the office building exceeds the amount owed to it herein.

16.     The foregoing demonstrates that the Defendant is oversecured– that the value of the office building exceeds the amount due to the Defendant. A balancing of the equities therefore clearly weighs in favor of the Plaintiff as she will lose her equity in the office building and lose her investment if the sale is not stayed, while Plaintiff will suffer no harm from a short stay. Rochelle Friedman stands to lose her entire investment absent a short stay from this Court.

17.     Pending its hearing and decision on this motion, the Court should stay any auction of the Property.

18.     I did not give notice to Defendant of this application because such notice would severely prejudice Plaintiff, as, if Defendant is provided advance notice of this application, it will likely sell or otherwise impair the property before this motion can be heard.

4

## CONCLUSION

WHEREFORE, for the reasons detailed herein, Plaintiff respectfully request that the

Court grant this motion in its entirety together with such other and further relief as the Court

deems just and proper.

Dated: Brooklyn, New York
June 27, 2022

Frank R. Seddio, Esq.

5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------x
ROCHELLE FRIEDMAN,

                              Plaintiff          Index No.

       -against-                     CPLR 2217(b) AFFIRMATION

UNIVEST NATIONAL BANK AND TRUST CO.,

                           Defendant,
-------------------------------------------------------------------x

       JAKE RYAN BAUMGARTEN, an attorney fully admitted to practice before the Courts
of the State of New York, affirms the following to be true under penalty of perjury pursuant to
CPLR 2106:

1. I am an associate at Seddio and Assocaites PC, counsel of record for Plaintiff in the
   above-captioned action.
2. I submit this affirmation in support of Plaintiffs Order to Show Cause seeking a stay of
   the sale of the property at issue in this case.
3. I have knowledge of the facts set forth herein.
4. Pursuant to CPLR 2217, I respectfully submit that Plaintiff has not made a prior motion
   for similar relief.

WHEREFORE, for the reasons detailed herein, Plaintiff respectfully request that the Court grant
this motion in its entirety together with such other and further relief as the Court deems just and
proper.

Dated: Brooklyn, New York
      June 2͞8, 2022

                                   Jake Ryan Baumgarten, Esq

Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 259 of 282 PageID #: 504

**Exhibit P**

Shalom D. Stone (033141987)
Rebekah R. Conroy (028932003)
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, New Jersey 07932
(973) 400-4181
*Attorneys for Proposed Intervenor*
*Rochelle Friedman*

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO.<br><br>    Plaintiff,<br><br>v.<br><br>330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY,<br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION MERCER COUNTY<br><br>Docket No. F-002486-21<br>Civil Action<br><br>__NOTICE OF MOTION FOR STAY__ |

To:    Christopher J. Leavell, Esq.
       Kleher Harrison Harvey Branzburg LLP
       1835 Market St., Suite 1400
       Philadelphia, PA 19103

**PLEASE TAKE NOTICE THAT** as soon as counsel may be heard, Intervenor Rochelle

Friedman shall move in the Superior Court of New Jersey, Mercer County, before the Hon.

Timothy P. Lydon, P.J.Ch., for an order granting a stay of the transfer of the deed issued pursuant

to the June 29, 2022 Sheriff's Sale. Intervenor relies upon the annexed Letter Brief dated July 27,

2022. The movants request oral argument in the event that opposition papers are filed.

Respectfully submitted,

/s/Rebekah R. Conroy
Rebekah R. Conroy (028932003)
Shalom D. Stone (033141987)
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, New Jersey 07932

Dated: July 27, 2022

(973) 400-4181
*Attorneys for Proposed Intervenor*
*Rochelle Friedman*

Shalom D. Stone (033141987)
Rebekah R. Conroy (028932003)
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, New Jersey 07932
(973) 400-4181
*Attorneys for Proposed Intervenor*
*Rochelle Friedman*

---

UNIVEST NATIONAL BANK AND TRUST CO.

       Plaintiff,

v.

330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY,

       Defendants.

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
MERCER COUNTY

Docket No. F-002486-21
Civil Action

**ORDER GRANTING STAY**

---

    **THIS MATTER** having been brought before the Court by Stone Conroy LLC, attorneys for Intervenor Rochelle Friedman, on notice to Seidman Pincus LLP, attorneys for Defendants 330 Carter Equity LLC and Ira Russack ("Defendants"), and on notice to Plaintiff by and through its counsel, Kleher Harrison Harvey Branzburg LLP, by motion for a stay; and the Court having considered the moving and opposition papers; and having heard argument of the parties; and good cause having been shown;

    It is on this _____ day of _____, 2022, ORDERED as follows:

1. The motion for a stay is hereby GRANTED;

2. The Sheriff's office is hereby enjoined from issuing the Sheriff's deed until 30 days from the resolution of Intervenor's forthcoming appeal;

3. If the Sheriff's deed has already issued to Plaintiff, Plaintiff is enjoined from conveying title until 30 days from the resolution of Intervenor's forthcoming appeal.

_____

Hon. Timothy P. Lydon, P.J.Ch.



**Rebekah R. Conroy**
**rconroy@stoneconroy.com**

July 27, 2022

**<u>VIA ECOURTS</u>**
The Honorable Timothy P. Lydon, P.J.Ch.
Superior Court of New Jersey
Chancery Division, Mercer County
Civil Courthouse
175 South Broad St., 4th Fl.
Trenton, NJ 08650

> *Re: Univest Bank and Trust Co. v. 330 Carter Equity LLC, et al.*
> *Docket No. SWC-F-002486-21*

Dear Judge Lydon:

    We represent Proposed Intervenor Rochelle Friedman in the above-referenced matter. This letter-brief is respectfully submitted in support of her motion for a stay of the issuance of the Sheriff's deed pending the resolution of Intervenor's motion to intervene, and if that motion granted, Intervenor's planned appeal of the Court's June 29, 2022 decision denying Defendants' request for a stay of the June 29, 2022 Sheriff's Sale in light of the June 28, 2022 Order entered by the Hon. Karen B. Rothenberg, J.S.C., Supreme Court of New York, Kings County, in the matter *Rochelle Friedman v. Univest National Bank and Trust Co.,* Index No. 518508/2022.

    The standard governing whether to grant an application for a stay is the same standard used in deciding whether to grant injunctive relief. *In re Comm'r of Ins. Deferring Certain Claim Payments*, 256 N.J. Super. 553, 560 (App. Div. 1993). Therefore, an application for a stay pending appeal should be granted when: (1) such relief is necessary to prevent irreparable harm; (2) the movant has a likelihood of success on the merits; and (3) a balancing of the relative hardships of the parties favors granting injunctive relief because "greater harm would occur if a stay is not granted than if it were." *McNeil v. Legislative Apportionment Comm's of N.J.*, 176 N.J. 484, 486 (2003) (LaVecchia, dissenting), citing *Crowe v DeGoia*, 90 N.J 126, 139 (1982).

    Of course, "a court may take a less rigid view" of the *Crowe* factors and the general rule that all factors favor injunctive relief "when the interlocutory injunction is merely designed to preserve the status quo." *Waste Management of New Jersey, Inc. v. Union County Utilities*

*Hon. Timothy P. Lydon, P.J.Ch.*
*July 27, 2022*

*Authority*, 399 N.J. Super. 508 at 520 (App. Div. 2008). *See also Brown v. City of Paterson*, 424 N.J. Super. 176, 183 (App. Div. 2012).

> The power to impose restraints pending the disposition of a claim on its merits is flexible; it should be exercised "whenever necessary to subserve the ends of justice," and "justice is not served if the subject-matter of the litigation is destroyed or substantially impaired during the pendency of the suit."
>
> This less rigid approach, for example, permits injunctive relief preserving the status quo even if the claim appears doubtful when a balancing of the relative hardships substantially favors the movant, or the irreparable injury to be suffered by the movant in the absence of the injunction would be imminent and grave, or the subject matter of the suit would be impaired or destroyed.

*Waste Management of New Jersey, Inc. v. Morris County Mun. Utilities Authority*, 433 N.J. Super. 445, 453-454 (App. Div. 2013) (citations omitted).

In this matter, application of these factors favors granting a stay pending appeal.

**A.      Irreparable Harm**

A stay is necessary to prevent irreparable harm to Ms. Friedman.  If the issuance of the Sheriff's deed is not stayed pending appeal, Ms. Friedman's interests in the real property will be irreversibly extinguished, and Ms. Friedman will lose all her equity in the real estate.

**B.      Probability of Success on the Merits**

Ms. Friedman has a reasonable probability of success on the merits as Judge Rothenberg's June 28 Order was in effect at the time of the sale, remains in effect at this time, and is binding on Plaintiff, who has not filed any challenge to same. Further, principles of comity dictate that this Court afford Judge Rothenberg's Order its full effect given the temporary nature of the relief contained therein.

**C.      Balancing of the Hardships**

The balancing of the hardships tips decidedly in favor of issuing a stay.  As explained above, denial of the stay will cause significant and irreparable harm to Ms. Friedman, while granting the stay will cause no prejudice to Univest.  As the Court may recall, Univest was the winning bidder at the Sheriff's sale, and thus, there is no conceivable harm to staying the transfer of title to Univest during the pendency of the appeal.

Ms. Friedman therefore respectfully requests that, pending resolution of her motion to intervene and planned appeal, the Sheriff's office be enjoined from issuing the Sheriff's deed; if the Sheriff's deed has already issued to Plaintiff, Plaintiff should be enjoined from conveying title.

*Hon. Timothy P. Lydon, P.J.Ch.*
*July 27, 2022*

Respectfully yours,

<u>/s/ Rebekah R. Conroy</u>
Rebekah R. Conroy (028932003)
Shalom D. Stone (033141987)

*Attorneys for Proposed Intervenor*
*Rochelle Friedman*

cc:     All counsel via ECF

Shalom D. Stone (033141987)
Rebekah R. Conroy (028932003)
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, New Jersey 07932
(973) 400-4181
*Attorneys for Proposed Intervenor*
*Rochelle Friedman*

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO.<br><br>        Plaintiff,<br><br>v.<br><br>330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY,<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY MERCER COUNTY: CHANCERY DIVISION Docket No. SWC-F-002486-21<br><br>CIVIL ACTION<br><br>**CERTIFICATION OF SERVICE**<br><br>REBEKAH CONROY, of full age, does |

hereby certify and state:

1.      I am a Member of Stone Conroy LLC, counsel for Intervenor Rochelle Friedman in the above matter. I am one of the attorneys charged with the care and maintenance of this matter and have personal knowledge of the facts recited herein.

2.      Today I caused the following documents to be served via Ecourts on all counsel of record:

    a.  Notice of motion for Stay;
    b.  Brief in Support of Motion;
    c.  Proposed Form of Order; and
    d.  This Certification of Service.

I certify the above is true to the best of my knowledge. I am aware if any information herein is knowingly false, I may be subject to punishment.

Dated: July 27, 2022                                    /s/ Rebekah Conroy
                                                        Rebekah Conroy

1

Case 1:22-cv-03858-WFK-SJB   Document 14-2   Filed 10/12/22   Page 271 of 282 PageID #: 516

2

Shalom D. Stone (033141987)
Rebekah R. Conroy (028932003)
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, New Jersey 07932
(973) 400-4181
*Attorneys for Proposed Intervenor*
*Rochelle Friedman*

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO.<br><br>   Plaintiff,<br><br>v.<br><br>330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY,<br><br>   Defendants. | SUPERIOR COURT OF NEW JERSEY MERCER COUNTY: CHANCERY DIVISION Docket No. SWC-F-002486-21<br><br>CIVIL ACTION<br><br><br>**CERTIFICATION OF REBEKAH CONROY** |

REBEKAH CONROY, of full age, does hereby certify and state:

1.  I am a Member of Stone Conroy LLC, counsel for Intervenor Rochelle Friedman in the above matter. I am one of the attorneys charged with the care and maintenance of this matter and have personal knowledge of the facts recited herein.

2.  Attached hereto as **Exhibit A** is a true copy of the June 15, 2022 Order of the Hon. Timothy P. Lydon, P.J.Ch.

3.  Attached hereto as **Exhibit B** is a true copy of the June 27, 2022 Order of the Hon. Timothy P. Lydon, P.J.Ch.

4.  Attached hereto as **Exhibit C** is a true copy of the June 28, 2022 Order to Show Cause and the Order entered by the Honorable Karen B. Rothenberg, J.S.C., Supreme Court of the State of New York, County of Kings, Index No. 518508/22.

5.  Attached hereto as **Exhibit D** is a true copy of correspondence dated June 29, 2022, from Kleher Harrison Harvey Branzburg LLP to the Honorable Timothy P. Lydon, P.J.Ch.

1

6.     Attached hereto as **Exhibit E**  is a true copy of June 29, 2022 correspondence from Seidmann & Pincus LLC to the Honorable Timothy P. Lydon, P.J.Ch..

7.     Attached hereto as **Exhibit F** is a true copy of e-mail correspondence from the Chambers of  the Honorable Timothy P. Lydon, P.J.Ch..

8.     Attached hereto as **Exhibit G** is a true copy of the July 26, 2022 Affidavit of Service of Simon Babaisakov.

9.     Attached hereto as **Exhibit H** is a true copy of the July 25, 2022 Order of the Honorable Robert Lougy, A.J.S.C.

I certify the above is true to the best of my knowledge. I am aware if any information herein is knowingly false, I may be subject to punishment.


Dated: July 27, 2022                                      /s/ Rebekah Conroy
                                                                   Rebekah Conroy

**Exhibit Q**

**PREPARED BY THE COURT**

| | |
|---|---|
| UNIVEST NATIONAL BANK AND TRUST CO. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION MERCER COUNTY |
| Plaintiff, | Docket No. F-2486-21 Civil Action |
| v. | **ORDER** |
| 330 CARTER EQUITY LLC; IRA RUSSACK; and STATE OF NEW JERSEY, | |
| Defendants. | |

This matter being brought before the Court, the Honorable Timothy P. Lydon, P.J.Ch., presiding, on a case management conference with Paige M. Willan, Esq., appearing on behalf of Plaintiff Univest National Bank and Trust Co.; and with Lani D'Agostino, Esq., appearing on behalf of Defendants 330 Carter Equity and Ira Russack; and with Rebekah Conroy, Esq., appearing on behalf of proposed intervenor Rochelle Friedman; and with the parties having indicated that they are engaged in settlement discussions; and for the reasons stated on the record on August 2, 2022 at approximately 9:30 a.m. and 10:00 a.m.; and for good cause shown;

It is on this 2nd day of August, 2022,

1.    Proposed Intervenor's Motion to Stay is **DENIED**;

2.    Proposed Intervenor's Motion to Intervene is adjourned;

3.    The Court schedules a case management conference for **SEPTEMBER 7, 2022**, at 11:00 a.m. The conference shall be conducted remotely via Zoom and information will be sent to the parties within 3 days before the date this matter is scheduled to be heard. At that time, the Court may establish a discovery schedule and set a date for a fair market value hearing.

/s/          Timothy P. Lydon
HON. TIMOTHY P. LYDON, P.J.Ch.

**<u>Exhibit R</u>**

## SETTLEMENT AGREEMENT AND RELEASE

This SETTLEMENT AGREEMENT AND RELEASE (the "Settlement Agreement"), dated August 2, 2022, is entered into by and between 330 Carter Equity, LLC ("Carter Equity"), Ira Russack ("Russack" and, together with Carter Equity, the "Obligors") and Univest Bank and Trust Co. ("Univest"). Each of the Obligors and Univest may each be referred to herein as a "Party" and collectively as the "Parties."

WHEREAS, Russack is the sole managing member of Carter Equity; and

WHEREAS, on or about September 14, 2020, Univest extended a commercial loan to Carter Equity in the principal amount of $15,700,000.00 (the "Loan"); and

WHEREAS, the Loan was evidenced by a Promissory Note, dated September 14, 2020, in the original principal amount of $15,700,000.00 (the "Note"), which was executed by Carter Equity and delivered to Univest, and by a Loan Agreement, dated September 14, 2020, by and between Univest and Carter Equity (the "Loan Agreement"); and

WHEREAS, as consideration for the Loan, Carter Equity executed and delivered to Univest a Mortgage, dated September 14, 2020 (the "Mortgage"), pursuant to which Univest was granted a lien on the premises located at 330 Carter Road, Hopewell, NJ (the "Property"); and

WHEREAS, as further consideration for the Loan, Russack executed and delivered to Univest a Guaranty dated September 14, 2020, thereby agreeing to act as full and complete surety for repayment of the indebtedness of Carter Equity (the "Guaranty"); and

WHEREAS, the Loan Agreement, together with the Note, the Mortgage, the Guaranty, and all amendments, modifications, or extensions of the foregoing, shall be referred to herein as the "Loan Documents"; and

WHEREAS, on May 7, 2021, Univest filed a Complaint in Mortgage Foreclosure in the Superior Court of New Jersey, Chancery Division, Mercer County, thereby initiating the action

1

10106681.v3

captioned *Univest Bank and Trust Co. v. 330 Carter Equity, LLC, et al.*, No. F-002486 (the "Foreclosure Action"); and

WHEREAS, on January 26, 2022, the Court in the Foreclosure Action entered a final judgment in mortgage foreclosure against Carter Equity and Russack (the "Foreclosure Judgment"); and

WHEREAS, on May 4, 2021, Univest filed a Complaint in Confession of Judgment in the Court of Common Pleas of Montgomery County against Russack, and thereby initiating the matter captioned *Univest Bank and Trust Co. v. Russack*, No. 2021-06274 (the "Confession Action"); and

WHEREAS, on May 4, 2021 Univest obtained in the Confession Action a judgment in the amount of $19,231,820.52, plus interest, fees and costs against Russack ("the Confessed Judgment" and, together with the Foreclosure Judgment, the "Judgments"); and

NOW, THEREFORE, for good and valuable consideration and intending to be legally bound, the Parties agree as follows:

1.     Effective Date.  This Settlement Agreement shall become effective on the date of its complete execution by all Parties (the "Effective Date").

2.     Satisfaction of Judgments.  Within five (5) business days after the Effective Date, Univest shall file satisfactions of the Foreclosure Judgment and the Confessed Judgment, and shall take all action necessary to withdraw or mark as satisfied the Confessed Judgment in any jurisdiction to which it has been transferred or is in the process of being transferred.

3.     Obligors' Release of Univest.  Effective upon the Effective Date, the Obligors, for themselves and for their predecessors, successors, direct and indirect parent companies, direct

2

and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, assigns, members, officers, directors, employees, managers, representatives, shareholders, interest holders, executors, heirs, beneficiaries, agents, attorneys, and anyone claiming by them or through them, (collectively, the "Carter Equity Releasing Parties"), hereby release, waive, and forever discharge Univest, together with its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their current or former directors, officers, shareholders, employees, managers, advisors (including financial advisors), attorneys, representatives, and agents, and anyone acting by, through, or in concert with them (collectively, the "Univest Released Parties") from any and all complaints, claims, counterclaims, demands, charges, grievances, liabilities, debts, penalties, fees, expenses (including attorney's fees and costs actually incurred), mental anguish, emotional distress, punitive damages, actions, and causes of action of any nature whatsoever, whether at law or in equity, whether known or unknown, suspected or unsuspected, that the Carter Equity Releasing Parties have, had, or may have had, for or by reason of any cause, matter, or thing whatsoever, against the Univest Released Parties from the beginning of time to the Effective Date, including, but not limited to, all claims arising out of or relating to the Loan, the Loan Documents, the Property, the Foreclosure Action, the Confession Action, or the Judgments. For the avoidance of doubt, the foregoing release does not apply to any of Univest's obligations under this Settlement Agreement.

4.      <u>Representations and Warranties of the Carter Equity Releasing Parties</u>.   The Carter Equity Releasing Parties covenant, warrant, and represent that they: (a) have carefully read this Settlement Agreement and know the contents thereof; (b) thoroughly understand and

3

10106681.v3

consent to all provisions hereof; (c) are duly authorized to execute this Settlement Agreement and the provisions thereof are legal, valid, and binding obligations of the Carter Equity Releasing Parties, enforceable in accordance with their terms.

5.      No Admissions.  It is expressly understood that the Parties have agreed to the terms of this Settlement Agreement for the purpose of resolving all disputes related to subject matter hereof without resorting to further legal action.  This Settlement Agreement is not, and shall not constitute, an express or implied admission of any fault, liability, guilt, wrongdoing, breach of contract, or noncompliance with any federal, state, or local law, statute, order or regulation.  This Settlement Agreement is not, and shall not be construed as, an agreement or admission as to any fact or legal conclusion concerning the Loan, the Loan Documents, or the Property.

6.      Severability.  This Settlement Agreement is intended to be performed in accordance with and only to the extent permitted by all applicable laws, ordinances, rules, and regulations.  If any provision of this Settlement Agreement is determined to be invalid, illegal, or unenforceable, the remaining provisions of this Settlement Agreement shall remain in force.

7.      Costs and Expenses.  Each Party shall bear its own costs and expenses, including attorney's fees, related to this Settlement Agreement.

8.      Entire Agreement.  This Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and supersedes, merges, and replaces all prior oral or written negotiations, offers, representations, and agreements with respect to the subject matter hereof.  It is expressly understood and agreed that the Parties are not relying upon any agreements, understandings, representations, or warranties other than those

4

10106681.v3

expressly set forth herein. This Settlement Agreement may not be altered, amended, or otherwise modified in any respect except by a writing, duly executed by all of the Parties.

9.    Counterparts.   This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the Parties on the Effective Date.   All counterparts so executed shall constitute one Settlement Agreement binding on all of the Parties, notwithstanding that all of the Parties are not signatory to the same counterpart. A signed fax or .pdf of this Settlement Agreement shall be as effective and enforceable as a signed original.

Dated: August 2, 2022          330 CARTER EQUITY, LLC

                               By: _____
                               Its: Member

Dated: August 2, 2022          IRA RUSSACK

                               _____

Dated: August 4, 2022          UNIVEST BANK AND TRUST CO.

                               By: Keith C. Thom_____
                               Its: SVP Asset Recovery

10106681.v3